FILED
CLERK, U.S. DISTRICT COURT

APR 1 2 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>HEON-CHEOL CHI,<br><br>　　　　Defendant. | CR No. 16-824(A)-JFW<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity; 18 U.S.C. § 2(b): Causing An Act to Be Done; 18 U.S.C. § 982(a)(1), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. §§ 1957, 2(b)]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this First Superseding Indictment:

1.   Defendant HEON-CHEOL CHI ("CHI") was a citizen and resident of the Republic of Korea ("South Korea").   From at least in or around 2003 to the present, defendant CHI served as a principal researcher at the Korea Institute of Geoscience and Mineral Resources ("KIGAM"). From at least in or around 2011 to the present, defendant CHI also

served as the director of KIGAM's Earthquake Research Center.  As such, defendant CHI was, from at least in or around 2003 to the present, a public official as set forth in Article 129 of South Korea's Criminal Code, which provided, in relevant part, that "[a] public official . . . who receives, demands, or promises to accept a bribe in connection with his duties shall be punished by imprisonment for not more than five years or suspension of qualifications for not more than ten years."

2.    KIGAM was a government-funded geoscience research institute in South Korea that, among other things, provided testing and certifications for seismological equipment sold to and used by government customers and other end users in South Korea.  In addition, KIGAM also purchased equipment directly from companies for its own research activities.

3.    During the relevant period, defendant CHI illegally used his official position at KIGAM to provide business advantages to private companies, including by facilitating certifications and endorsing certain equipment to KIGAM and other end customers in South Korea, in return for payments from such companies.

4.    "Company A," a company whose identity is known to the Grand Jury, was a company that manufactured and distributed instruments used in detecting earthquakes and other seismic events.  Company A was headquartered in the United Kingdom.  During the relevant period, Company A conducted business in South Korea, including in connection with government-funded projects.

5.    "Company B," a company whose identity is known to the Grand Jury, was a company that manufactured and distributed instruments used in detecting earthquakes and other seismic events.  Company B

was headquartered in Pasadena, California.  During the relevant period, Company B conducted business in South Korea, including in connection with government-funded projects.

6.   Bank of America was a financial institution.

7.   Merrill Lynch Wealth Management ("Merrill Lynch") was the wealth-management division of Bank of America.

B.   THE SPECIFIED UNLAWFUL ACTIVITY: BRIBERY

8.   From at least in or around 2003 until in or around 2015, defendant CHI illegally demanded and received bribes from Companies A and B in connection with his duties in exchange for using his position at KIGAM to extend preferential treatment and otherwise help Companies A and B successfully sell their products in South Korea, all in violation of Article 129 of South Korea's Criminal Code.

9.   Defendant CHI frequently used email to discuss the bribery scheme; for example:

a.   On or about September 9, 2009, defendant CHI emailed Company B's sales manager, discussing what he sometimes referred to as his "advice fee," and stating, "Please do not forget that from the agent fee [for the distributor], $10,000 should be deducted and added into advice fee.  I am really concern[ed] on my advice fee because that is the [sic] one of key factors of my driving force."

b.   On or about March 31, 2010, defendant CHI emailed Company A's head of sales, stating that "due to my position, I am not allowed to participate in any activity of private companies. . . . [C]ash flow of me and my family should be reported to government every year.  That is why I got the advice fee from you through the American bank."

1          c.    On or about May 27, 2011, defendant CHI emailed
2    Company A's head of sales in response to a request to serve as a
3    reference, stating that "[o]fficially I cannot support any private
4    company by regulation.  Therefore you could not use or refer my name
5    for your projects in Korea even if you fully supported behind.  I am
6    very sorry for my status as a governmental officer."

7          d.    On or about June 23, 2014, defendant CHI emailed
8    Company A's head of sales in connection with certifying the company's
9    equipment, explaining, "I am a governmental officer and I should not
10   have any contact with private company.  Moreover, it is illegal to
11   assist any company related to the test."

12         e.    On or about May 8, 2016, defendant CHI emailed Company
13   B's sales manager, explaining that he had discussed Company B's
14   equipment with a Korean government minister who recently had visited
15   KIGAM and attached a picture from their visit.  Defendant CHI then
16   cautioned, "Unfortunitely, [sic] since I and Dr. Minister are
17   government officers, [y]ou could not use this picture for
18   advertising, just for reference."

19      10.  Throughout the period during which defendant CHI received
20   payments from Company A and Company B, defendant CHI tried to conceal
21   his relationship with Companies A and B by, among other things,
22   asking Company A's representatives not to reveal the arrangement to
23   others at KIGAM and urging representatives from Company A and Company
24   B to delete or not to reply to emails in which he referenced the
25   scheme.  For example:

26         a.    On or about February 7, 2008, defendant CHI sent an
27   email to Company A's representatives regarding a recent bid for
28   seismic readers by a Korean gas company.  In the email, defendant CHI

informed the representatives that Company A would be the only company to satisfy a technical requirement, urging that "[a]fter reading this, please reply to me whether you get it and delete this file for safety."

b.   On or about January 6, 2009, defendant CHI sent an email to Company B's sales manager thanking him for dinner in San Francisco and asking him to calculate his advice fee for the preceding year, stating, "I want to earn more than my loss.  I hope that more orders for Early Warning Systems will be done this year." Defendant CHI then concluded the email by requesting Company B's sales manager "[p]lease do not reply it.  I will call you to confirm two values."

11.   From in or around 2009 and continuing to in or around 2015, defendant CHI received approximately $650,000 from Company A and approximately $386,000 from Company B into his personal Bank of America bank account number ending in XX070 located in Glendora, California.

12.   Following his receipt of funds from Company A and Company B into his personal Bank of America account number (ending in XX070), defendant CHI used funds from this account for a number of personal expenditures largely in South Korea, including on massages, restaurants, and entertainment.

C.   THE MONETARY TRANSACTIONS

13.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant CHI, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged and attempted to engage in, and willfully caused others to engage and attempt to engage in, the

following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, that is, an offense against a foreign nation involving bribery of a public official in violation of foreign law (Article 129 of South Korea's Criminal Code), as identified at Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| ONE | 5/21/2012 | Writing a check in the amount of $60,000 from Bank of America bank account ending in XX070 in Glendora, California, which was deposited to Merrill Lynch brokerage account number ending in XXX-XX235 in New York, New York |
| TWO | 3/22/2013 | Writing a check in the amount of $50,000 from Bank of America bank account ending in XX070 in Glendora, California, which was deposited to Merrill Lynch brokerage account number ending in XXX-XX235 in New York, New York |
| THREE | 12/26/2013 | Writing a check in the amount of $60,000 from Bank of America bank account ending in XX070 in Glendora, California, which was deposited to Merrill Lynch brokerage account number ending in XXX-XX235 in New York, New York |
| FOUR | 8/14/2014 | Writing a check in the amount of $50,000 from Bank of America bank account ending in XX070 in Glendora, California, which was deposited to Merrill Lynch brokerage account number ending in XXX-XX235 in New York, New York |
| FIVE | 5/20/2015 | Writing a check in the amount of $30,000 from Bank of America bank account ending in XX070 in Glendora, California, which was deposited to Merrill Lynch brokerage account number ending in XXX-XX235 in New York, New York |
| SIX | 11/22/2016 | Writing a check in the amount of $56,000 from Bank of America bank account ending in XX070 in Glendora, California, which was deposited to Merrill Lynch brokerage account number ending in XXX-XX235 in New York, New York |

FORFEITURE ALLEGATION

[18 U.S.C. § 982 (a)(1); 28 U.S.C. § 2461(c)]

14.    Pursuant to Title 18, United States Code, Section 982, and Rule 32.2(a), Fed. R. Crim. P., if defendant HEON-CHEOL CHI ("CHI") is convicted of any of the offenses set forth in Counts One through Six of this First Superseding Indictment, he shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property.

15.    Pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b)(2), defendant CHI shall forfeit substitute property if, by any act or omission of the defendant, the property described in paragraph 14, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where defendant acted merely as an intermediary who handled but did not retain the property in the course of the money-laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture,

///

conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/s/
_____
Foreperson

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds
Section

SARAH HEIDEL
Assistant United States Attorney
Major Frauds Section

ANDREW WEISSMANN
Chief, Fraud Section
U.S. Department of Justice

ANNA G. KAMINSKA
Trial Attorney, Fraud Section
U.S. Department of Justice

DAVID M. FUHR
Trial Attorney, Fraud Section
U.S. Department of Justice