SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
POONAM G. KUMAR (Cal. Bar No. 270802)
Assistant United States Attorney
Major Frauds Section
ANNA KAMINSKA
DAVID M. FUHR
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0719/(202)307-0321
     Facsimile:  (213) 894-6269
     E-Mail:     poonam.kumar@usdoj.gov
                 anna.kaminska@usdoj.gov
                 david.fuhr@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-824(A)-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S NOTICE RE: EXPERT OPINION |
| v. | |
| HEON CHEOL CHI, | |
| Defendant. | |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the Criminal Division of the United States Department of Justice, hereby files its Notice re: Expert Opinion, attaching hereto the expert opinion obtained from Professor Joongi Kim.

//
//

In addition, this notice is based upon the declaration of AUSA Poonam G. Kumar, which attaches as Exhibits 1 through 4 selected documents the government believes are referenced in the Expert Opinion.

Dated: May 24, 2017                Respectfully submitted,

                                   SANDRA R. BROWN
                                   Acting United States Attorney

                                   LAWRENCE S. MIDDLETON
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                        /s/ *Poonam G. Kumar*
                                   POONAM KUMAR
                                   Assistant United States Attorney


                                   ANDREW WEISSMANN
                                   Chief, Fraud Section
                                   U.S. Department of Justice


                                   /s/ *David M. Fuhr*
                                   DAVID M. FUHR
                                   ANNA KAMINSKA
                                   Trial Attorneys, Fraud Section

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

```
            UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF CALIFORNIA


                                      CR No. 16CR00824


         UNITED STATES OF AMERICA,

              Plaintiff,


         HEON-CHEOL CHI,

              Defendant.



                        Expert Opinion


                         May 22, 2017


                         Joongi Kim
```

1

I.   **Introduction**

The above-captioned case raises issues of foreign law involving the bribery provisions of the criminal law of the Republic of Korea.[1] I am a Professor of Law and Vice President of International Affairs at Yonsei Law School in Seoul, Republic of Korea. At the request of the U.S. Department of Justice, I provide the following expert opinion on the issues of Korean law related to bribery as it applies to the Defendant based upon the facts alleged in the Superseding Indictment against him.

II.  **Korean Criminal Law on Bribery**

A.   **Criminal Act**

Korean law fundamentally criminalizes the bribery of public officials through Article 129 of the Criminal Act.[2] The Criminal Act (*hyongbop*) was adopted in 1953, and the text of Article 129 has remained unchanged since that time. More specifically, Article 129 provides that any public official that "receives, demands or

---

[1] All references to Korea refer to the Republic of Korea.

[2] Current version of the Criminal Act is Law Act No. 14415, in force as of Dec. 20, 2016. Previous versions that were in force from October 2010 to December 2016 are as follows: Law Act No. 14178, in force as of May 29, 2016; Law Act No. 13719, in force as of Jan. 6, 2016; Law Act No. 12898, in force as of Dec. 30, 2014; Law Act No. 12575, in force as of May 14, 2014; Law Act No. 11731, in force as of June 19, 2013; Law Act No. 11574, in force as of June 19, 2013; Law Act No. 11731, in force as of Apr. 5, 2013; Law Act No. 10259, in force as Oct. 16, 2010. Korea has other statutes related to the bribery of public officials such as the Act on the Aggravated Punishment, Etc. of Specific Crimes, which calls for enhanced punishment for larger bribes. Unless relevant, only the current version of statutes will be cited in this expert opinion.

2

promises a bribe in relation to his official duties"[3] will be guilty of bribery. Supreme Court cases have interpreted Article 129 of the Criminal Act and the types of conduct by public officials that would be considered a violation.[4] A violation of Article 129 constitutes the equivalent of a felony offense under U.S. law because a violator has potential exposure to a term of imprisonment up to five years.[5]

In interpreting Article 129, the Supreme Court has consistently described the purpose of criminalizing bribery. The Court has stipulated that "in terms of the crime of bribery, the direct legally protected interest is the fair implementation of a public official's duties, society's trust thereof and the incorruptibility of such duties."[6] The Court has added that the question of whether a public official has committed bribery does not depend on whether an obligation was violated, whether a favor was requested, or whether the bribe was received before or after the implementation of a duty.[7]

---

[3] Unofficial translation as provided by the Ministry of Government Legislation. http://www.law.go.kr. Korean statutes are gender neutral but the English translation uses masculine pronouns.

[4] As a civil law country, in Korea, only Supreme Court interpretations and decisions are considered to have binding authority.

[5] Under Article 129, public officials that receive bribes can also be disqualified from government service for up to ten years. Those that "promise, give or express an intent to give bribes" will be punished under Article 133 and will be sentenced up to five years imprisonment or up to twenty million Korean Won (approximately US$ 17,500) in fines.

[6] Supreme Court, 84 *Do* 1568, Sept. 25, 1984; Supreme Court, 2003 *Do* 1060, June 13, 2003; Supreme Court, 2013 *Do* 9003, Nov. 23, 2013.

[7] *Id.*

3

To constitute a violation of Article 129, the Korean Supreme Court considers three major factors. First, the recipient of the bribe must be a public official or be deemed a quasi-public official. Second, the action or inaction of the public official must be in relation to the public official's duties. Third, the bribe must be given "in consideration for" the exercise of a public official's duties.

**B.  Public Official**

Persons that qualify as public officials under Article 129 are not specifically defined under the Criminal Act itself. The Supreme Court has thus held that a public official under Article 129 refers to a "person that works for the state or local government or other comparable public legal persons based upon a statute."[8] Typical examples of such persons would be those subject to the State Public Officials Act and the Local Public Officials Act.[9] The Court has further held that to be subject to Article 129, a person's "labor service should not be limited to simple mechanical or physical things."[10] Persons engaged in occupations

---

[8] Supreme Court, 4294 *Hyeongsang* 99, Apr. 21, 1961; Supreme Court, 96 *Do* 1703, June 13, 1997; Supreme Court 96 *Do* 1703, June 13, 1997; Supreme Court, 2000 *Do* 4593, Nov. 22, 2002; Supreme Court, 2011 *Do* 12639, August 23, 2012.

[9] Supreme Court, 2015 *Do* 15798, Jan. 14, 2016; Supreme Court, 69 *Do* 1214, Sept. 23 1969; Law Act No. 13618, in force as of Dec. 24, 2015. More specific legislation also exists for police officers, educational officials, fire officers, foreign-service officials and local public officials. The State Public Officials Act categorizes public officials into either career service public officials or non-career service public officials such as political-appointees.

[10] *Id.*

consisting of simple labor such as a gardener or cleaner, for instance, would not qualify.

Furthermore, Korea has adopted a host of statutes to expand the scope of persons that are deemed as quasi-public officials under Article 129 even though they may not technically qualify as public officials. Persons deemed as quasi-public officials subject to Article 129 include, for instance, senior officials of the Bank of Korea and members of the Monetary Policy Board,[11] senior financial regulators,[12] persons assisting officials investigating unfair competition,[13] the executive officers and employees of the Korea Strategic Trade Institute, the executive officers and employees of the Korea Strategic Trade Institute,[14] and a variety of other senior officers and employees of quasi-public entities[15].

Hence, public officials subject to Article 129 include persons that fall under the Supreme Court's broad definition of public officials and persons who are deemed as quasi-public officials based upon a specific statute.

---

[11] Bank of Korea Act, Art. 106.

[12] Act on the Establishment, Etc. of Financial Supervisory Organizations, Art. 69.

[13] Unfair Competition Prevention and Trade Secret Protection Act, Art. 17-3, Law Act No. 14033, in force as of Feb. 29, 2016.

[14] Foreign Trade Act, Art. 58, Law Act No. 12285, in force as of July 22, 2014.

[15] Seoul District Court, 2010 *Gohap* 1574, April 15, 2011 (finding the head of a division guilty of bribery as a public official based on the Establishment, Operation and Fostering of Government-Funded Research Institutes, Etc.); Changwon District Court, 2014 *Godan* 3522, April 15, 2015 (finding a Principal Researcher guilty of bribery as a public official under the Act on the Establishment, Operation and Fostering of Government-Funded Science and Technology Research Institutes, Etc.).

### C. In Relation to a Public Official's Duties

According to the Supreme Court, the second factor considered under Article 129 is that the public official must have received a payment that bears a relation to the public official's duties. The Supreme Court has broadly and flexibly applied this requirement when determining the scope of an official's duties.

The Supreme Court has consistently held that the scope of duties under the bribery provisions includes not only "the duties that a public official administers under a statute" but also includes "acts related to such duties," "acts that are customarily or actually under the competency" of the public official, or "acts that support or may influence a decision-maker."[16] The scope of duties includes "the entirety of duties that a public official is in charge of under his or her public authority based upon his or her position."[17] The scope of duties may also consist of "duties that fall within [a public official's] general authority of duties under a statute, even if in practice [the public official] is not in charge of such duties due to the allocation of work."[18] In terms of timing, the Supreme Court has explained that the duties include those that the public official "was in charge of in the past or will be in charge of in the future."[19]

---

[16] Supreme Court, 2004 *Do* 42, Nov. 10, 2005; Supreme Court, 2004 *Do* 1442, May 28, 2004; Supreme Court, 98 *Do* 3697, June 15, 2000; Supreme Court, 96 *Do* 3378, Apr. 17, 1997.

[17] Supreme Court, 2013 *Do* 9003, Nov. 28, 2013; Supreme Court, 2003 *Do* 1060, June 13, 2003; Supreme Court 95 *Do* 1269, Sept. 5, 1995.

[18] *Id.*

[19] *Id.*

6

At the same time, a payment made to a public official to obtain an advantage in an area that does not have a sufficient relation with the official's responsibilities or duties would not satisfy Article 129. Giving cash to a tax collector, for instance, to obtain a design patent would not qualify.

Based on these interpretations, the Supreme Court has applied the "in relation to a public official's duties" requirement in a broad and flexible manner. It would suffice, for example, if the action requested was "related" to the public official's duties, or was within the official's sphere of influence or within their "general authority."

### D. Improper Benefit in Consideration for Exercising a Public Official's Duties

A third related element that courts will consider is if an improper benefit was given "in consideration for" exercising the public official's duties. Payment must thereby be given in return for a favor or as a *quid pro quo*. The Supreme Court has found that in determining whether the payment was "in consideration for" an act within a public official's duties, the briber does not need to specifically request a favor nor do the public official's duties have to be specified.[20] The payment, in other words, must confer an improper benefit that was made as a *quid pro quo* for exercising

---

[20] Supreme Court, 2013 *Do* 9003, Nov. 28, 2013; Supreme Court, 2005 *Do* 4204, Apr. 27, 2007.

7

the public official's duties.[21]

The Supreme Court has held that to determine if a *quid pro quo* exists between the money received by a public official and his duties, "the overall circumstances will be considered in reaching a decision."[22] Circumstances include "the nature of the public official's duties," "the relation between the duties and the provider of the benefit," "whether a special private friendship relationship existed between the two parties," "the amount of the benefit," and "the background and timing of the receipt of the benefit."[23] The Supreme Court has broadly defined improper benefit to include "proprietary benefits such as money or goods" but also "all other tangible or intangible benefits that would be sufficient to satisfy a person's needs and desires."[24] The prevailing theory among criminal-law treatises, which are also considered an important legal authority in Korea[25], is that salary, allowances,

---

[21] Supreme Court, 2004 *Do* 42, Nov. 10, 2005; Supreme Court, 2000 *Do* 5438, Sept. 18, 2001; Supreme Court, 2001 *Do* 970, Mar. 15, 2002

[22] *Id.*

[23] *Id.*

[24] Supreme Court, 2000 *Do* 4714, Jan. 5, 2001; Supreme Court, 94 *Do* 129, Nov. 4, 1994.

[25] Judge Peter Messitte, "Common Law v. Civil Law Systems," Issues of Democracy, Vol. 4, No. 2, p. 27 (Sept. 1999)("But it also bears noting that in the common law system, treatise writers do not have the same importance that they do in the civil law system. In civil law countries, such authorities are often considered sources of law, looked to for the development of the doctrine relative to a given subject matter. Their statements are given considerable weight by civil law judges."); Aaron Schwabach & Arthur Cockfield, ed., Law: Encyclopedia of Life Support Systems, p. 39 (UNESCO) ("Given the limited role and authority of courts in civil law countries, it also follows that court decisions bind only the parties to the dispute. Therefore, other courts are not

travel expenses, per diem, commissions or other payments that a public official receives would be considered a bribe absent a statutory basis for such payments, as long as the other conditions under Article 129 are met.[26]

At the same time, the Supreme Court has acknowledged that a narrow "social courtesy exception" exists for certain payments or gifts made to public officials that would not be punishable as a bribe. Under the exception, the courts have held that payments or gifts offered as mere social courtesies were not given in consideration for a public official's acts, and thus would not amount to an impermissible bribe. Among other things, the courts will consider whether the monetary payment or favor provided exceeded socially acceptable levels. Only minimal payments granted in such situations as a wedding or funeral have been considered permissible.[27]

---

bound by the decisions. In other words, they are not bound by the doctrine of *stare decisis* as are common law courts. However, judicial decisions in civil law countries can carry persuasive weight to at least the same degree that a scholarly treatise can carry persuasive weight.").

[26] Jaesang Lee, Criminal Law, Pakyoungsa (9th Edition, 2013), p. 725.

[27] To summarize a few examples, the Korean Supreme Court has found bribery in the following cases:

(1) Upon the request of a newspaper and organization for elders, a city council member's receipt of a commission after securing a budget allocation for the elderly facility to obtain a subscription to the newspaper (Supreme Court, 2010 *Do* 15628).

(2) A payment received in relation to a golf permit by the Special Assistant to the Minister of Transportation, who oversaw all tourism-related facilities such as tourist hotels and golf courses (Supreme Court, 84 *Do* 1139).

(3) The head of a housing reconstruction association who was deemed a public official received a cash card and access to a bank

9

The Criminal Act and other related statutes do not provide a basis for a senior public official with supervising authority to "approve" or "exempt" such payments made to a subordinate public official.

### III. KIGAM and the Defendant

#### A. KIGAM

As more fully explained below, by Presidential Decree, in light of the positions that the Defendant held at the Korea Institute of Geoscience and Mineral Resources ("KIGAM"), he was a public official for purposes of Article 129 of the Criminal Act at all times relevant to the Superseding Indictment, and the other facts and law described herein further support this conclusion.

Statutorily, under the Act on the Establishment, Operation and Fostering of Government-Funded Science and Technology Research Institutes, Etc. ("STRIA"), KIGAM is classified as a "government-funded research institution in the science and technology field."[28] The STRIA governs the establishment and operations of 19 of Korea's leading government-funded research institutes in the fields of science of technology. One of the central purposes KIGAM has been to engage in research and information concerning geoscience and

---

account knowing that it was for an improper request to purchase rights to a shopping area (Supreme Court, 2010 *Do* 13584).

[28] Act on the Establishment, Operation and Fostering of Government-Funded Science and Technology Research Institutes, Etc. Before October 24, 2004, KIGAM and all other science- and technology-related research institutes were all classified together as "government-funded research institutes" under the Act on the Establishment, Operation and Fostering of Government-Funded Research Institutes, Etc. ("Research Institutes Act").

mineral resources, particularly earthquakes.[29]

Administratively, as a government-funded research entity, KIGAM is under the supervision of the Ministry of Science, ICT and Future Planning ("Ministry") as an "affiliated organization." It is also under the competency of the National Research Council of Science and Technology, a public entity under the Ministry.[30]

Accordingly, among other things, (1) the STRIA established KIGAM as a government-sponsored research institute, (2) KIGAM aims to further the safety and well-being of Korea and its citizens; (3) KIGAM is subject to the supervisory authority of the Ministry[31]; (4) the overwhelming majority of KIGAM's budget is funded by and through the Korean government[32]; and (5) KIGAM is subject to inspections and routine audits performed by specific arms of the Korean government, including the National Assembly, the Ministry, and the Board of Audit and Inspection.[33] The government therefore

---

[29] KIGAM Annual Report 2015, p.4.

[30] Prior to June 30, 2014, when the National Research Council of Science and Technology was established, KIGAM was under the competency of the Korea Research Council for Industrial Science and Technology before it was combined with the Council of Fundamental Science and Biotechnology to form the National Research Council.

[31] From March 26, 2008 to March 22, 2013, KIGAM was under the supervision of the Ministry of Knowledge Economy, which was divided into the Ministry of Science, ICT and Future Planning and Ministry of Trade, Industry and Energy.

[32] As of December 31, 2015, for instance, 69% of KIGAM's budget was directly funded by the government and 25.4% from government-sponsored projects for a total of 94.4% in government-based funding. 2015 KIGAM Annual Report, p.9.

[33] The Board of Audit and Inspection is a constitutional agency established under the President according to Article 97 of the Constitution that audits and inspects government institutions and agencies that receive government revenue.

11

controls and supervises all aspects of KIGAM.

As with most government-funded research institutes, KIGAM divides researchers into three levels or ranks: (1) Researcher; (2) Senior Researcher; and (3) Principal Researcher. After the President and Auditor, the rank of Principal Researcher is the highest possible rank a staff member can achieve at KIGAM. As of the end of 2015, out of a total staff of 457, KIGAM had 228 Principal Researchers, 139 Senior Researchers, and 51 Researchers under various other positions, as set forth in the table below. The section chief (*gwajang*) level at a research institute typically refers to an employee in a "non-technical service position" with approximately 5 or more years of experience.

KIGAM Staff

|  | Executive Officer | | Research Position | | | Technical Position | | | Administrative Position | | | Technical Service Position | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | President | Auditor | Principal Rr | Senior Rr | Researcher | Principal Rr | Senior Rr | Researcher | Principal Rr | Senior Rr | Researcher | Technical | Admin |  |
| Ph.D. | 1 | - | 187 | 95 | 1 | 4 | 2 | 1 | 3 | 1 | - | - | - | 295 |
| M.A. and below | - | (1) | 3 | 6 | 21 | 17 | 19 | 13 | 14 | 16 | 15 | 22 | 15 | 162 |
| Total | 1 | (1) | 190 | 101 | 22 | 21 | 21 | 14 | 17 | 17 | 15 | 22 | 15 | 457 |

(Dec. 2015)

### B. Whether the Defendant Qualifies as a Public Official

According to the Superseding Indictment, the Defendant became a Principal Researcher at KIGAM at least in 2003 and also served as the Director of the Earthquake Research Center from 2011 to 2015. Due to his positions at KIGAM, the Defendant in this case qualifies as a public official subject to Article 129 of the Criminal Act.

The STRIA stipulates which persons who work at government-funded research institutes qualify as quasi-public officials under Article 129.[34] Generally, Article 35 of the STRIA states that "executive officers, and employees as determined by the Presidential Decree, of research institutions and the Research Council shall be deemed to be public officials" in the application of bribery provisions of the Criminal Act."[35] The Presidential Decree of the STRIA then stipulates exactly which employees are subject to Article 129.

Before June 29, 2014, under Article 34, the Presidential Decree provided that "employee" referred to "researchers, and employees above the rank of Section Chief (*gwajang*) of research institutes or research councils."[36] In other words, one had to be

---

[34] Before 2004, KIGAM was subject to the Research Institute Act that also provided for application of Article 129.

[35] At KIGAM, the President and the Auditor serve as the two executive officers. A constitutional challenge against this provision was upheld by the Constitutional Court in 2006. 2004 *Hunba* 86, Nov. 30, 2006.

[36] The Research Council refers to the National Research Council of Science and Technology. Presidential Decree No. 18594, in force as of Dec. 3, 2004; Presidential Decree No. 19513, in force as of July 1, 2006; Presidential Decree No. 19929, in force

13

at least a researcher-level employee or a section chief (*gwajang*). Therefore, under the pre-2014 Presidential Decree, any KIGAM staff at the rank of Researcher or above would be considered an employee subject to Article 129. The only KIGAM staff members that would not be subject Article 129 would be those at "Technical Service Positions."

Starting from June 29, 2014, the Presidential Decree expanded the scope of "employee" such that it just refers to "employees of research institutes or Research Council." Thus, at present, all KIGAM staff, even including those at "Technical Service Positions," would be subject to Article 129.

As Principal Researcher and later Director of the Earthquake Research Center, the Defendant was clearly a public official subject to Article 129 of the Criminal Act pursuant to the Presidential Decree, both before and after 2014.

C.  **Whether the Actions by Defendant Were in Relation to His Exercise of Duties as a Public Official**

According to the Superseding Indictment, KIGAM, among other things, tested seismological equipment and approved technical certifications for equipment sold and used in Korea, including in connection with government-funded projects. In addition, according

---

as of Mar. 27, 2007; Presidential Decree No. 20678, in force as of Feb. 29, 2008; Presidential Decree No. 21641, in force as of July 31, 2009; Presidential Decree No. 22075, in force as of Mar. 19, 2010; Presidential Decree No. 22356, in force as of Sept. 1, 2010; Presidential Decree No. 23066, in force as of Aug. 3, 2011; Presidential Decree No. 23248, in force as of Oct. 26, 2011; Presidential Decree No. 23355, in force as of Dec. 8, 2011; Presidential Decree No. 24272, in force as of Dec. 28, 2012; Presidential Decree No. 24423, in force as of Mar. 23, 2013; Presidential Decree No. 24474, in force as of Mar. 23, 2013.

to the Superseding Indictment, KIGAM also purchased equipment directly from companies for its own research activities. Moreover, according to the Superseding Indictment, two private companies that made instruments used in detecting earthquakes and other seismic events paid the Defendant to give them business advantages, including by (1) facilitating certifications by KIGAM for their equipment that was sold to and used by government customers and other end users in Korea, and (2) endorsing their equipment to KIGAM and other end customers in Korea (Paragraphs 2-3).

Assuming that these allegations are true, the actions taken by the Defendant fell within the scope of his public duties, particularly as a long-time Principal Researcher engaged in the study of earthquakes and as the Director of the Earthquake Research Center from at least 2011 to 2015. These actions are clearly related to his public duties and furthermore within the purview of his authority and supervision.

### D. Whether Improper Benefits Were Given to the Defendant in Consideration for his Exercise of Official Duties

According to the Superseding Indictment, the Defendant allegedly was paid approximately $ 650,000 from Company A and approximately $ 386,000 from Company B to provide business advantages to these companies, including by (1) facilitating certifications by KIGAM for their equipment that was sold to and used by government customers and other end users in Korea, and (2) endorsing their equipment to KIGAM and other end customers in Korea (Paragraphs 2-3). Assuming that these allegations are true, the payments were made for a *quid pro quo* to obtain the Defendant's

15

actions through his approval and influence in relation to his public duties. The payments, therefore, were made in consideration of, and in return of, the Defendant carrying out his public duties.

### IV. Basis of Opinion and Expertise

The bases and reasons in support of my opinion are my training and experience in matters of Korean law, including the definition of public officials and state entities under Korean law. I am a Professor of Law and Vice President of International Affairs at Yonsei Law School, Seoul. In addition, I hold an adjunct professorship at Georgetown University Law Center. My areas of focus and research include corporate governance, international trade, dispute resolution, corruption, and Korean legal procedure. My opinion is based on my training, education, and experience as described in my curriculum vitae, as well as on my review of relevant material, including Korean laws and regulations, court decisions, and scholarly publications.