1              **UNITED STATES DISTRICT COURT**

2        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3          **HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**          )
                                            )
6                       **Plaintiff,**      )
                                            )
7           **vs.**                         )     **Case No. CR 16-824 JFW**
                                            )
8   **HEON-CHEOL CHI,**                     )
                                            )
9                       **Defendant.**      )
    _____)

10

11

12               **REPORTER'S TRANSCRIPT OF PROCEEDINGS**
                           **MOTIONS HEARING**
13                     **FRIDAY, JULY 7, 2017**
                             **8:37 A.M.**
14                  **LOS ANGELES, CALIFORNIA**

15

16

17

18

19

20

21

22   _____

23        **MYRA L. PONCE, CSR 11544, RPR, RMR, RDR, CRR**
              FEDERAL OFFICIAL COURT REPORTER
24            350 WEST 1ST STREET, SUITE 4455
              LOS ANGELES, CALIFORNIA 90012
25                MYRAPONCE@SBCGLOBAL.NET

1          **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4          SANDRA R. BROWN
           Acting United States Attorney
5          BY:  POONAM KUMAR
                Assistant United States Attorney
6          312 North Spring Street
           Los Angeles, California  90012
7
           DEPARTMENT OF JUSTICE
8          BY:  DAVID M. FUHR
           BY:  ANNA G. KAMINSKA
9               Assistant United States Attorneys
           1400 New York Avenue NW
10         Washington, DC  20005

11

12    **FOR THE DEFENDANT:**

13         LAW OFFICES OF JOEL C. KOURY
           BY:  JOEL C. KOURY
14              Attorney at law
           3435 Ocean Park Boulevard, Suite 107-50
15         Santa Monica, California  90405

16         KAYE MCLANE BEDNARSKI & LITT, LLP
           BY:  MARILYN E. BEDNARSKI
17         BY:  KEVIN J. LAHUE
                Attorneys at Law
18         234 East Colorado Boulevard, Suite 230
           Pasadena, California  91101
19
           LAW OFFICES OF RICHARD W. RAYNOR
20         BY:  RICHARD W. RAYNOR
                Attorney at Law
21         800 South Pacific Coast Highway, Suite 8-284
           Redondo Beach, California  90277
22

23
      **ALSO PRESENT:**
24
           ANNIE LEE, Certified Korean Interpreter
25         SOYOUN MCCONNELL, Certified Korean Interpreter

**UNITED STATES DISTRICT COURT**

1          **FRIDAY, JULY 7, 2017; 8:37 A.M.**

2              **LOS ANGELES, CALIFORNIA**

3                      ---

4          THE COURTROOM DEPUTY:  Calling Item CR 16-824(A)

5    JFW, United States of America vs. Heon-Cheol Chi.

6          Counsel, please state your appearance for the

7    record.

8          MS. KUMAR:  Good morning, Your Honor.  Poonam Kumar,

9    Anna Kaminska, and David Fuhr on behalf of the United States.

10         MS. BEDNARSKI:  Good morning, Your Honor.

11   Marilyn Bednarski, Kevin LaHue, Joel Koury, and Richard Raynor

12   present with Mr. Heon-Cheol Chi.  And we have two official

13   Korean interpreters translating --

14         THE COURT:  You're going to have to speak into the

15   microphone so I can hear you.  We have not had the sound system

16   in this courtroom replaced and repaired yet.  So you're going

17   to have to make sure that -- either you speak from the lectern

18   or, if you're going to speak from counsel table, that you speak

19   directly into the microphone so the court reporter can make an

20   accurate record.  And she is the most important but, of course,

21   I would also like to hear what you have to say.

22         So go ahead.  You were about to introduce the

23   interpreters.

24         MS. BEDNARSKI:  We do.  We have two Korean

25   interpreters from the court interpreter's office helping with

**UNITED STATES DISTRICT COURT**

```
 1    the translation today.
 2              THE COURT:  All right.  Well, let's start with the
 3    interpreter to my left.  Would you please rise and state your
 4    name, spell your name and confirm that your oath is on file.
 5              INTERPRETER LEE:  Yes, Your Honor.  Annie Lee,
 6    Korean language interpreter.  My oath is on file.  Yes.
 7              THE COURT:  How do you spell your name?
 8              INTERPRETER LEE:  Oh.  A-n-n-i-e, last name L-e-e.
 9              THE COURT:  All right.  And the second interpreter.
10              INTERPRETER MCCONNELL:  Good morning, Your Honor.
11    Soyoun --
12              THE COURT:  You're going to have to pull the
13    microphone closer to you so we can hear you.
14              INTERPRETER MCCONNELL:  Good morning, Your Honor.
15    Soyoun McConnell, S-o-y-o-u-n, M-c-C-o-n-n-e-l-l, Certified
16    Court Interpreter No. 301301, oath on file.
17              THE COURT:  All right.  And do we have the
18    respective experts here today?
19              MR. RAYNOR:  Yes, Your Honor.
20              MS. KUMAR:  Yes, Your Honor.  They're right outside.
21              THE COURT:  They're outside?  You can bring them in.
22    I don't see any reason to have them sit outside.
23              MR. RAYNOR:  Your Honor, our expert doesn't speak
24    English, and we just figured that for -- so one expert doesn't
25    have an advantage over the other.
```

1          THE COURT:  Again, you're going to have to speak

2    into the microphone.  The problem is when you stand up and you

3    face me and the microphone is off to the side, your voice does

4    not pick up.  And I don't want to have to have you each go to

5    the lectern each time so -- each time.  So if you please keep

6    that in mind.

7          MR. RAYNOR:  Thank you, Your Honor.

8          THE COURT:  So go ahead.

9          MR. RAYNOR:  Yes, Your Honor.  We would ask that

10   they -- the experts be excluded.  Our expert -- either that or

11   that the proceedings be interpreted for him so that -- that

12   there's not an advantage given to one expert over the other,

13   given the --

14         THE COURT:  Well, I don't see any need for any

15   expert testimony today.  So I don't know what the purpose is of

16   having them wait outside.  I'm prepared to make rulings on the

17   disputed jury instructions this morning after I hear argument.

18         I do have some questions for each of the experts,

19   but it's not in terms of any testimony.  This case has been

20   thoroughly briefed with joint statements and the submission

21   most recently of the -- of the translations of the South Korean

22   cases, which I have -- which I have read, struggled through

23   them.  The translations are not the easiest to -- to get

24   through.  But I certainly am not going to have any need, unless

25   somebody can convince me why, to hear from any of these Korean

1   interpreters -- Korean experts.

2          MR. RAYNOR:  Yes, Your Honor.  I think that, um -- I

3   think we could make this very brief and just bring out some

4   important points.  I think that --

5          THE COURT:  Important points of what?

6          MR. RAYNOR:  Okay.  Well, first of all, I wanted

7   to -- I think that it may not be clear that there's a big

8   difference in terms of the areas of expertise of our expert and

9   their expert.  Our expert was a prosecutor for --

10          THE COURT:  It doesn't make any difference to me.

11   I've looked at the qualifications of each of the experts.

12   Quite frankly, I don't think the -- the expert testimony is as

13   helpful as the Korean case law that was submitted.  And my

14   primary focus in terms of ruling on these disputed jury

15   instructions has been my review of the Korean case law.

16          Certainly, the experts' reports and the joint

17   statements have been helpful in terms of focusing the Court on

18   the issues.  But in my view, there's many issues that had been

19   raised by the parties, and it was probably as a result of my

20   requirement of filing a joint statement.

21          Because we have very limited issues with respect to

22   the disputed jury instructions.  Most of what the parties are

23   disputing in connection with the -- with the foreign law and

24   the joint statements have nothing to do with the jury

25   instructions.  The jury instructions are a very focused area.

```
 1   We have two issues:  One, am I going to give an instruction

 2   under -- under Section 201; and the second is what is -- what

 3   are the elements of Article 129 under the South Korean criminal

 4   law?

 5            Those are very discrete issues.  The rest of these

 6   issues may -- may arise during the course of the trial.  But

 7   I'm not going to rule on each one of these disputed

 8   propositions of law because, to me, they're irrelevant to the

 9   jury instruction issue.

10            MR. RAYNOR:  Okay.  And, Your Honor, I would -- I

11   think Your Honor's correct in terms of the elements themselves.

12   There's -- it's a very, very discrete and narrow difference

13   that we have, just over one word, the word "closely."  But --

14            THE COURT:  I think you're both wrong on that, but

15   we'll get to that.

16            MR. RAYNOR:  Okay.

17            THE COURT:  So we've got a lot to cover today in a

18   relatively short period of time.

19            So we started this discussion by you indicating that

20   you believe that some expert testimony was going to be

21   necessary.  If you continue to believe that, you're going to

22   have to tell me what it is that you think I need to hear.

23            MR. RAYNOR:  Your Honor, specifically, in our

24   request for the 129 jury instruction, we list a number of

25   factors.
```

```
 1           THE COURT:  Right.  And I don't intend to give those
 2   factors.  I think your issues with respect to the elements are
 3   accurate, and I disagree with the Government's proposed
 4   instruction.  And I've actually drafted my proposed Article 129
 5   instruction.
 6           So as far as expert testimony in terms of those
 7   factors, I find that they've cherry-picked those out of the
 8   case law.  And I don't think that those factors are appropriate
 9   to include in an instruction because I view this as being more
10   totality of the circumstances in terms of what the duties were.
11           MR. RAYNOR:  And, Your Honor, just for a very brief
12   offer of proof of what we would have Professor Roh testify to.
13           THE COURT:  And Professor Roh -- and during the
14   course of the proceedings today, because Myra is not familiar
15   with these names, and everybody in this case is either named
16   Kim, Park, or some other name.  So we want to make sure that we
17   specify and spell the names for the court reporter.  I'm
18   getting somewhat familiar with them, but it's Myra's first
19   occasion.
20           MR. RAYNOR:  Thank you, Your Honor.
21           Our expert witness is Myung, M-y-u-n-g, Sun, S-u-n,
22   Roh, R-o-h.  And specifically, in support of the factors that
23   we are requesting be made a part of the instruction, he would
24   testify that, um, as -- as a prosecutor of bribery cases for
25   many years, that there was a distinction made between those
```

people who are government employees and those who are deemed to
be a public official and, in particular, relating to professors
and researchers at publicly funded institutions.

The law applies fund -- fundamentally differently to
those people and such that advice fee contracts are permissible
under certain circumstances.  In order for the jury to be
guided on that and to not miss the point that there is this
distinction under the law, we believe it's that these -- that
these factors are necessary.

Um, and we believe that, uh, what he would
specifically testify to today would be that, um, in terms of
distinguishing between, um, an advice fee contract that would
be -- is permissible and that which is not is that -- what's
the necessity for this third party for this information, uh,
the need for this particular expert, that the fact -- that this
person is an expert in the field, the fact that service --
that, um, advice was actually provided, service was actually
provided and money was received according to the, uh, proposed
service.

That's what he would, um, add in terms of, uh,
factors that would be considered in distinguishing between,
uh -- uh, something that would be bribery and not in this
circumstance.

THE COURT:  All right.  Is Dr. Chi being assisted by
the interpreter?  Does he have earphones on?  I can't see it.

```
 1              MR. RAYNOR:  Yes, he is.

 2              THE COURT:  Okay.  Good.

 3              What's the Government view with respect to this

 4    expert testimony?

 5              MS. KUMAR:  Well, Your Honor, we agree with the

 6    Court's initial inclination that these five or six factors are

 7    simply cherry-picked, are factual considerations that the

 8    parties can argue to the jury.

 9              I anticipate -- although these four have slightly

10    changed, I anticipate that our expert would say that these

11    factors -- again, the question is whether it's in connection

12    with the scope of the official's duties.  So even if it's

13    needed by the party, it certainly doesn't matter if it's in

14    connection with the official's duties.

15              And so, again, we think these factors are

16    misleading.  And the parties can argue that to the jury as they

17    see appropriate in closing argument.  Um, but beyond that, we

18    don't believe the jury needs to be instructed.  And I don't

19    believe, particularly with the expert testimony, there's -- it

20    sounds like there's much more that's already been -- than

21    what's already been put before the Court.

22              But we're happy to have the experts testify, if

23    that's what the Court prefers.

24              THE COURT:  For what purpose?  Do you want one of

25    the -- you want your expert to testify?
```

1           MS. KUMAR:  He's here, Your Honor.

2           THE COURT:  Do you want him -- listen to my

3   question.  Do you want him to testify?

4           MS. KUMAR:  On this particular issue?

5           THE COURT:  On any issue.

6           MS. KUMAR:  I don't -- Your Honor, I think I

7   would --

8           THE COURT:  It's a "yes" or "no" answer.

9           MS. KUMAR:  I -- what I would say, Your Honor, is if

10  I could see the proposed jury instructions from the Court, that

11  may assist me to determine if there's some ambiguity.

12          THE COURT:  Well, I'm going to make rulings on

13  these.

14          In any event, I see no reason why the expert should

15  not be permitted to come into the courtroom.  We have an extra

16  interpreter here.  And the defense expert, Professor Roh, can

17  have the assistance of the interpreter so he can listen to my

18  rulings on these jury instructions.

19          MR. RAYNOR:  And, Your Honor, it would also be our

20  request that we have an opportunity to see the Court's proposed

21  to see whether there's any additional testimony that we'd like

22  to -- to give on the part of our expert because we think that,

23  although the Court has a good grasp by reading these cases,

24  unless the jury instruction can -- can incorporate these

25  subtleties that our expert talks about.

1            THE COURT:  Well, I'm sure that when I give you my

2    jury instruction, everybody's going to be so pleased with it,

3    everybody's just going to simply accept it and congratulate me

4    on spending an enormous amount of time drafting something that

5    captures the essence of the elements of Article 129.

6            So in any event -- bring in the experts.

7            Both of these gentlemen are from Korea; correct?

8            MS. KUMAR:  Yes, Your Honor.

9            MR. RAYNOR:  Yes, Your Honor.

10            THE COURT:  All right.  If you would come forward,

11    sir.  Where's the interpreter?  Come forward to the lectern.

12            All right.  If you would approach the lectern,

13    please.  And if you'll state your name, announce your

14    appearance, which I'm sure you're used to doing in your

15    country.

16            MR. ROH:  Korea.  And my name is Myung Sun Roh.

17            THE COURT:  I can't hear the interpreter.  You're

18    going to have to speak into the microphone.

19            MR. ROH:  I'm from Korea.  My name is Myung Sun Roh.

20            THE COURT:  All right.  I realize that you've come a

21    long way, and I want to welcome you to this courtroom.  And I'm

22    going to make some rulings this morning on certain issues.

23            I have reviewed your expert report -- it's actually

24    your declaration that was filed in this case -- as well as the

25    various pleadings that have been filed by the defense in this

1    case.  And I certainly appreciate your assistance in helping me

2    understand Korean -- Korean criminal law.  And I'm going to

3    have some questions for you later on in the proceedings.  And I

4    wanted you to have the full benefit of the proceedings this

5    morning so that when we get to the questions, you'll understand

6    where we have been and some of the rulings that I've made.

7                So I want to welcome you and thank you for traveling

8    this long distance to be here.

9                MR. ROH:  Yes, Your Honor.  I'm honored to be here.

10               THE COURT:  All right.  Well, you can sit right

11   wherever is comfortable for you to make sure -- and if you have

12   any problems at any point in time with the translation, please

13   just raise your hand or advise counsel, and we'll make sure

14   that it's corrected.

15               All right.  And is the Government's expert here?

16               MS. KUMAR:  He is, Your Honor.

17               THE COURT:  Good morning, sir.  If you would state

18   your appearance and spell your name.

19               MR. KIM:  I'm Joongi Kim.  J-o-o-n-g-i, Kim.  And

20   I'm a witness for the Department of Justice.

21               THE COURT:  All right.  And I also want to welcome

22   you here.  I understand you've traveled from your country

23   and -- to attend these proceedings today.  And I know it's a

24   long -- a long distance.

25               I have also read the materials that have been

**UNITED STATES DISTRICT COURT**

1    submitted in connection with your expert opinion.  And I also

2    appreciate your efforts in educating this Court as to the -- as

3    to the Korean criminal law, specifically Article 129 that we're

4    dealing with in this case.

5              I also want you to be present during the course of

6    the proceedings, as I'm going to have some questions for you

7    later on this morning in connection with the jury instruction

8    that I've prepared.

9              So you may be -- you may be seated.

10             MR. KIM:  Thank you.

11             THE COURT:  All right.  Let me ask counsel, I know

12   that we have several places in these various pleadings where

13   the parties refer to the Republic of Korea law and South Korean

14   law.  And I think that -- unless the parties are going to

15   object, I think we should use South Korean law wherever there's

16   a reference so the jury is not confused in terms of the

17   Republic of Korea.

18             Does anybody disagree with that?

19             MS. KUMAR:  No, Your Honor.

20             MR. RAYNOR:  That's fine, Your Honor.

21             THE COURT:  All right.  The other thing that I've

22   noticed in these jury instructions, that you've used "the

23   indictment" with the lower case "i."  And we have a First

24   Superseding Indictment in this case.  Is there a reason why you

25   didn't include the First Superseding Indictment in the jury

1    instructions?

2             MS. KUMAR:  No.  I don't think, Your Honor, there

3    was a particular reason behind that.  So we can use the

4    First --

5             THE COURT:  Well, is there a good reason not to

6    include it, since that's the operative pleading in the case?

7             MS. KUMAR:  No, Your Honor.

8             THE COURT:  All right.  So we need to revise the

9    jury instructions to -- and I don't remember the verdict form

10   that well.  But we need to revise those to refer to the First

11   Superseding Indictment, rather than just simply "the

12   indictment."

13            All right.  For purposes of -- we have a lot to

14   discuss today.  But I'm going to take, first, the jury

15   instructions.  And I'm going to make rulings on the -- on the

16   jury instructions, and then I will move to the motions

17   in limine.  And then I will take up various trial management

18   issues with respect to witnesses and the -- and the trial

19   exhibits in this case.

20            So let me begin with the jury instructions.  And for

21   purposes of the discussion or ruling today, I'm referring to

22   the Joint Proposed Jury Instructions that were filed on

23   June 28th, 2017 -- they appear as Docket No. 97 -- as well as

24   the Joint Memorandum of Law regarding the jury instructions.

25   That was filed on June 28th also and appears as Docket No. 98.

1          The issue relates to disputed Jury Instruction

2     No. 20.  The rulings that I'm going to make relate to disputed

3     Jury Instruction No. 20.  That's the 18 United States Code,

4     Section 1957, instruction.

5          And I'll also be ruling on the proposed Instruction

6     No. 21 by the -- proposed by the defendant.  And I'll be ruling

7     also on the disputed Jury Instruction No. 22, which is the

8     Article 129 of the South Korea Criminal Code.

9          The issue with respect to Instruction No. 20 as well

10    as 21 is whether the Government -- or whether the Court is

11    going to instruct that the jury must find -- or whether or not

12    the Court's going to instruct with respect to the definition of

13    "bribery" under 18 United States Code, Section 201.  This was

14    an issue that was raised in the motions to -- the motion to

15    dismiss.

16         If anybody wants to add anything to their papers,

17    I'll hear from you.  Otherwise, I'm going to -- I'm prepared to

18    rule.

19         MS. KUMAR:  Nothing from the Government, Your Honor.

20         MR. RAYNOR:  Nothing further, Your Honor.

21         THE COURT:  All right.  My ruling on disputed Jury

22    Instruction No. 20 is as follows:  The Court will give the

23    Government's proposed instruction and will not give the

24    defendant's proposed Instruction No. 20.  The Government's

25    proposed instruction is based on the Ninth Circuit Model

1    Instruction.  The only modification that the Government

2    proposes is the identification of the specified unlawful

3    activity as contemplated by the Model Instruction.

4              The Court rejects the defendant's argument that the

5    Court must instruct the jury on both the definition of

6    "bribery" under Article 129 of the South Korean Criminal Code

7    and the United States definition of "bribery" under

8    18 United States Code, Section 201.

9              As an initial matter, I agree with the defendant

10   that it must ensure that the definition of "bribery" under

11   Article 129 of the South Korea Criminal Code falls within the

12   category of conduct of bribery of a public official, as

13   contemplated by Section 1956(c).

14             As the Ninth Circuit stated in the case of

15   *United States* -- and I'll spell the last name for the

16   reporter -- L-a-z-a-r-e-n-k-o at 564 Fed.3d 1026, a statutory

17   term is generally presumed to have a -- its common law meaning.

18   The traditional common law definition of "bribery" was limited

19   to the fact of the giving or receiving of anything of value by

20   corrupt -- in corrupt payment for an official act.

21             This common law definition of "bribery" is virtually

22   identical to the South Korean definition of "bribery" pursuant

23   to Article 129, which prohibits a public official from

24   receiving, demanding, or promising to accept a payment as a

25   quid pro quo for exercising his official duties.

1    Defendant, however, argues that the Court should

2    look to the definition of "bribery" under Section 201 to

3    determine the meaning of bribery of a public official, as that

4    term is used in 18 United States Code, Section 1956.  The Court

5    disagrees that had Congress intended to criminalize the

6    laundering of bribery proceeds only where the foreign bribery

7    statutes tracked the requirements of Section 201, it would have

8    said so.

9    Indeed, the relevant section that defines which

10   foreign offenses qualify as specified unlawful activity,

11   specifically incorporates definitions from other United States

12   statutes, including the definition of a controlled substance,

13   which is "as such term is defined for the purpose of the

14   Controlled Substance Act"; two, a crime of violence "as defined

15   in Section 16"; three, a foreign bank "as defined in

16   paragraph 7 of Section 1(b) of the International Banking Act of

17   1978"; and, four, items controlled in the United States

18   Munitions List "established under the various sections and

19   regulations as cited in the statute."

20   However, with respect to bribery of a public

21   official, Congress did not incorporate the definition of

22   "bribery" in 18 United States Code, Section 201.

23   Having satisfied myself that bribery, in violation

24   of Article 129 of South Korea's Criminal Code, is just the type

25   of conduct that Congress intended to cover by a bribery of a

public official, as used in Section 1956(c), the Court

concludes that the jury should only be instructed on the

definition of "bribery" under Article 129.  And I conclude that

it's not necessary to separately instruct the jury on the

United States common law definition of "bribery."

Indeed, in the case that I cited, which is the

principal case relied on by the defendant, the jury was

instructed on the elements of the relevant Ukrainian statutes,

not on the U.S. common law definition of "extortion."

So that's the ruling as to Instruction No. 20.  And

for the same reasons, the Court will not give the defendant's

proposed Instruction No. 21, which is an instruction regarding

the elements of bribery under Section 201.

MR. RAYNOR:  Your Honor, can I make one --

THE COURT:  No.  Once I make a ruling, the ruling is

final and there is no reconsideration.  Otherwise, we'll be

here for days.  If you want to argue, that's why I asked you if

you wanted to argue.

The next issue is with respect to the Article 129.

And that relates to the disputed Jury Instruction No. 22.  And

that is the definition of the elements of the -- of

Article 129.  And if anybody wants to argue, I'll hear from

you.

I can tell you tentatively that I have concluded

that I'm not going to give either of the proposed instructions.

```
 1   I think that both instructions that are set forth in the
 2   Document No. 97 are unclear and would mislead the jury as to
 3   the necessary elements of Article 129.
 4            The Government's proposed instruction merely recites
 5   the statutory language of Article 129 but fails to specifically
 6   set forth the elements that the jury must find, as set forth in
 7   the Government's Notice re: Expert Opinion, which appears as
 8   Docket No. -- Docket No. 71.
 9            Indeed, according to the Government's expert,
10   Mr. Kim, there are three elements that the Government must
11   prove:  One, the recipient of the bribe must be a public
12   official or deemed to be -- be deemed a quasi public official;
13   two, the act or -- the actions or inaction of the public
14   official must be in relationship -- in relation to the public
15   official's duties; and, three, the bribes must be in
16   consideration for the exercise of the public official's duties.
17            If I were to give the Government's proposed
18   Instruction 22, the quid pro quo element or the third element,
19   in my view, would be entirely lost.
20            However, I can tell you tentatively that I agree
21   with the Government that, based upon my review of the -- of the
22   experts' reports as well as the case law, that the Court can
23   and should instruct the jury that a director or a researcher at
24   KIGAM, which is all caps, K-I-G-A-M, is a public official for
25   the purposes of Article 129.  Based upon the parties' agreed
```

 1   propositions Nos. 3 and 4, it's clear that, as a matter of law,

 2   a director or researcher at KIGAM is a public official for the

 3   purposes of Article 129.

 4           As the fact finder, the jury, of course, will be

 5   required to find that the defendant was, in fact, a director or

 6   researcher during the relevant time period and, therefore, was

 7   a public official.

 8           The big issue in this -- this instruction on

 9   Article 129 is the -- as counsel indicated, the nuanced

10   discussion or distinction between "in connection with" a public

11   official's duties and "closely related to" those duties.

12           And I have concluded, based upon my research of the

13   review of the Korean decisions, specifically those at Tab 37,

14   Tab 26, and Tab 27 of the translations that were submitted,

15   that the Government's definition is too broad.

16           I do not believe that the official duties includes

17   any acts within the official's area of influence or general

18   area of responsibility.  And in my instruction that I'll give

19   you in a moment, I use the definition that appears in several

20   of the -- of the cases that I've referred to.

21           I also believe that -- although maybe a correct

22   statement of the law, I do not think that the Government's

23   explanation that the official himself does not need to be the

24   ultimate decision maker and the bribe does not need to have

25   actually influenced the acts of a decision maker or official is

helpful to the jury in the context of the Government's proposed

instruction, given that the elements are not clearly set forth.

In any event, I hope that I've made those concepts

clear in the instruction that I've drafted.

I agree with the defendant that it will be clearer

for the jury if the elements are separated and provided

sequentially.  And although I recognize that the three elements

set forth by the defendant are almost identical to the elements

proposed by the Government's expert, with the exception of the

phrase "closely related to," I conclude that the proposed three

elements --

Well, let me ask the defense.  With respect to your

elements -- and I'm looking at the proposed -- your proposed

instruction which appears on page 29.  You've got three

elements.  One is the defendant is a public official under the

act; and, two, that the defendant received a payment closely

related to his official duties.

I, quite frankly, don't have any idea what that is

referring to.  To me, it's just -- it's confusing.

I think that the issue in this case that you're all

fighting about in terms of "closely related" and "in relation

to" the official duties is really not the appropriate issue.  I

don't think there is a second element.

The causal connection between the payment -- I'll

use "payment" -- or the bribe and in connection with his duties

1    is really the quid pro quo.  Unless you have a quid pro quo for

2    the payment, in other words, the money is paid or promises made

3    or a benefit is conferred or property is transferred, it has to

4    be an exchange for something.  And that something has to be the

5    individual's exercise of his official duties.

6              And I don't -- each side is hung up on this "closely

7    related to" official duties.  But the defense instruction, "the

8    defendant has received a payment closely related to his

9    official duties," I don't know what that means.

10             It's really -- this case boils down to two elements:

11   One, is he a public official; and, two, was the payment made or

12   received as a quid pro quo for his conduct?  And that's really

13   the issue in terms of what his conduct was or is, and that

14   conduct relates to what were his official duties.

15             And the -- and the official duty part of the

16   instruction really, it seems to me, should come into a

17   freestanding definition of what Korean case law requires in

18   terms of official duties as a definition to the jury.  Because

19   I can't imagine a case where you have a quid pro quo payment

20   that isn't in connection with or closely related to an

21   individual's duties.

22             And the key is:  What are those duties?  Because

23   that's what you're fighting about, isn't it?

24             MR. RAYNOR:  That is what we're fighting about.  Um,

25   and the thing is -- like, for example, in the *Oxy* case, which

1    is the last tabbed case in the statements of law, it was found

2    to not be within the scope of the duties, even though the

3    report that he was paid for by Oxy overlapped with the research

4    he was doing for his own facility.

5              So --

6              THE COURT:  But that has to go with the duties, the

7    description of what his duties are, if it falls within his

8    duties or it doesn't fall within his duties.

9              MR. RAYNOR:  Well, I think -- I mean, it's true what

10   the Court says that there -- the second reference to official

11   duties, um, does bring that in somewhat.  But we just think

12   that because of this issue of the relationship of the services

13   provided to the person's official duties, that needs to be --

14   we suggested it needs to be made clear as a separate element.

15             THE COURT:  What does your Element 2 mean?  If I'm a

16   juror -- I don't even understand it.  So if I don't understand

17   it, I don't understand how the jury is going to understand it.

18             MR. RAYNOR:  Well -- and that's why we think that

19   factors are needed --

20             THE COURT:  No.  If you draft a clear element, you

21   don't need any factors.  This element doesn't make sense.  "The

22   defendant received a payment closely related to his official

23   duties."  Tell me what that means.

24             MR. RAYNOR:  That -- that it's something that is,

25   um, basically a core function and why this person is deemed to

```
 1    be a public official.  So let's say, for example, in this
 2    case --
 3              THE COURT:  No.  It's a payment.  You're talking
 4    about a payment.  Closely received to -- closely related to his
 5    official duties.
 6              You've got two concepts in there.  You've got the
 7    quid pro quo, and you have a definition -- you're trying to
 8    inject a definition of his official duties, which I don't think
 9    has any place in this No. 2 element.
10              MR. RAYNOR:  Well, but we have to -- I mean, the
11    thing is this jury instruction is drafted in the context of
12    applying to somebody who is a researcher.  Um, and -- and the
13    Korean law does allow for a researcher in the person's private
14    capacity to trade on their expertise.  And essentially what the
15    second element does is say, you know, the person can trade on
16    their expertise, but it can't affect their duties.
17              So, for example, the Government -- the Government's
18    allegation is that testing was affected or altered or -- and
19    that -- you know, that might be something that, if -- if he
20    were the decision maker, could be an official duty.  But to --
21    to say that, uh, he can't provide a service pursuant to a
22    technical advice fee really doesn't capture what Korean law
23    allows.
24              And that's why we think, because of the context of
25    this case, um, something needs to be in there to allow the
```

1     jurors to distinguish between an allowable advice fee contract,

2     which doesn't involve their official decision making, and

3     something that --

4             THE COURT:  Which all goes to the definition of

5     "official duties."

6             MR. RAYNOR:  And given that the Court has --

7             THE COURT:  Do you agree?

8             MR. RAYNOR:  Well, it does.  But as the Court has

9     said that -- that the Korean law essentially conforms to the

10    basic elements of the generic definition of U.S. bribery.

11    Then, within that --

12            THE COURT:  No.  I did say that for purposes of

13    making my ruling, but now I'm focusing on what the elements are

14    for an Article 129 violation.

15            By the way, does Korea now have jury trials?

16            MS. KUMAR:  Your Honor, my understanding from

17    speaking to our expert is that there is a recent phenomenon in

18    Korea where there is a jury that advises the judge but isn't

19    actually the ultimate decision maker.

20            THE COURT:  So there are no pattern or model jury

21    instructions for 129.

22            MS. KUMAR:  I don't believe so.  I'd have to

23    confirm --

24            THE COURT:  Well, you don't believe so.  That would,

25    to me, be a very important item.

1          Let me ask each of the experts.  Are there any model

2     instructions that are regularly used?  The Government's

3     expert --

4          Why don't you come forward.  You can sit at counsel

5     table if you want.

6          Are there any model jury instructions for

7     Article 129?  Do you know what I mean by "model instruction"?

8          MR. KIM:  I don't know what you mean, Your Honor.

9          THE COURT:  Okay.  Well, in the Ninth Circuit, we

10    have what are called "Model Instructions."  And there's a

11    committee of judges, lawyers that get together and they try to

12    draft an instruction that covers a particular violation of the

13    criminal law.  And then when they all agree, then they call it

14    a "Model Instruction."

15         And so we frequently use Model Instructions for

16    different -- different crimes and different kinds of cases.  Is

17    there any such thing in Korea?

18         MR. KIM:  I'm not aware of there being that type of

19    model instruction in Korea because the function of the,

20    quote/unquote, "jury" is different.

21         THE COURT:  And so the jury doesn't have any

22    instructions?

23         MR. KIM:  They do have instructions.  So they would

24    receive instructions because they are lay persons.  But the

25    jury, A, is something that's -- the defendant has the right to

```
 1   request or not have.  And then once they give an opinion, the
 2   judge only takes it into consideration.
 3              THE COURT:  Okay.
 4              MR. KIM:  So as lay persons, they would receive
 5   instructions of some sort.  They're not like a model
 6   instruction, that I'm aware of.
 7              THE COURT:  Do they make an ultimate decision on the
 8   guilt or innocence of a defendant?
 9              MR. KIM:  Yeah.  They will -- yeah, they will make
10   what they believe, and then the judge will take that into
11   consideration.
12              THE COURT:  Okay.  So a two-step process.
13              MR. KIM:  But in terms of what type of instruction
14   they would give, I'm most confident that they would give an
15   instruction that would be -- that would include the second
16   element because that is something that's clearly defined in all
17   the way the bribery law is structured, the way it's applied,
18   the way it's taught, and the way all Korean court decisions
19   proceed.
20              THE COURT:  Well, I'm going to show you -- or I'm
21   going to provide you with a copy of my instruction, and we can
22   discuss that.
23              Let me ask the defense whether or not -- I saw
24   Ms. Bednarski talking to the expert -- whether or not there are
25   any model instructions that he's aware of.
```

```
 1              Ms. Bednarski, you can just tell me, is there or
 2   isn't there?
 3              MR. ROH:  What am I supposed to say?
 4              MR. KOURY:  He didn't hear the question, Your Honor.
 5              THE COURT:  Well, I assumed that counsel was
 6   discussing with him my question about whether or not there were
 7   any model jury instructions.  Correct?
 8              MR. KOURY:  That was correct.
 9              THE COURT:  And so what was his response?
10              MR. KOURY:  He says that there are instructions that
11   are given to the various parties, but I wasn't able to clarify
12   if there's a model or -- or if it's given on an individual case
13   basis.
14              THE COURT:  All right.  Well, has anybody -- either
15   of the experts provided counsel with an instruction under
16   Article 129 that is used in the cases in South Korea?
17              MS. KUMAR:  The Government does not have any,
18   Your Honor.
19              MR. ROH:  Yes.  To be a little more clear, there is
20   a jury trial that's called public participating trials.  And
21   that is kind of a jury trial.  And that is for any offenses
22   that would be punished over one-year imprisonment of bribery
23   cases and especially the amount is big.
24              THE COURT:  I don't mean to interrupt you, but my
25   question is:  Are there any standard jury instructions in
```

```
 1    South Korea that are used in cases that come under 129 that you
 2    could go to the library or go to some source and pull out an
 3    instruction?
 4           MR. ROH:  Yes.  Um, the -- the presiding judge would
 5    give the -- the jury certain explanations and instructions.
 6    And certain -- for certain laws, yes, it is done by the
 7    presiding judge.
 8           THE COURT:  All right.  Are those published anywhere
 9    or in any way, those instructions?  If I wanted to get a copy
10    of an instruction for Article 129, where would I go to get one
11    or where would you go to get one?
12           MR. ROH:  Even though there is certain documents
13    that I could take a look at, but it is an internal document.
14           THE COURT:  Okay.  So it's not publicly available?
15           MR. ROH:  Correct.
16           THE COURT:  All right.  Okay.  Off on that tangent,
17    let's go back to where we're at.
18           So if anybody wants to argue with respect to the
19    disputed Jury Instruction No. 22, I'll hear from you, if you
20    have anything to say that's not already in the papers.
21           MR. RAYNOR:  Your Honor, one other thing is, given
22    that the Court is not going to give a -- an instruction under
23    201 or a similar generic federal definition and that the Court
24    has basically found that it fits within the generic definition
25    as Congress uses the term, bribery of a public official,
```

1    that -- both the common law and 201 require -- have a -- a

2    requirement that the person act corruptly.

3            And we believe that if -- if you strip away that 201

4    instruction entirely, that unless the -- the term "corruptly"

5    is in there, it's a way that the jurors could very simply

6    understand this concept of whether or not the payment is a

7    bribe or the payment is for some legitimate service.

8            And if it's -- the Court includes the term

9    "corruptly," it's just a term that is very simple, very easy to

10   understand, and would allow the jurors to differentiate between

11   conduct that is intended to influence wrongly, as opposed to

12   allowing a researcher to trade on their expertise.

13           THE COURT:  Well, where is that in your proposed

14   instruction?

15           MR. RAYNOR:  Well, Your Honor, it's in the 201 part

16   but --

17           THE COURT:  Right.  It's not in the Article 129.

18           MR. RAYNOR:  Right.  But given that the Court has

19   found that essentially it meets the requirements of the generic

20   definition, we're saying this is part of the generic

21   definition.  And if you strip it out of the 129 definition,

22   then it's no longer the generic definition, no longer meets the

23   generic definition.

24           THE COURT:  All right.  Does the Government want to

25   add anything?

1          MS. KUMAR:  Yes, Your Honor, several things.

2          First, as to this latter request of adding the term

3     "corruptly," again, defendant appears to be going back to this

4     element-by-element analysis between American law and Korean

5     law, which I think, as the Court has previously ruled under

6     *Lazarenko*, is not appropriate.  Once it fits into that general

7     category of bribery of a public official, then it is the law

8     that is charged that -- of the foreign jurisdiction that is

9     operative.

10         And specifically as to "corruptly" and the way the

11    defendant is trying to use it, which is that it has to be

12    intended to influence or otherwise actually influence, as I

13    think the Court indicated earlier -- although, I'm happy to

14    point to specific cases -- it's quite clear in the case law

15    from Korea that that is not, in fact, the case.

16         The principle of bribery is that you should not be

17    paid to do your job by anyone else other than your employer if

18    you're a public official.  And so as a result, even if you're

19    paid but you don't do anything, if the intent is to pay you for

20    doing something, even if you were going to do that anyway, it

21    doesn't matter and still constitutes bribery because there is a

22    possibility that society at large would doubt your judgment,

23    which is the problem.

24         And so I think the very purpose that the defendant

25    is trying to use this word for is contradicted by the clear

1    case law from Korea.

2            So for that, Your Honor, that's why the Government

3    included those terms in our instruction because I think it is

4    possible and, based on defendant's argument, it's quite clear

5    they're going to make this argument.  And without making that

6    clarification, the jury won't understand that that's not

7    actually an element of the offense.

8            And as the Court said, the question is:  Was the

9    public official paid something in exchange for doing something

10   as part of his job?

11           With that, Your Honor, unless you have specific

12   questions, we'll submit.

13           THE COURT:  All right.  I think the best course of

14   action here is to provide --

15           Did you want to say something?

16           MR. RAYNOR:  No.  I wanted to hear what the Court

17   has to say.

18           THE COURT:  Well, I'm asking if you want to argue.

19           MR. RAYNOR:  Okay.  Yes.

20           And, Your Honor -- and I think what ends up

21   happening is that what the -- the Government just argued for

22   its application is -- would basically bring it beyond the

23   generic federal definition.  And that's the problem, is that

24   they're inviting the Court to make a definition that does not

25   meet at least the minimum standards of the generic federal

1    definition.  And, therefore, there should be this requirement
2    that the person acted corruptly.

3            And I just don't see the prejudice to the
4    Government -- to the Government because it correctly draws the
5    right line in conformance with common law and with 201 and the
6    generic federal definition.  And the problem is that it may be
7    that this definition is drawn up so broadly that it -- it
8    captures conduct that would be legal under the generic federal
9    definition.

10           THE COURT:  All right.  With respect to the elements
11   of the -- of the offense -- and I'm going to give you my
12   instruction in a minute, but I'm going to give you the
13   background for the instruction that I've drafted.

14           I conclude that the second element, as proposed by
15   the defendant that I referred to and discussed with counsel,
16   that the defendant received a payment closely related to his
17   official duties, is not really a separate element of bribery
18   under South Korean law.

19           In my review, it appears that the statutory language
20   and the case law provided by the parties do not separate
21   bribery into these three elements.  In my view, with some minor
22   modifications to the instruction, I believe that the
23   defendant's second element is encompassed by the third element,
24   or the quid pro quo element, of defendant's proposed
25   instruction, i.e., the improper payment was given in exchange

1    for exercising his official duties.

2              It's difficult for me to imagine a situation where a

3    defendant received, demanded, or promised to accept a payment

4    in exchange for exercising his official duties when the payment

5    was not related to the defendant's official duties.

6              In addition, with respect to the "closely related

7    to" his official duties language, I conclude that this language

8    is more appropriate in defining the term "duties."

9              Indeed, in my review of the case law -- and the

10   courts used this language when defining the scope of a public

11   official's duties rather than in relation to the -- "in

12   connection" language of the statute.  I believe that the "in

13   connection" language of Article 129 is meant to cover the

14   quid pro quo element of the offense.

15             So I'm going to ask the courtroom deputy to provide

16   you with a copy of the Court's Instruction No. 22.

17             And while counsel are reading it, so we can have

18   a -- we can have an interpretation, what I'm going to do is I'm

19   going to read the instruction and do this for the benefit of

20   the defense expert.

21             "The Indictment alleges that the property involved

22   in the monetary transaction was derived from bribery of a

23   public official, in violation of foreign law, namely,

24   Article 129 of South Korea's Criminal Code.

25             "Article 129 prohibits a public official from

receiving, demanding, or promising to accept a bribe in
connection with his duties.

"In order to establish that the property involved in
the monetary transaction was derived from bribery of a public
official, in violation of Article 129 of the South Korean" --
"South Korea's Criminal Code, the Government must prove each of
the following elements beyond a reasonable doubt:

"1.  The defendant is a public official for the
purposes of Article 129; and

"2.  The defendant received, demanded, or promised
to accept a payment in exchange for exercising his official
duties or, in other words, as a quid pro quo for exercising his
official duties.

"I instruct you as a matter of law that a director
or researcher at the Korean Institute of Geoscience and Mineral
Resources is a public official for purposes of Article 129.

"Official duties include duties for which the public
official is responsible under the law, acts closely related to
such duties, acts that the public official is practically or
customarily responsible for, and acts that assist or may
influence decision makers."

And that latter definition comes from the cases at
Tab 37, Tab 26, and Tab 27.

So what are counsel's views in terms of the Court's
instruction?

 1          MS. KUMAR:  Your Honor, I think, overall, the

 2   Government is -- this is acceptable.  Although -- I know the

 3   Court's already ruled, but I would just clarify for the record

 4   that the Government's position is that the scope of official

 5   duties is a bit broader.

 6          I'd direct the Court to the case in Tab 19 that uses

 7   the phrase -- and the work duty falls in the category of,

 8   quote, "general authority," even if it's not the work duty that

 9   is not assigned in reality.

10          And then to Tab 24, in which the Court said, um,

11   duties that are handled in the past will be handled in the

12   future, quote, "as well as a whole range of job duties to be

13   carried out by a public official depending on the rank of the

14   official."

15          And then also Tab 35, which states that --

16   analyzes -- this is the case about the policeman who's a

17   traffic cop, but there is -- he sort of disregards another

18   law -- breaking of the law.  And the Court says it's still

19   within his general duties and authority.

20          And so -- and there are several other cases like

21   that, Your Honor.

22          So while we don't disagree that this is correct, we

23   think -- the Government's position would be that there may need

24   to be a little bit more to explain that it's, you know -- the

25   acts within his general authority are -- are considered

```
 1    official duties as well under the law in Korea.

 2              THE COURT:  All right.  What about the defense?

 3              MR. RAYNOR:  Your Honor, the -- the issue that is, I

 4    think, of most concern is the definition of "official duties."

 5    This might come from a discussion of a case.

 6              THE COURT:  It comes from my -- as we all do, we

 7    read a number of different cases.  Each of those cases sets

 8    forth an analysis based upon the facts of those cases.  And

 9    what I've tried to do is I've tried to draw from those various

10    cases an understanding or an appropriate definition for this

11    jury as to what "official duties" are.

12              Let me ask the Government's expert.  Do you have any

13    issues with respect to this instruction?

14              MR. KIM:  Um, I understand the Court's position.

15    Basically from what you're doing, you're subsuming the second

16    element into the third.  So doctrinally, that's -- you're

17    right.  That could be done.  But the way the Korean Courts or a

18    typical treatise would approach, they would always include that

19    second element.  But what you're doing is combining them.  So,

20    in effect, it's the same.

21              In terms of the scope, I would say, as the

22    defense -- justice department's counsel suggested, that the

23    range, the way it's applied is actually broader.  But given the

24    language it's "practically responsible for," a traffic cop

25    would be practically responsible for gambling going on in his
```

```
 1   district and so forth.
 2              So that's in reality.  So I think in reality, that
 3   general authority language would be applied.
 4              THE COURT:  So you give me an A?
 5              MR. KIM:  A minus.
 6              THE COURT:  A minus.  I'll take that.
 7              And what about the defense expert?  What are your
 8   views in terms of the Court's instruction?
 9              MR. KOURY:  Your Honor, he hasn't had an
10   opportunity -- since it's in English, he --
11              THE COURT:  Well, that's why I read it.  It was
12   translated for him.
13              MR. KOURY:  It was very fast.  I would ask if we can
14   have a quick second for him to read it again.
15              THE COURT:  Sure.
16              (Pause in the proceedings.)
17              THE COURT:  Counsel, I'd prefer that you let the
18   interpreter -- I want to get through this.  So let's have --
19   has the interpreter completed reading it?
20              INTERPRETER LEE:  Your Honor?
21              THE COURT:  Have you completed reading the
22   instruction?
23              INTERPRETER LEE:  Yes, Your Honor.
24              THE COURT:  All right.  Then the question I have for
25   you, sir, does that adequately capture or set forth the
```

 1   elements of Article 129?

 2              MR. ROH:  Yes.  Overall, it is correct, Your Honor.

 3              THE COURT:  All right.  Thank you very much.

 4              MR. RAYNOR:  Your Honor --

 5              MR. ROH:  However --

 6              MR. KOURY:  There's a "however."

 7              MR. ROH:  -- there are a couple of things that I

 8   would like to add, Your Honor.

 9              THE COURT:  All right.

10              MR. ROH:  First of all, for the researcher at

11   KIGAM --

12              THE COURT:  No.  That's not an issue.  If you have

13   another issue you want to address -- I don't want you to simply

14   repeat defense counsel's arguments.  I'm asking you as an

15   independent expert, providing the Court with the assistance

16   under Korean law.

17              I don't want you to embellish upon the defense

18   theory of the case.  I recognize you're retained by the

19   defense.  But what I'm trying to do is to reach a reasoned

20   decision or instruction which adequately tells the jury what

21   the elements of Article 129 are.

22              And this instruction, you conclude, is adequate;

23   correct?

24              MR. ROH:  Yes.  That's correct.  However --

25              THE COURT:  There's not a "however."  So thank you

**UNITED STATES DISTRICT COURT**

```
 1    very much.
 2              MS. BEDNARSKI:  It may not be complete, Your Honor.
 3              THE COURT:  Well, it may not be complete, but I
 4    think that it is complete.  And he agrees that it adequately
 5    covers the Article 129 elements.  If he has something else, you
 6    can file something.  But as far as I'm concerned, both of
 7    the -- of the experts agree.  So --
 8              MS. BEDNARSKI:  He may -- but since you didn't let
 9    him explain what his "however" is, I think it's misleading to
10    say --
11              THE COURT:  Well, I mean, all he's going to do is
12    articulate the defense theory of the case.
13              MS. BEDNARSKI:  We don't know that.
14              THE COURT:  Well, I know it because it started out
15    with the difference between the researcher, which is precisely
16    the argument that we started out with this morning.
17              MS. BEDNARSKI:  It may be that the instruction
18    doesn't adequately cover, um, the issue as it applies to a
19    researcher.  And I think that is what he's trying to say.  You
20    may disagree, but I think he should be able to say on the
21    record --
22              THE COURT:  Okay.
23              MS. BEDNARSKI:  -- since he's here.
24              THE COURT:  All right.
25              Wait a minute.  Before we do that, I want the
```

1     courtroom deputy to administer the oath to the -- to the

2     witness.

3               THE COURTROOM DEPUTY:  Please raise your right hand.

4               Do you solemnly swear that the testimony you shall

5     give in the cause pending before this Court shall be the truth,

6     the whole truth, and nothing but the truth, so help you God?

7               MR. ROH:  Yes, I do.

8               THE COURT:  All right.  You may proceed.

9               MR. ROH:  Okay.  Basically, staff members, the

10    employees of KIGAM are private persons.  And based on -- or

11    under the special laws, when they have received money in

12    relation with their duties -- but we do punish them by treating

13    them as public officials when they have received the money.

14              So when it is general government workers, we would

15    apply the term "official duty" in a broader sense.  However,

16    when it is a matter or case of private persons, when we talk

17    about the, um, relatedness of one's duties, we have to apply

18    things based on different standards.  That was confirmed

19    recently based on the *Oxy* judgment.

20              THE COURT:  All right.  Anything else?

21              MR. ROH:  Concerning the public official's duties,

22    what is written here is correct.  However, based on the recent

23    case laws, the quid pro quo is, um, demanding.  So it is

24    important as to whether the, um -- the being influential is an

25    element of that or not.  That is important.

 1          THE COURT:  All right.  Thank you very much.

 2          MR. RAYNOR:  Your Honor, as to the -- aside from

 3  just the objections that we have generally that -- given the

 4  Court has not given the instruction that we've requested,

 5  there's one matter that is of particular concern on page 2

 6  where it says "acts that assist or may have influenced a

 7  decision maker."

 8          That "assist" language is so broad and really

 9  doesn't capture the -- this concept of influencing

10  decision-making and assist.  It doesn't necessarily mean that

11  the person was trying to, uh -- to influence.  It -- they could

12  just be helping in some -- in any manner.  And, you know, I

13  understand that this may have come from case law.  But in this

14  context, I don't think it should be used as an instruction

15  because it will draw in innocent conduct.

16          THE COURT:  All right.  Thank you very much.

17          I will -- based upon this record, I will take a look

18  at the Instruction No. 22 over the weekend.  And I appreciate

19  the experts' input.

20          There are certain other issues that have been raised

21  by counsel with respect to the instruction.  And I'm going to

22  rule on those.

23          The defendant has suggested that there be a

24  unanimity instruction.  And I conclude that it's not

25  appropriate or necessary under the circumstances of this case,

1    as the Supreme Court stated in *Richardson vs. The United States*

2    at 526 United States -- U.S. 813 -- and I'm quoting -- "A

3    federal jury need not always decide unanimously which of

4    several possible sets of underlying brute facts make up a

5    particular element, say, which of several possible means the

6    defendant used to commit an element of the crime."

7            In this case, I conclude that such an instruction is

8    unnecessary.

9            Counsel has also raised the additional factors that

10   they proposed in their jury instruction, a six-part test for

11   "closely related to" or "in exchange for" defendant's official

12   duties.  It's my conclusion that the defendant has

13   cherry-picked these terms and concepts from various cases.  And

14   I conclude that these six factors will merely mislead the jury.

15           And more importantly, based upon my review of the

16   case law, whether or not a public official received payment in

17   exchange for exercising his official duties is based upon the

18   totality of the circumstances, not just on these six specific

19   factors.  Of course, the defendant will be free to argue to the

20   jury that, as a factual matter, the presence or absence of any

21   of these factors justify a certain verdict.

22           I also will not give the second-to-the-last

23   paragraph of the defendant's proposed Instruction No. 22.  I

24   believe that that is adequately defined in the term "official

25   duties" in the instruction that I have drafted and that any

1    further explanation is unnecessary and unwarranted.  Moreover,

2    the second sentence of this paragraph inappropriately delves

3    into facts of this case and is not appropriate for inclusion in

4    the Court's instructions to the jury.

5            As a final matter, the defendant has raised an issue

6    with respect to an instruction as to Article 20 and proposes an

7    instruction that tracks the statutory language.  I conclude

8    that it fails to adequately explain this defense, as it's been

9    interpreted under South Korean case law.

10           Based upon the case law provided by the parties, I

11   agree with the Government that the -- Government's expert that

12   it must be an accepted business practice or rule of society at

13   large, not just within a smaller confined community.  And the

14   support for that proposition, I have relied on Tab 15, 16, 20,

15   and 23 and 36.

16           Moreover, I have reviewed the defendant's offer of

17   proof filed on July 5th, 2017, which was filed in camera and

18   under seal.  That was in response to my concern about the

19   Article 20, as well as Motion in Limine No. 3.

20           And I, based upon my review, conclude that the

21   defendant has not made a sufficient showing that an Article 20

22   instruction is warranted.  However, I am going to defer ruling

23   on whether such an instruction is warranted until after the

24   close of all of the evidence.

25           In the meantime, I order the parties to meet and

```
 1    confer and prepare a joint proposed jury instruction on
 2    Article 20 that more completely and fully describes the state
 3    of the law based upon the case law.  And since you have your
 4    respective experts here, they can assist you in drafting such
 5    a -- such an instruction.
 6              Are the experts going to be here until -- through
 7    the trial?
 8              MS. KUMAR:  Your Honor, I think we were going to
 9    make an evaluation based on the Court's rulings today.  But I
10    think our expert is tentatively scheduled to be here through at
11    least the second day of trial.
12              THE COURT:  What about the defense expert?
13              MR. RAYNOR:  We intend to have him prepared to
14    testify at trial.
15              THE COURT:  All right.
16              MS. KUMAR:  Your Honor, may I inquire as to what the
17    scope of the expert testimony at trial would need to be, given
18    the Court's rulings?
19              THE COURT:  No, because I'm going to require the
20    defense to file an offer of proof as to what his proposed --
21    the expert's proposed trial testimony is going to be.  And you
22    can -- you can file it by Monday.
23              MR. RAYNOR:  And, Your Honor, should that be
24    in camera under seal?
25              THE COURT:  I don't see any reason for in camera
```

**UNITED STATES DISTRICT COURT**

1    under seal.  Everything that he has to say apparently has been

2    submitted in his -- in his declaration.  So I think that this

3    offer of proof -- I have a problem with the way the defense is

4    handling these experts, not the experts but the witnesses and

5    the disclosures, which I'll get to in a minute.

6              So no.  That request is denied.

7              All right.  The next order of business --

8              MR. RAYNOR:  I'm sorry, Your Honor.  Can we just

9    make one request?  That -- that the Court, likewise, order that

10   if the Government is going to call their expert, that they

11   provide an offer of proof?

12             THE COURT:  Sure.  Government has no problem with

13   that.

14             MS. KUMAR:  No, Your Honor.  But I need to see the

15   defendant's offer of proof in order to -- in order to determine

16   that because based on what the Court has ruled, based on these

17   jury instructions, I'm not sure where expert testimony is

18   fitting.

19             But if there's -- we didn't see the offer of proof

20   as to Article 20, nor regarding KIGAM rules.  So we are very

21   much in the dark as to what the proposed testimony would be or

22   what the proffer would be.

23             So I would reserve the right or I would ask the

24   Court to be able to respond to the defendant's offer of proof,

25   since it's the defendant who's saying that the experts need to

1    testify.

2            THE COURT:  So you would then call your witness as a

3    rebuttal witness.

4            MS. KUMAR:  Well, we could call him in our case in

5    chief, depending on what the offer of proof is.

6            THE COURT:  Well, we'll see.

7            MR. RAYNOR:  And, Your Honor, their expert is on

8    their witness list.

9            MS. KUMAR:  As an abundance of caution, depending on

10   how the Court's rulings today came out.

11           THE COURT:  All right.  Well, if you're going to

12   call your expert -- you're going to file by Monday; right?

13           MR. RAYNOR:  Yes, Your Honor.

14           THE COURT:  Okay.  Then I'll give the Government

15   till close of business on Tuesday to file its offer of proof.

16   Plenty of time to do it.

17           All right.  The next series of issues are the

18   motions in limine.  And those were filed on June 29th.  And

19   there's a series of 1 through 7.  And there was a late filed

20   Motion in Limine No. 8.

21           So I'm going to go through these in the following

22   order.  I'm going to rule on 1, 2, 4, 5, 6, 7, 3, and 8.

23           So we'll take Motion in Limine No. 1 first, which is

24   the Government's motion to introduce evidence of defendant's

25   use of proceeds, the massage and golf expenditures.

```
 1              And my tentative ruling is to deny the motion, the
 2    Government's motion.
 3              So I don't need to hear from the defense.  So if the
 4    Government wants to add anything to the motion, I'll hear from
 5    you.
 6              MS. KAMINSKA:  Your Honor, we believe that the
 7    evidence of the use of funds is probative of the defendant's
 8    efforts to keep the illegal relationship with the company
 9    secret.  We also think that the core allegation in the First
10    Superseding Indictment is, in fact, use of funds.
11              And so to the extent, then, there is evidence that
12    he transferred the monies in the initial -- in the first
13    instance to the Merrill Lynch account in New York --
14              THE COURT:  I'm not talking about the transfers of
15    money.  I'm talking about the specific evidence the Government
16    wants to put on through the bank statements that the defendant
17    spent the money on massages and golf.
18              All of the other financial information in terms of
19    the deposits to the Bank of America account, the transfers to
20    Merrill Lynch, and the percentage of monies that were returned
21    to the defendant that he spent in Korea, all that's fine.  I'm
22    just going to the issue of the massage and the golf.  I don't
23    see how that has any relevance whatsoever.  I know you have a
24    theory that it shows that it's greed.  But if everybody was --
25    I just don't see the relevance of it.
```

1          MS. KAMINSKA:  Understood, Your Honor.  I think what

2     we were getting at is that it completes the story of what he

3     did with the money and furnishes the motivation --

4          THE COURT:  What difference does it make?  What if

5     he gave it to charity?

6          MS. KAMINSKA:  Well, Your Honor, I think the point

7     is that the nature of the expenditures are such that it

8     furnishes the motivation for him to keep the bribery scheme

9     going --

10          THE COURT:  Why?  Because he likes to get massages

11     and play golf?

12          MS. KAMINSKA:  Because the objective is personal

13     enrichment, Your Honor.  And were they other types of expenses,

14     perhaps they would not be probative of his interest in keeping

15     the bribery scheme going.

16          THE COURT:  Well, I think that argument borders on

17     the frivolous, but I appreciate it.

18          Anything else?

19          MS. KAMINSKA:  No, Your Honor.

20          THE COURT:  All right.  The following will be the

21     ruling of the -- of the Court.

22          The Government's motion relates to a theory that the

23     expenses are related to -- the expenditures are inextricably

24     intertwined, which is one of my favorite doctrines, or,

25     alternatively, they come in under 404(b) because it shows the

1    defendant's motive for committing the bribery was greed.  The

2    defendant seeks to preclude the Government from introducing

3    that evidence.

4          As the Ninth Circuit explained in *United States vs.*

5    *Loftis*, L-o-f-t-i-s, at 843 F.3d, there are generally two

6    categories of cases in which other act evidence is inextricably

7    intertwined with the crime with which the defendant is charged.

8    Those are cases in which the evidence constitutes part of the

9    transaction that serves as the basis for the criminal charge;

10   and, two, cases in which the evidence is necessary to permit

11   the prosecutor to offer a coherent and comprehensible story

12   regarding the commission of the crime, such as in certain cases

13   where the Government must explain circumstances under which

14   particular evidence was obtained or the events surrounding the

15   commission of the crime.

16         I conclude that this evidence does not fit into

17   either category.

18         First, the defendant's expenditures on massage and

19   golf are not part of the transactions that serve as the basis

20   for the criminal charges.  Nevertheless, the Government argues

21   that the First Superseding Indictment charges in one of the

22   paragraphs that the defendant, with moving funds from his Bank

23   of America account to his Merrill Lynch account, with using

24   funds from the account for a number of personal expenditures,

25   largely in South Korea, including on massages, restaurants, and

1    entertainment.

2           So to prove the allegations of the First Superseding

3    Indictment, the Government, according to its theory, must be

4    able to show the jury the evidence of how defendant used the

5    funds.

6           But the transactions identified in pages 5 and 6 of

7    the First Superseding Indictment that allegedly constitute

8    impermissible money transactions, monetary transactions of

9    criminally derived property under Section 1957, all involve his

10   transfer of funds from B of A to Merrill Lynch brokerage

11   account, not the defendant's expenditures of money from those

12   accounts on personal items.

13          Thus, the allegations regarding how defendant spent

14   the proceeds he obtained are, in my view, irrelevant, and the

15   information -- irrelevant to the crime charged.

16          As the Ninth Circuit noted in *United States vs.*

17   *Ward*, 747 Fed.3d 1184, a conviction may be obtained if the

18   proof on which it is based corresponds to the offense clearly

19   described in the Indictment.  A part of the Indictment -- a

20   part of the Indictment unnecessary to the allegations and

21   independent of the allegations of the offense is a useless

22   averment.

23          Moreover, the evidence of how the defendant spent

24   the proceeds is not necessary to permit the Government to offer

25   a cohesive story of how the crime occurred, as the Government

does not need to discuss the expenditures to show how evidence

was obtained or the circumstances surrounding the commission of

the -- of the crime.  Rather, the Government can explain to the

jury how defendant facilitated the allegedly illegal

transactions without regard to how the funds were spent.

To that extent, if the Government wants to introduce

evidence to show that defendant spent the illegally obtained

funds in Korea, they can certainly do so.  They can even go so

far as to show the percentage of the funds defendant spent in

Korea, but it does not need to put into evidence specific items

or activities the funds were used to purchase.

I've also considered the defendant's argument as to

the admissibility under 404(b).  And I conclude that, even if

the Government could satisfy all of the four elements, I find

that the risk of prejudice to the defendant significantly

outweighs any probative value of the evidence if I were to

admit it.

So on those grounds, one, I don't think it meets the

elements of a 404(b).  And two, even if I did conclude that it

did, I would conclude that it would be appropriate to exclude

it under 403.  Accordingly, the Court denies the Government's

request to admit evidence as to how the defendant spent the

illegally obtained proceeds.

All right.  Motion in Limine No. 2.  This is --

relates to the Government's motion to preclude references to

```
 1   defendant's criminal status in Korea.  The Government's theory
 2   is that any argument as to whether or not defendant has been
 3   arrested, charged with, or convicted of a criminal offense in
 4   Korea should be precluded because the evidence is irrelevant to
 5   the charges in this case and, if admitted, may distract or
 6   confuse the jury.
 7              I agree with the Government, and it's my intention
 8   to exclude any such evidence.
 9              So if the defendant wishes to add anything to the
10   papers that have been filed, it may do so.
11              MR. LAHUE:  Good morning, Your Honor.
12              THE COURT:  Who are you?
13              MR. LAHUE:  My name is Kevin LaHue.  I entered a
14   notice of appearance earlier this week.
15              THE COURT:  Okay.  Well, I have a rule that only
16   lead counsel speak in this court, but I'll make an exception
17   today since you're new to the team.
18              MR. LAHUE:  Thank you, Your Honor.
19              You know, the evidence in this case will show that
20   Dr. Chi received money through a technical advice contract for
21   well over a decade.  And if there was any evidence that a
22   Korean law enforcement had contacted him during that period and
23   said, you know, we believe this conduct is potentially illegal,
24   we want to talk to you about it, and then after that he went
25   and deposited that money in a U.S. bank, the Government -- and
```

1    I believe the Court -- would find that's probative of his

2    subjective knowledge that the funds were illegal.

3              So it seems that Congress should also be --

4              THE COURT:  It's the same thing you argued in the

5    motion.

6              MR. LAHUE:  Sure.

7              THE COURT:  I mean, I'm asking you if you have

8    anything to add to the papers.  I've read the papers.  I've

9    read the cases.  I understand what the issue is.  If you have

10   something to add, I'll certainly hear from you.  But I'm not

11   just going to have you regurgitate what's in the papers.

12             MR. LAHUE:  Understood, Your Honor.

13             All I have to add is if this is the only evidence --

14   the only reason to exclude this would be prejudice because the

15   jury will improperly conclude it's not bribery because Korean

16   law hasn't prosecuted him yet.  But I think that's adequately

17   covered with the -- our agreement, our stipulation with the

18   Government, that we're not going to argue overreach.  We're not

19   going to say that -- you know, that we shouldn't prosecute it

20   here because it's not prosecuted there.  We've already agreed

21   to that and also an appropriate limiting instruction where we

22   say this is only to be considered for his subjective knowledge

23   as to the money laundering count.

24             THE COURT:  All right.  The following will be the

25   ruling on Motion in Limine No. 2.

1           The defendant contends that the evidence that he's

2    not been arrested, charged with, or convicted of bribery under

3    Article 129 of the Korean Criminal Code is relevant and

4    admissible for the purpose of establishing he did not know the

5    transactions involved criminally derived property.

6           To support his position, the defendant relies

7    heavily on a case in which the Government presents evidence.

8    And that case is *United States vs. Pizano*, P-i-z-a-n-o.  It's

9    from the Eighth Circuit.  In that case, there was evidence that

10   the authorities had notified the suspect that illegal activity

11   was occurring.  To prove the suspect had knowledge, proceeds

12   were derived from the illegal activity.

13          The defendant argues the same logic applies here.

14   And the fact that Korean law enforcement never investigated or

15   disciplined him for his actions is relevant and

16   circumstantially supports his claims that he was subjectively

17   unaware that the money was derived from an unlawful bribery

18   scheme, which I find incredible in light of the e-mails where

19   Dr. Chi admitted that he knew that he was participating in

20   unlawful conduct and further admitted that to Mr. Potts.

21          But in any event, I find that the argument is not

22   persuasive.  And I conclude that whether defendant has been

23   arrested, charged with, or convicted of a crime in Korea is not

24   relevant to the defendant's state of mind.

25          The fact that the Korean authorities never pointed

out to defendant by arresting or charging him that his
activities may constitute bribery does not have any tendency to
show whether defendant himself believed his conduct was illegal
or that the proceeds were derived from criminal activity.  And
more importantly, if he had any issues, he could have gone and
knocked on the authority's door and said, "Here's what I'm
doing.  Do you have any problem with it?"

In addition -- of course, he didn't do that because
he knew what he was doing was unlawful.

In addition, even if the evidence was somehow
relevant, the balancing test of 403 weighs in favor of
excluding the evidence.  Under 403, the Court may exclude
relevant evidence if its probative value is substantially
outweighed by the dangers of unfair prejudice, confusing
issues, misleading the jury, undue delay, wasting time, or
needlessly presenting cumulative evidence.

If the evidence that the Korean authorities had not
arrested or charged the defendant with bribery was admitted,
there's a significant risk the jury will improperly infer the
defendant is innocent of the charges in this case.

But as the Government points out, authorities
consider many factors when deciding whether to charge an
individual with a crime, including timing, allocation of
resources, and prosecutorial priorities, none of which have any
bearing on whether the Korean authorities believed the

1    defendant had engaged in unlawful activity.

2         Moreover, there's no evidence that simply because

3    Korean authorities have not yet arrested or charged the

4    defendant with a crime, they will not arrest or charge him in

5    the future.

6         Thus, I conclude that the minimal probative value of

7    this evidence, if any, is substantially outweighed by the

8    danger the evidence will mislead or confuse the jury.

9         And so that will be the ruling on Motion in Limine

10   No. 2.

11        Motion in Limine No. 4.  This motion in limine seeks

12   to preclude the introduction of evidence and argument regarding

13   the United Kingdom's Serious Fraud Office, reasons for

14   terminating the agreement that apparently it had with

15   Natalie Pearce.

16        It appears that in 2016, Pearce entered into a

17   cooperation agreement with the Serious Fraud Office as part of

18   its ongoing criminal investigation of the company GSL, bribery

19   of the defendant.  Shortly thereafter, SFO decided to terminate

20   its agreement with Pearce, in part, because it had concerns

21   about her credibility.

22        The Government seeks to prevent the defendant from

23   inquiring about the reasons the agreement was terminated.  The

24   Government contends this evidence is inadmissible hearsay and

25   calls for speculation.

1          According to the Government, permitting the

2     defendant to question Pearce on this issue would cause -- would

3     constitute an improper attack on her character and create a

4     potentially confusing trial within a trial because it would

5     require the introduction of evidence that explains why the

6     Serious Fraud Office may have made such a finding and the

7     context of its investigation.

8          Defendant argues that it's inappropriate for the

9     Court to rule on this issue in a motion in limine and urges the

10    Court to wait and see how the evidence plays out.  According to

11    the defendant, the evidence is relevant for non-hearsay

12    purposes of the effect it had on Potts and Coleman's state of

13    mind and their motive in conducting their respective

14    investigation and contends that the evidence suggests that

15    Pearce has credibility issues and she should be given leeway to

16    test her bias and credibility.

17         The Government, if I'm understanding this, says that

18    it does not know why the SFO, which is the Serious Fraud

19    Office, terminated the agreement.  Is that correct?

20         MS. KAMINSKA:  No.  To clarify, Your Honor, I think

21    the issue here is that it's unclear whether Ms. Pearce knows

22    why the communication --

23         THE COURT:  Well, do you know?

24         MS. KAMINSKA:  Well, I --

25         THE COURT:  Pearce is a Government witness and was

1    granted immunity; correct?

2           MS. KAMINSKA:  That's right, Your Honor.

3           THE COURT:  So why not call up Pearce and ask her if

4    she knows why they terminated her status as a -- as a

5    cooperating witness.

6           MS. KAMINSKA:  Your Honor, we've made that inquiry,

7    but we made it through counsel.  And the response that we got

8    was that the counsel would have to check with SFO.  And given

9    the confidentiality that surrounds what the SFO does, we have

10   never gotten an answer.  But the inquiry has been made.

11          So I think the bottom line is we don't know if she

12   knows.  But our position is that eliciting information about

13   what the SFO told her is hearsay, and there are certain other

14   lines of cross-communication -- I mean -- I'm sorry,

15   cross-examination that the defense counsel can pursue in order

16   to assess out what happened with that relationship.

17          For instance --

18          THE COURT:  You don't have to go on.  I'm not going

19   to rule on this motion.  I'll agree with the defendants, I'll

20   defer it until the time of -- the time of trial.

21          But I can tell you that, as far as I'm concerned,

22   that's going to be an area that they're going to be allowed to

23   get into.  But I'll certainly hear the question, and I'll rule

24   on the objection.

25          And the fact that the Government does not know

 1   whether or not Pearce knows why the agreement is terminated, to

 2   me, is silly.  But -- so I'll defer ruling on that motion.

 3            Motion in Limine No. 5 is to preclude the letter

 4   from KIGAM to Mr. Potts.  And this is the letter from -- I'm

 5   going to spell the name -- J-o-o-n-g, hyphen, initial cap, H-o,

 6   last name is Shin, S-h-i-n, who is the current president of

 7   KIGAM, who wrote to Potts, who is the current CEO of GSL, on

 8   February 7th, 2017.

 9            This is an issue that I have with respect to

10   witnesses for the defense.  This issue -- or this motion --

11   it's clear the letter's hearsay, and I'm not going to allow the

12   letter to come in.

13            But isn't Mr. Shin going to be testifying at trial?

14   Based upon the offer of proof, he's going to be a witness at

15   this trial.  So why are we fighting about this letter if he's

16   going to be here and presumably is going to testify as to what

17   he wrote in the letter?

18            MR. RAYNOR:  Because we don't want it for that

19   hearsay purpose.  We want to show the effect that this letter

20   had.

21            Even though they were given certain information, the

22   way in which they reacted shows bias.  And so that's -- that's

23   the purpose we wanted to admit it for is -- and so it may be

24   that the same substance of this letter comes in through --

25   through Mr. Shin -- or Dr. Shin.  But we want to be able to

```
 1    explore the fact that they were told certain information
 2    pointing to innocence.
 3                THE COURT:  Who's "they"?
 4                MR. RAYNOR:  Well, Chris Potts, number one.  And
 5    also the FBI, Agent Coleman.  So they received this document,
 6    and -- and we want to be able to ask --
 7                THE COURT:  Yeah, but the -- but so what?
 8                MR. RAYNOR:  Well, it has to do with whether this is
 9    a -- they kind of had their blinders on.  They were only
10    looking for evidence of guilt.  And did evidence pointing to
11    innocence factor into their investigation?
12                THE COURT:  But you're going to ask that in
13    cross-examination.  Before --
14                MR. RAYNOR:  Well --
15                THE COURT:  Don't interrupt me.  I'll let you speak;
16    you let me speak.
17                You can form questions and ask each of those
18    witnesses on cross-examination, "Did you receive any
19    information as to X, Y, and Z?  What effect, if any, did that
20    have on your investigation?"  Why do you need the letter?
21                MR. RAYNOR:  Well, let's say they -- it's more for
22    witness control issues because let's say they deny it, we want
23    to have something to prop them with.
24                THE COURT:  Well, to me, it's hearsay.
25                So I'm going to grant the Government's motion.  And
```

1    it's particularly troublesome, given the circumstances

2    surrounding the way this letter came about, and that is if

3    my -- if my memory serves me -- yes.  The -- well, I'll make a

4    ruling so we have a clear -- a clear record.

5           There's no dispute that Shin did not make the

6    statements while testifying at trial or a hearing in this case,

7    although he may be a witness.  To the extent the defendant

8    wants to offer the statements for their truth, I find that it's

9    inadmissible hearsay.

10          In addition, I find that defendant's argument that

11   the statements are admissible to show Shin's state of mind

12   unpersuasive.  803(3) states that the hearsay rule does not

13   exclude a statement of the declarant's then existing state of

14   mind.  Defendant argues the statements are admissible under

15   803(3) because they're evidence of Shin's state of mind, as

16   they demonstrate his belief that KIGAM permits its employees to

17   provide technical advice to companies and that it's acceptable

18   for KIGAM employees to enter into advice fee contracts.

19          As set forth in *United States vs. Ponticelli*,

20   P-o-n-t-i-c-e-l-l-i, at 622 Fed.2d 985, the Ninth Circuit

21   explained the theory behind the exception set forth in 803(3)

22   is that the greater the circumstances for misrepresentation,

23   the less reliable the declaration.

24          Accordingly, the Ninth Circuit stated the Court must

25   consider three factors when determining whether to admit

1    evidence under 803(3) -- contemporaneousness, chance for

2    reflection, and relevance.

3            The circumstances surrounding this letter suggested

4    the statements are not reflective of Shin's state of mind at

5    the time he wrote the letter.  The Government has presented

6    facts that suggest Shin made the statements on February 7th,

7    2017, long after both Potts and the Government began

8    investigating defendant's activities, and that the statements

9    were provided only after the defendant called Shin from jail on

10   January 10th, 2017, to ask him to draft a letter asserting that

11   KIGAM employees are not public officials and that they are

12   permitted to receive payments for private consulting services.

13           I notice that there were some transcripts of

14   jailhouse conversations.  Is this one of those that's in the

15   exhibit list?

16           MS. KAMINSKA:  That's correct, Your Honor.

17           THE COURT:  It is?

18           MS. KAMINSKA:  It is one of those transcripts.

19           THE COURT:  I also find that the statements are not

20   admissible for probing Potts's bias.  Defendant contends Potts

21   received the letter from Shin approximately a month before he

22   was interviewed by the FBI; that Potts still maintained that

23   defendant told him that the defendant was a government

24   employees and that defendant knew the receipt of a technical

25   advice fee was illegal under Korean law.

1          In defendant's view, because Potts continued to take

2     this position even after Shin told him defendant was not a

3     government employee, that it was permissible, and that it was

4     permissible for KIGAM employees to enter into advice fee

5     agreements, suggests Potts is biased.

6          Accordingly, the defendant argues he should be able

7     to explore the effect of the letter on Potts during the

8     cross-examination as a means of inquiring into his bias.

9          The Supreme Court noted in *United States vs. Abel* at

10    469 U.S. 45 that the Federal Rules of Evidence permit a party

11    to introduce evidence of bias where it has a tendency to make

12    the facts a witness testifies to less probable in the jury's

13    eyes than the facts would be without the evidence.

14         But Shin's statements do not meet, in my view, this

15    standard.  The statements were made two years after Potts first

16    began -- began investigating defendant's activities and after

17    defendant himself admitted in e-mails that he was a government

18    official, that he was not permitted to receive advice fees.

19         Moreover, as the Government notes, the evidence

20    shows that Potts formed the opinion that defendant's advice fee

21    agreement was improper in 2015 based upon the investigation and

22    facts that he gathered during his company's internal

23    investigation of its arrangement with the defendant.

24         Thus, the Court finds that Shin's statements do not

25    have any tendency to make the facts Potts testifies to less

1    believable.

2          Finally, the defendant asserts that the evidence is

3    admissible for purposes of evaluating whether FBI Agent

4    Coleman's investigation was flawed.  In defendant's view, the

5    evidence is relevant impeachment evidence because on its face

6    it contradicts the Government's position that KIGAM employees

7    are prohibited from entering into advice fee contracts and,

8    therefore, goes to the issue of whether Coleman conducted a

9    thorough investigation.

10          I am certainly not persuaded by that argument.  The

11   facts of this case suggest that Shin offered the statements

12   after defendant was already in prison, and defendant dictated

13   the statements that Shin should provide.

14          Accordingly, the Court grants the Government's

15   motion to exclude the letter Shin sent to Potts.

16          As to allegations number -- I'm sorry.  As to Motion

17   in Limine No. 6, this was the motion that needed to have a

18   corrected motion filed because someone didn't include the

19   Government's argument.  It appears as Docket No. 110.

20          This motion seeks to exclude the witness statement

21   from -- I'll spell the name -- B-y-u-n-g, the middle name is

22   W-o-o-k, and the last name, surprisingly, is Kim -- the head of

23   KIGAM's accounting office in Korea who met with the Korean

24   authorities April 13th, 2017.

25          Again, based upon the offer of proof, it seems that

```
 1    Mr. Kim is going to be a witness in this case.  Correct?
 2              MR. RAYNOR:  Yes, Your Honor.
 3              THE COURT:  So --
 4              MR. RAYNOR:  I mean, if he's available.  But,
 5    Your Honor, there's also the other people that are still to be
 6    interviewed that we're not going to have access to.
 7              THE COURT:  But that's not before me.  What's before
 8    me is seeking to exclude the sworn statements made by Mr. Kim.
 9    And if Mr. Kim is going to be a witness, then this whole motion
10    that I spent time working up is irrelevant.  Correct?
11              MR. RAYNOR:  If he, in fact, shows up, it would be.
12              THE COURT:  Well, I assume that you made
13    arrangements for him to be -- participate in the trial.
14              MR. RAYNOR:  Yes.
15              THE COURT:  Okay.  Well, then, if that's the case,
16    why didn't you tell me that so I didn't spend the time and
17    effort to work up a ruling on Motion in Limine No. 6?  You
18    know, I've got better things to do than to work up motions
19    which are either moot or no longer appropriate.
20              In any event, I'm not going to give the ruling, the
21    full ruling that I had worked up.  But I am not going to permit
22    the sworn statement of Mr. Kim to be admitted in this trial.
23    It's clearly -- it's clearly hearsay.
24              And as you pointed out in your April filing, that --
25    when you were talking about these various Korean witnesses,
```

```
 1    that if they would not be available to testify at trial, that
 2    you would exercise your rights under Rule 15 and you would go
 3    to Korea and take their deposition where the Government could
 4    participate and have the opportunity to cross-examine.
 5               So I'll withhold ruling on this, but I can tell you
 6    that my tentative ruling is that the sworn statement is not
 7    admissible.
 8               All right.  Motion in Limine No. 7 is -- oh, yeah.
 9    This is the -- Motion in Limine No. 7 is the defendant's
10    efforts to preclude the Government from using the word "bribe"
11    or similar terms at trial, except during opening and closing
12    arguments.  Defendant anticipates the Government will elicit
13    testimony from Potts, Pearce, and perhaps other lay witnesses
14    that characterize payments received by defendant as "bribes."
15               My tentative ruling is to deny the motion.  So if
16    you want to be heard, I'll hear from you.
17               MR. LAHUE:  Yes, Your Honor.
18               All I would add to the papers is that it's taken two
19    experts from Korean and several months for the parties and the
20    Court to determine what is bribery under Korean law.  And so to
21    allow a lay witness from the U.K. or the United States to throw
22    that out there and characterize something as a "bribe" would be
23    ill-informed and prejudicial.
24               THE COURT:  You know, I find it amazing that you
25    take that position because I look at the agreed statement that
```

1  you prepared and were going to read to the jury, and the agreed

2  statement says "bribes," uses the word "bribes."

3          But in any event, I appreciate your argument.

4          I conclude that the Government should be allowed to

5  use the term at trial because the words are relevant and

6  necessary for the jury to understand the defendant's course of

7  conduct.  I find that the term "bribe" is a commonly used term,

8  and its definition is widely understood.

9          Indeed, the dictionary defines the term as "money or

10  favor given or promised in order to influence the judgment or

11  conduct of a person in a position of trust."  It's also widely

12  known that bribery constitutes unlawful conduct.

13          Therefore, the Government's use of the term "bribe"

14  is not confusing.  It doesn't implicate Rule 702 or call for an

15  expert opinion.  More importantly, the defendant characterized

16  his own conduct as unlawful in e-mail correspondence to Pearce

17  and during his in-person meeting with Potts.

18          Therefore, the Government's use of the term "bribe"

19  or some variant may be relevant and necessary when eliciting

20  testimony from Pearce, Potts, and possibly others about the

21  nature of GSL's relationship with the defendant and the

22  payments it provided to him.

23          Accordingly, I will deny defendant's Motion

24  in Limine No. 7.

25          All right.  Motion in Limine No. 3.  This is the

1   Government's motion to limit the admissibility of evidence

2   offered by the defendant that he followed KIGAM rules and had

3   appropriate approval.  This motion appears as Docket No. 105.

4           The Government disputes that either defendant's

5   adherence to the KIGAM rules or his receipt of approval from

6   the supervisor precludes him from being convicted of bribery

7   under Korean law.  Accordingly, the Government asks the Court

8   to give a limiting instruction that this evidence is only

9   admissible as to whether the defendant knew he was transacting

10  in criminally derived proceeds and that it may not be

11  considered for any other purpose.

12          In order to assist the Court in ruling on this

13  motion, I ordered the defendant to file an offer of proof as to

14  the evidence it would seek to introduce.  That offer of proof

15  was filed in camera and under seal on July 5th, 2017.

16          The defendant's argument is that the limiting

17  instruction is inappropriate because the policies and

18  practices, as well as the approval, is relevant for purposes

19  other than whether or not he committed the specified unlawful

20  activity of bribery.

21          I'll hear from the Government, but I agree with the

22  defendant in this -- on this issue.  I think that we have the

23  elements of Article 129, and I think the jury is perfectly

24  entitled to -- I don't know how they're going to prove it.  But

25  I think the jury is entitled to understand what the rules and

 1    regulations and the issues that were facing Dr. Chi in terms of

 2    his agreements at KIGAM were.

 3              So if you want to add anything to your papers, I'll

 4    hear from you.

 5              MS. KAMINSKA:  Your Honor, I think it's in our

 6    papers.  The only thing I would add is that we don't think that

 7    the -- whether or not he complied with the rules is

 8    determinative of the violation of Article 129 --

 9              THE COURT:  Well, I don't think it's -- certainly,

10    it doesn't mean that if he conformed with the rules, he's not

11    guilty.  That's not going to be an argument of the defense.

12    But certainly, if he conformed to the rules, it's evidence the

13    jury can use and rely on in making their determination as to

14    whether or not the Government has proved each of the elements

15    of 129.

16              MS. KAMINSKA:  But I think as a matter of Korean

17    law, the compliance with the rule does not vitiate a violation

18    of Article 129.  So to the extent it's relevant, it's only

19    relevant to the state of mind in terms of the elements of 1957.

20              THE COURT:  It's relevant as to whether or not he

21    committed a violation of the act.

22              MS. KAMINSKA:  Your Honor, our position is perhaps

23    it is relevant in determining whether he had violated a policy

24    of his employer.  But it is not probative of whether or not

25    there's been a violation of 129.  And one can imagine

circumstances where someone is in full compliance with the rule and yet violates the criminal law and vice versa; that is to say, someone violates an internal rule and is, nevertheless, within the bounds of the law.

And so we think one is not coextensive with the other and, therefore, that the limiting instruction would be appropriate under the circumstances.

THE COURT:  All right.  Well, I disagree.

My ruling is under 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.

I agree with the defendant that the evidence that KIGAM policies and practices allowed for technical advice fees and the KIGAM management is aware of and approves receipt of those fees is highly probative on the issue of whether or not the defendant has violated Article 129.

Also, the defendant asserts that the evidence is relevant to demonstrating that his conduct did not violate the law.  Article 129 prohibits a public official from receiving a bribe in connection with his duties.  To convict the defendant, the Government will need to prove that he was a public official and that he received, demanded, or promised to accept payment as a quid pro quo for exercising his official duties.

Thus, the scope of his official duties is a critical

1   issue in this case.  The defendant argues that the best source

2   of evidence for accurately determining the scope of his duties

3   is to look at KIGAM's policies and practices.  I find that that

4   argument is persuasive.

5        Moreover, defendant noted in his offer of proof that

6   KIGAM policies permit employees to engage in outside consulting

7   work in their individual capacities for pay.  I find that this

8   evidence is relevant to whether the defendant acted in the

9   scope of his official duties in exchange for the payments that

10  he received from the -- from the two companies.

11       So that will be my ruling on Motion in Limine No. 3.

12       All right.  The final motion in limine is Motion

13  in Limine No. 8.  This is the motion in limine that was filed

14  by the Government on July 5.  It appears as Docket No. 122.

15       In response to that motion, I issued a minute order

16  requiring the defendant to file an offer of proof as to these

17  two experts that they intend to call.  I also received the

18  Government's response yesterday.

19       I'm not prepared to make a formal ruling on this

20  motion, since you folks keep filing stuff and there's only so

21  many hours in the day.  But I guess my initial -- first of all,

22  there is no offer of proof by the financial expert, so I'm not

23  going to let him testify.  So he's excluded.

24       The only other expert is the seismologist.  I have

25  severe reservations as to whether or not that testimony is

 1   admissible.

 2          But more importantly, if you're going to have all

 3   these people from KIGAM testifying in terms of what Dr. Chi's

 4   duties and responsibilities were at KIGAM, I don't see what the

 5   relevance of an expert is who has absolutely no idea of what

 6   Dr. Chi did on a day-to-day basis over the last ten years when

 7   he was receiving these monies.

 8          At least the Government's individual, Gee, who it's

 9   going to call, not as an expert, that individual actually had

10   some interaction with Dr. Chi and understands what KIGAM does

11   based on personal knowledge.

12          So I don't see what -- I don't see how you're going

13   to qualify this expert to provide this testimony that is set

14   forth in the offer of -- offer of proof.

15          MR. KOURY:  Well, Your Honor, while it's true that

16   we are going to call people from KIGAM who are going to talk

17   about Dr. Chi's responsibilities and the work that he did there

18   in relation to the scope of duties issue, what is missing is

19   people that can interpret exactly what the language means.  The

20   language is highly technical --

21          THE COURT:  What language?

22          MR. KOURY:  The language -- the Government's going

23   to submit hundreds of e-mails that have highly technical kind

24   of information.  I can give you just a line or two of the kind

25   of language we're talking about.

1    "Most GSN stations have a primary VBB" -- that's V,

2  as in victor, B as in boy, B as in boy -- "sensor and a

3  secondary BB sensor" -- B as in boy, B as in boy.  "All volt

4  type VBB sensors are STS-1."  It's -- it's language like this

5  that I think is helpful for the jury to understand what Dr. Chi

6  is doing to distinguish his duties as a researcher as opposed

7  to those duties that are more commonly in the industry referred

8  to as technical -- field technician type of work.

9    At this point, I'm not asking the Court to make a

10  ruling.  I would just ask the Court to reserve the ruling until

11  after the Government's expert has talked -- has addressed the

12  jury.  They're having Ms. Gee --

13    THE COURT:  The Government is not calling an expert.

14  The Government is calling a witness, as I understand it, who

15  has personal knowledge about those matters that that witness

16  intends to testify to.

17    Is that correct?

18    MS. KAMINSKA:  That's correct, Your Honor.

19    MR. KOURY:  And --

20    THE COURT:  And there's nothing in this offer of

21  proof anywhere that relates to this witness's interpretation of

22  various language and e-mails that are -- sound like are

23  specific to what the seismologist might look at.

24    And more importantly, I don't have any idea why

25  those are relevant and of what assistance it is to the jury

**UNITED STATES DISTRICT COURT**

```
 1   that you go out and you look at a borehole machine versus a
 2   sensor and where you place it.  What difference does it make?
 3            MR. KOURY:  It's critical.  It's the critical
 4   difference between what a seismologist does versus what a
 5   technician does.
 6            THE COURT:  And there's no one at KIGAM that you're
 7   calling that can't testify to that?  I mean, KIGAM are the
 8   people that do it on a day-to-day basis.
 9            MR. KOURY:  That would require us to bring someone
10   else.  What we are bringing are the supervisors and the people
11   that have different roles in the different organizations.
12   We're not bringing a seismologist or a contemporary of Mr. Chi
13   because it's one more person to bring.
14            THE COURT:  Well -- in any event, I'll reserve
15   ruling if the Government -- I think the Government has a good
16   point that you -- that you waited too long.  Unfortunately,
17   under Rule 16, I don't see any timing for disclosure.
18            The Government suggests that -- if the Government
19   wants to get a rebuttal witness in place, you now have an
20   opportunity and time to do it.
21            But I'll make a ruling during the course of trial,
22   but you're going to have to submit a supplemental offer of
23   proof because, based upon this offer of proof, I just don't see
24   what the relevance of the testimony has in terms of this case.
25   And you know the case, obviously, better than I do.
```

**UNITED STATES DISTRICT COURT**

1          So I will defer ruling on Motion in Limine No. 8.

2   You can file a supplemental offer of proof as to the

3   seismologist by -- by Monday.

4          MR. KOURY:  Well, Your Honor, frankly, that deadline

5   I don't know is going to be very helpful because -- the reason

6   why I say that is I think the Government is going to elicit

7   testimony from witnesses that we contend are biased against

8   Mr. Chi.  And this testimony is primarily offered in rebuttal

9   to the Government's witnesses that they're going to offer.

10  So --

11         THE COURT:  Give me an example of -- of -- I

12  understand you think that everybody is biased against Dr. Chi,

13  and that may be the case.  And I'm sure you'll have a very

14  probative cross-examination.

15         But on seismology issues, I just don't see the

16  Government coming up with evidence that isn't in any way going

17  to -- I just don't see the issue.  Maybe you can educate me.

18  Give me an example of a Government witness.  They've given you

19  a summary of their witnesses.  The only possible witness that I

20  could see is this Gee, G-e-e, person.

21         MR. KOURY:  Correct.

22         THE COURT:  So what do you think that person is

23  going to testify to that you need to rebut in an expert

24  opinion?

25         MR. KOURY:  I think that we're just going to say

1    something to the effect that Chi -- Ms. Gee is precluded from

2    offering any kind of recommendations about what kind of sensors

3    to use or what kind of sensors are better for one job versus

4    another.  And that is technical kind of language, technical

5    kind of advice that Dr. Avouac from Caltech says they routinely

6    will provide to outside agencies.

7              And there's a distinction between technical advice

8    versus seismology work.  Seismology work deals with

9    interpreting and analyzing data.  Seismology deals with the

10   process of analyzing information that is collected by

11   technicians in the field.

12             THE COURT:  Well, Dr. Chi wasn't being paid to

13   analyze information in the field.

14             MR. KOURY:  Yes -- no -- yes.  Dr. Chi was being

15   paid by KIGAM to analyze information.

16             THE COURT:  Right.

17             MR. KOURY:  He was being paid by the other entities

18   to provide technical advice about how to install their sensors,

19   where to install their sensors, what the problems are with the

20   sensors, to troubleshoot the sensors.

21             THE COURT:  All right.  So give me an example of

22   something that Gee is going to testify to that you need an

23   expert to rebut.

24             MR. KOURY:  She's going to say that kind of

25   information is information she would never ever provide to a

1    witness, that this sensor has this kind of problem or this

2    sensor is better suited for a deep ocean location rather than

3    land based.

4           THE COURT:  She would not give that advice to a

5    potential who?

6           MR. KOURY:  To a potential person asking her because

7    she would believe that's ethically improper.

8           THE COURT:  Well, doesn't that cut against your

9    position with respect to what Dr. Chi was doing?

10          MR. KOURY:  That's what she would say.  Dr. Gee

11   would say that.  Our expert would say that's not correct.

12   That's regularly something that a technician would do, which is

13   not what a seismologist does.

14          THE COURT:  But that begs the question in terms of

15   whether or not it's appropriate to be paid for by a third

16   party, not the employer.

17          MR. KOURY:  It goes to the issue about whether or

18   not Dr. Chi's advice contract was part of his duties, part of

19   his primary responsibilities.

20          THE COURT:  I have no clue as to how this expert is

21   going to possibly be able to testify to that since she doesn't

22   have any percipient knowledge of what Dr. Chi did, what his

23   agreements were, what KIGAM is, and what their responsibilities

24   are vis-à-vis that.

25          So it's sheer speculation.

1          MR. KOURY:  No.  It's -- I'm allowed -- my goal is

2    to ask hypotheticals of the expert and to also present

3    information to the expert that's admissible.

4          THE COURT:  All right.  Well, you can give me an

5    offer of proof in terms of you seem to have a pretty good idea

6    of what you're going to be confronting at trial.  And I will

7    certainly take a look at it.  And I'll reserve ruling on Motion

8    in Limine No. 8.

9          MR. KOURY:  Can I ask the Court for additional time

10   to -- after the -- after the Government's witnesses have

11   testified?

12         THE COURT:  When is Gee going to testify?

13         MS. KUMAR:  She's first, Your Honor.  So I presume

14   Tuesday.

15         THE COURT:  So what?

16         MS. KUMAR:  Tuesday.  She's the first witness.

17         And just so that I can be clear for the record, the

18   defendant specifically asked us whether we were going to be

19   eliciting any testimony regarding what rules apply to Dr. Gee

20   in her ethical role as a U.S. Government official.  They

21   specifically asked, and we specifically stated we would not be

22   eliciting testimony that she, as a U.S. Government official,

23   can't endorse products.

24         We are not seeking to elicit that testimony.  We've

25   said it repeatedly.  And we're not going to ask her about that.

```
 1    I'm not going to ask her that question because it's -- in our
 2    opinion, what a U.S. Government official does is separate and
 3    apart from what a Korean official does.  We've made that
 4    representation.
 5              THE COURT:  So what's the purpose of having her
 6    called?
 7              MS. KUMAR:  Your Honor, as the Court previously
 8    said, she's going to talk about her interactions with the
 9    defendant, what -- he came over with official delegations from
10    KIGAM, asked her questions and asked her colleagues questions
11    about how to do testing, how to calibrate equipment, all of the
12    things that we will then show he was doing on behalf of the two
13    companies that paid him money.  Therefore, he was acting in the
14    scope of his official duties when he accepted money from them.
15              And so she's just going to talk about her percipient
16    knowledge, her knowledge about what KIGAM is in general because
17    of her -- you know, her relations and her job.  But she's not
18    going to be saying "I, as a Government official in the
19    United States, can't endorse equipment.  So, therefore, Dr. Chi
20    doing so would have been inappropriate."
21              THE COURT:  All right.  Well, I'll allow you to file
22    your offer of proof after the Government witness testifies.
23              MR. KOURY:  But additionally, there's a second
24    witness, Chris Potts, who I think will also try and blur the
25    distinction between the technician and the seismologist.  So I
```

```
 1    would ask, with the Court's permission, that we file the offer
 2    of proof a week from Monday after Chris Potts's testimony.
 3              THE COURT:  A week from Monday.  This trial is going
 4    to be over next week.  I don't know where you folks are getting
 5    your time estimates, but this is set for a three-day trial.  I
 6    have another trial starting next week.  So that's one of the
 7    things we're going to talk about.  You're turning this case
 8    into something that is more complex than really is warranted.
 9              So on Tuesday, remind me, and I'll tell you what the
10    deadline is for your motion in limine.  But --
11              MR. KOURY:  Thank you.
12              THE COURT:  -- or for your offer of proof, but I
13    won't require you to do it on Monday.
14              MR. KOURY:  Thank you.  I appreciate it.
15              THE COURT:  Okay.  All right.  Which then -- let's
16    turn to the -- to that issue and that is witnesses.
17              The Government filed its witness list on July 3rd.
18    It appears as Docket No. 115.  The defendant filed, per my
19    amended criminal trial order, the response to the Government's
20    pretrial witness list.  And as I just indicated, the -- I think
21    somewhere in the Government's trial memorandum, the time
22    estimates for the Government's direct examination as well as
23    the cross-examination, in my view, are excessive.
24              I can't imagine -- Lindsay Zimmerman, she's the
25    financial person?
```

1          MS. KUMAR:  She's the forensic accountant,

2   Your Honor.

3          THE COURT:  How can you possibly spend two hours

4   with her?  What are you going to do?

5          MS. KUMAR:  We're going to be reviewing her analysis

6   of the -- of the money flow from -- into the defendant's bank

7   account here in California and the transactions over to

8   Merrill Lynch and her analysis of the source of those funds

9   and --

10          THE COURT:  And after that 15 minutes of testimony,

11   what are you going to do for the next hour and 45 minutes?

12          MS. KUMAR:  Your Honor --

13          THE COURT:  You have charts.

14          MS. KUMAR:  Yes, Your Honor, we do.

15          THE COURT:  So I just don't understand -- I mean,

16   there really isn't any issue as to the amount of monies that

17   were paid by Company A, Company B, where those monies were

18   deposited, where those monies were transferred to, and where

19   those monies ended up.

20          I'm just trying to figure out, am I missing

21   something?

22          MS. KUMAR:  No, Your Honor.  And I think we just

23   want the ability to be able to explain that to the jury so they

24   understand it and that they, um, understand her charts.

25          THE COURT:  There comes a point in time when the

1    jury just turns off, and all of this testimony that you think

2    is so vital becomes totally useless.  Because -- you have

3    charts; you get in, you get out.  But I'm not going to tell you

4    how to try your case.  I'm just telling you you're not going to

5    have two hours to examine Ms. Zimmerman.

6              And Pearce, three hours.  We'll see how it goes.

7    And Potts, two-and-a-half hours.

8              But that raises another issue, and that is the --

9    the defense apparently has not provided its witness list to the

10   Government.  So I'm going to order the defendant to provide

11   that witness list by close of business today so we can have

12   some idea of the witnesses and how long the defense believes

13   it's going to take with its witnesses.

14             The same is true with respect to the exhibits.  The

15   parties -- and I appreciate your efforts -- exchanged the

16   Government's exhibits, and there was a joint pretrial exhibit

17   stipulation that was filed on July 3rd.  It appears as

18   Docket No. 114.

19             I have preliminarily gone through the exhibits.

20   There's an awful lot of exhibits that I'm not sure are really

21   necessary.  But in any event, we'll deal with that because I

22   haven't finished my review.

23             And yesterday, the Government delivered copies of

24   those exhibits.  So to the extent that I have any questions, I

25   can actually look at the exhibits.

**UNITED STATES DISTRICT COURT**

1          The defendant was going to wait until the defense

2     had an opportunity to look at the Government's exhibits

3     because -- my memory is that at one of our status conferences,

4     that you were going to be able to make a better determination

5     as to what exhibits you would seek to offer once you saw the

6     Government's exhibits.

7          So I assume that you're ready to deliver your

8     exhibits to the Government today?

9          MS. BEDNARSKI:  No, we're not, Your Honor.

10         THE COURT:  Okay.  Well, I'm going to order it

11    delivered by close of business today.

12         MS. BEDNARSKI:  Well, we won't be able to do that.

13    The Government just provided us yesterday another 11,000 pages

14    of banking records.  The Government's exhibits, while the

15    initial set was disclosed on the date you ordered, has been

16    modifying those and exchanging those.

17         We can, however, work over the weekend and review

18    the new things and respond to that.  And my staff on Monday can

19    make copies.  I think by the end of the day Monday, we may be

20    able to deliver exhibit books.

21         THE COURT:  Well, I'm going to order counsel to meet

22    and confer over the weekend, and you can produce these defense

23    exhibits to the Government on a rolling basis.  And then I

24    would expect that by close of business Monday, that you'll be

25    able to file a joint pretrial stipulation in the form that --

UNITED STATES DISTRICT COURT

```
 1   the form that I require so we'll have an idea of what the
 2   defendant's exhibits are.
 3           All right.  I have received counsel's proposed
 4   voir dire questions.  And over the weekend, I'm going to
 5   prepare a questionnaire.
 6           Let me ask the Government, I think I knew but I lost
 7   my notes.  What is the purpose of the declaration attached to
 8   the pretrial exhibit stipulation attaching hard copies of
 9   various exhibits?  What was I supposed to glean from that?
10           MS. KUMAR:  Your Honor, those are the exhibits to
11   which there's an objection.
12           THE COURT:  Oh.  That's what they were.
13           MS. KUMAR:  They were just supposed to streamline
14   the Court's review.
15           THE COURT:  All right.  You know, it would be nice
16   if you could -- you could alert the Court as to what I'm
17   supposed to be looking for.  I think I figured it out and it's
18   refreshed my memory, which raises another issue.
19           I would hope that counsel would start proofreading
20   their documents.  This is obviously an important case to both
21   sides, and it's just very disheartening for the Court to pick
22   up a pleading and have on one of the pleadings a minimum of
23   three typos per page.  I find it very disheartening.
24           Also, the Government filed a joint -- there was a
25   document that I requested to be filed, which was the index of
```

```
1    Korean law materials which asked the parties to include the
2    citation to the various pleadings where these Korean documents
3    were found.  And the Government apparently filed it.
4              And the docket -- the document is entitled "Joint
5    Notice of Order Regarding Offer of Proof of Expert Witnesses."
6    And it's Document No. 128.  That's not the document that's
7    attached.  It's the supplemental Table of Contents.
8              So every time I look at the docket, I click on that
9    and -- wondering what it is.  So please file something to amend
10   that so I don't continue to look for that.
11             I just have a couple of more issues.
12             Going back to the -- to the witnesses, as you sit
13   here today, I'm going to ask the defense, how many witnesses do
14   you anticipate calling?
15             MS. BEDNARSKI:  Seven or eight, and that's not
16   including whether Dr. Roh, the Korean law expert, would or
17   wouldn't testify or Dr. Avouac, the Caltech seismology expert.
18             THE COURT:  And these are all Korean witnesses?
19             MS. BEDNARSKI:  Yes.  All of them will need
20   interpreters.
21             THE COURT:  All right.  Because I was -- I was
22   shocked to find out basically you called the jury -- or the
23   interpreting office and found out that the Court will provide a
24   free interpreter for these witnesses?
25             MS. BEDNARSKI:  Essentially, I got an e-mail from
```

1    the clerk saying provide an interpreter for your own witnesses.

2            THE COURT:  Right.

3            MS. BEDNARSKI:  And so I called the interpreter's

4    office because I contacted a couple of interpreters and they

5    told me, no, that's not the case.  The Court provides

6    interpreters for witnesses, and they actually choose the

7    interpreters.  And so they seemed concerned about me doing

8    something outside protocol.

9            So I then talked to Javier in the interpreter's

10   office who told me, yes, we provide all the interpreters, both

11   for the defendant during trial as well as the defense witnesses

12   who need interpreters during the trial.

13           THE COURT:  For no charge?

14           MS. BEDNARSKI:  That's right.

15           THE COURT:  Well, I don't dispute what you say, but

16   I am going to make further inquiry.

17           So that was a specific question that you asked him,

18   that this is a retained case, not a CJA case, and whether or

19   not, based upon that circumstance, the interpreters for -- not

20   the defendant but for the witnesses would be provided free of

21   charge?

22           MS. BEDNARSKI:  I did not ask about CJA or retained.

23           THE COURT:  Okay.  That's the key question because

24   that's the difference that I was communicating or attempted to

25   communicate vis-à-vis the clerk.

1          MS. BEDNARSKI:  I can tell you that after I -- when

2     I spoke to Javier, Javier suggested to me that the Court's

3     clerk call him.  And it may be that, in fact, your clerk did

4     that.  I don't know.

5          THE COURT:  Okay.  Well, I will personally discuss

6     it with the powers -- the powers to be.  So don't be surprised

7     if you don't -- if you get a bill for the interpreter.

8          Okay.  I think that is all that I wanted to

9     discuss -- oh.  I appreciate -- and I understand -- because

10    this relates to advising the jury how long this case is going

11    to take, that I want to confirm with counsel and with Dr. Chi

12    that, in the event that there is a conviction in this case,

13    that Dr. Chi is going to waive jury and have the forfeiture

14    allegation tried to the Court, either to the Court or on

15    motions.  Is that correct?

16         MR. KOURY:  Yes, Your Honor.  But I just want -- I

17    haven't talked to Dr. Chi about that for some time.

18         THE COURT:  Okay.  Why don't you go ahead and --

19         MR. KOURY:  If I could just have a few seconds right

20    now?

21         THE COURT:  Sure.

22         (Off-the-record discussion between

23          the defendant and his counsel.)

24         MR. KOURY:  Your Honor, we've conferred, and our

25    position remains the same as we put in the papers, that we are

1    not going to request a jury trial, that we'll make a decision

2    about whether we're going to proceed on Court trial or just

3    final briefing.

4           THE COURT:  That's fine.  That doesn't bother me.

5    It's just in terms -- we're going to have to tell the jury that

6    they're going to have to come back to decide the forfeiture

7    count.  That's what's important.  But I think it would be

8    appropriate if you prepare the -- or fill out the form Waiver

9    of Jury Trial and have Dr. Chi take a look at it and get it on

10   file so that we -- we don't have any issues with respect to

11   that.

12          Let me ask the Government.  I have now -- I believe

13   it was in connection with Motion in Limine No. 7, which has

14   the -- yes.  It's the Potts 302 and Nate -- or Natalie Pearce

15   302.  I keep waiting -- and I thought it would be in the Pearce

16   302.  I keep waiting for this evidence that the Government

17   has -- or maybe it doesn't have -- that goes right to the

18   element of quid pro quo.

19          What is it that Dr. Chi supposedly did in exchange

20   for money that was paid?  The Indictment alleges

21   certifications, unfair business advantage.  The only thing I

22   can glean from the 302 of Pearce is that on one occasion there

23   was a piece of equipment, not a Company A or Company B

24   equipment, that failed to pass a certification or a test or

25   some problem with it.  And that information was communicated by

1    Dr. Chi to Pearce.  And as a result, Pearce apparently went out

2    into the marketplace and used that information against the

3    company.  And I'm editorializing now.

4         But what is it -- you're going to have a real uphill

5    burden in front of this jury to try to convince them that there

6    was this quid pro quo.  Because I just don't see Dr. Chi

7    receiving money and contemporaneously with or some reasonable

8    time thereafter Chi did some -- undertook some conduct or did

9    some action -- and, of course, we fight about his official

10   duties -- that is -- was -- there's a causal connection between

11   the payment and his conduct.  And I've been doing this case now

12   for months.  And each time we have a status conference, I

13   continue to ask the Government where this evidence is.  And I

14   just don't see it.

15        So what is the -- what is the Government going to

16   put on?

17        MS. KAMINSKA:  Your Honor, I think that what the

18   scope of work that Dr. Chi was doing is going to come from a

19   number of sources.  But in principal part, it comes from

20   e-mails in which he communicated to the companies in question

21   the sorts of things that he was helping them with, in addition

22   to -- in the MLAR return that we've marked as an exhibit, the

23   list of participating projects that he was either in charge of

24   or worked on with respect to other government agencies.

25        So what the evidence will show is that in the

context of working on those specific projects, the defendant
made pitches to other Government agencies in order to endorse
the sale of the company's products and then took a fixed fee
based upon the sale of those products to the ultimate entity as
part of his advice fee.  And so the linkage is in connection
with those two items.

THE COURT:  So how many of those items do you have?

MS. KAMINSKA:  Well, I think it's an extended course
of conduct, Your Honor.  I can't say what item number we're
talking about here.

THE COURT:  Who is going to testify to all this?  So
give me an example of the testimony that Dr. Chi was working on
the X project and the X project related to something and
Dr. Chi did something in his official capacity in order to
promote that product or sell that product or do something.  And
in exchange for that, I guess what you're saying is that he got
a percentage of the sale.

MS. KAMINSKA:  That's exactly right, Your Honor.

THE COURT:  So who's going to testify to that?

MS. KAMINSKA:  Well, the list of projects that came
from the entity KIGAM, Agent Coleman will be able to testify
to.

THE COURT:  Who?

MS. KAMINSKA:  Agent Coleman will be able to testify
to the list of projects as a business record of KIGAM that

1    identifies the sort of scope of work of Dr. Chi.

2         In addition to that, a number of witnesses will

3    testify regarding e-mails in which Dr. Chi is proclaiming that

4    he is the project manager as to a specific project, whether

5    it's the Korea railway network or in connection with the Korea

6    Meteorological Association, for example.

7         And so there are a number of e-mails where he talks

8    about, in connection with particular projects, doing certain

9    things.  For example, he sits apparently on an advisory

10   committee where he makes recommendations about certain products

11   to other government agencies.  And so he will tell a

12   representative of these companies that, in my capacity

13   officially as a representative on this advisory committee, I'm

14   going to ask that that agency buy up your products and then --

15        THE COURT:  Buy Company A or buy Company B's

16   products.

17        MS. KAMINSKA:  That's correct, Your Honor.  And in

18   exchange for that --

19        THE COURT:  And is there a competitive bidding

20   process, or are these just the best products in Dr. Chi's view

21   that Company A or Company B, notwithstanding any payment that

22   he may receive, would be -- would be appropriate for them to

23   purchase them?

24        MS. KAMINSKA:  Well, Your Honor, I think there are a

25   number of e-mails in which Dr. Chi distinguishes between the

1    bidding process and proceeding by way of a private contract.

2    And what the evidence will show is that it was far more

3    favorable to the company if the bidding projects were not

4    actually undertaken and that they were received by way of a

5    private contract.

6            And, in fact, in connection with his own work for

7    KIGAM, his employer, he routinely sent e-mails where there is a

8    communication about why something should be done by way of a

9    private contract because it allows more control over what the

10   price and other conditions of the sale might be.

11           And so in exchange --

12           THE COURT:  I don't understand -- what's the

13   difference between a private -- what are the two contracts

14   you're talking about?  The private contract versus what

15   contract?

16           MS. KAMINSKA:  A public bidding process where there

17   are a number of bids submitted.

18           THE COURT:  Okay.  Does this relate to the issue

19   that the -- that Company A and/or Company B could sell directly

20   to KIGAM and cut out the representative to eliminate the

21   commission?

22           MS. KAMINSKA:  That's right, Your Honor.

23           THE COURT:  Is that the focus that -- of this -- of

24   these contracts, the public versus the private?  Or is that a

25   different issue?

1          MS. KAMINSKA:  Well, I'm not sure what contracts

2     Your Honor's referring to.  I was talking about the process of

3     the sale.  An so in one instance, it is a public bidding

4     process.  In another case, it's a private contract where there

5     is no sort of bidding process and there's just a one-to-one

6     relationship between the seller and the buyer.

7          THE COURT:  So the public bidding process, the bid

8     presumably goes to the -- to the highest -- the highest bidder?

9     How does the public bidding process work versus the private?  I

10    just don't understand the distinction.  So I understand public

11    versus private.  But you have a public bidding process.  What

12    happens when you have a piece of -- a piece of equipment?

13         MS. KAMINSKA:  I think there are a number of bids

14    submitted as part of the public procurement service.

15         THE COURT:  And who is -- who is -- is it a

16    purchasing public auction, or is it a -- does Company A -- so,

17    in other words, KIGAM says we're in the marketplace for XYZ

18    machine and sends out a request for bids to various companies.

19    And then those companies submit public bids.  And then those

20    bids are reviewed by KIGAM and accepted based upon whether or

21    not it meets the price criteria or creditworthiness or

22    something else.

23         MS. KAMINSKA:  That's my understanding, Your Honor.

24    And, of course, I'm gleaning from what the e-mails say.  But I

25    think the link to Dr. Chi is that, in connection with the

1    public bidding process, there are e-mails in which he states

2    that in order to qualify or put in for the bid, you have to get

3    a certification from my institute that basically blesses your

4    equipment.  And so this should be considered good news to you

5    because you're now eligible to participate in the bidding

6    process because I'll facilitate the certification.  That's the

7    implication for the e-mail.

8                    THE COURT:  So are there certifications -- his

9    facilitation of those certifications, are they improper?  Are

10   there -- are there -- are there -- in the -- would they be

11   denied?  Or is it just simply making available the

12   certification process of KIGAM and, if they otherwise

13   qualify -- he's not -- I don't see anything in this Indictment

14   or in the evidence that he improperly certified -- improperly

15   caused a certification to be made by KIGAM.

16                   MS. KAMINSKA:  Your Honor, there are several e-mails

17   in which he tells the representatives of the companies that I

18   have certified your product, but it's not working properly.  So

19   please fix it so that I can continue defending your product --

20                   THE COURT:  So that would be --

21                   MS. KAMINSKA:  -- in order to get a cut.

22                   THE COURT:  I'm sorry.  I didn't mean to interrupt

23   you.

24                   So that would be an improper certification because

25   he certified a product that didn't work.

 1          MS. KAMINSKA:  Yes.  That's correct, Your Honor.

 2          THE COURT:  Okay.

 3          MS. KAMINSKA:  But I think it straddles the other

 4   category too, which is to say to the extent that he is giving

 5   them information and helping to certify their product, telling

 6   them use this spec as opposed to another spec in order to

 7   facilitate the certification and then, as a result of the

 8   purchase, taking a fixed percentage of the sales that then

 9   result, we allege that that's improper as well.

10          THE COURT:  But in a public contract, it wouldn't

11   make any difference because, however he got Company A or

12   Company B to the -- to the front door, it would still be up to

13   KIGAM to make the selection based upon their criteria, the

14   bidding criteria.

15          MS. KAMINSKA:  That's correct, Your Honor.  But when

16   he's controlling whether or not the company is going to satisfy

17   a test that is a prerequisite to getting the purchase and then

18   getting a cut of that sale, we would allege that's a conflict

19   of interest that is inappropriate.

20          THE COURT:  Well, you're going to have a tough time

21   with that, but -- so you get him to the front door based upon

22   his assistance to the company to make sure their products at

23   least fit in the ballpark and can be considered to be accepted,

24   that somebody can buy them, KIGAM can buy them.

25          Now, he doesn't -- he doesn't -- there's no

```
 1   allegation that he does anything improper about KIGAM --
 2   influencing KIGAM to buy Company A versus Boeing's equipment;
 3   correct?
 4            MS. KAMINSKA:  I think that this -- what the e-mails
 5   demonstrate is that he will tell people in the purchasing
 6   division how to price the products from these particular
 7   companies.
 8            So, for example, he'll say Mr. Cho at the purchasing
 9   division was going to ask for a discount, representative of
10   Guralp.  And because his advice fee is a percentage of that
11   sale, he'll advise the representative of Guralp not to offer a
12   further discount, which is to the detriment of KIGAM.
13            And so that's sort of the exertion of influence that
14   we have in mind.  And, in particular, it relates to the pricing
15   information, including for products that KIGAM purchases.
16            THE COURT:  And who is going to testify to this?
17            MS. KAMINSKA:  Well, Your Honor, it's in the
18   e-mails.  So to the extent that there are witnesses that read
19   e-mails from Dr. Chi, that would be obviously something that we
20   would introduce.  In addition, there are witnesses that provide
21   color to the various e-mails that I think is probative of the
22   same issue.
23            THE COURT:  Okay.  Let's see what the jury does with
24   this, but I still don't -- I appreciate your thorough
25   explanation, but I just don't -- I don't see the smoking gun.
```

```
 1    But that's what trials are all about.  And I'll be sitting
 2    here, and maybe you could wave the flag when the smoking gun
 3    comes up because I don't see it yet.
 4              You have a smoking gun?
 5              MR. KOURY:  I do not.  I have one request, though.
 6              THE COURT:  Okay.
 7              MR. KOURY:  The Court earlier some time ago had said
 8    that the defense may be responsible for the cost of the
 9    interpreters for the witnesses.
10              THE COURT:  I don't know that, but --
11              MR. KOURY:  I understand.
12              THE COURT:  I'm going to make an inquiry, because
13    given the poor financial condition of the Federal Government, I
14    certainly don't want to deprive them of the interpreters' fees.
15              MR. KOURY:  I understand.  Although, it was the
16    Federal Government that decided to bring this case.
17              THE COURT:  Which is why your client gets an
18    interpreter.
19              MR. KOURY:  Right.
20              But at any rate, Your Honor, I was just going to
21    make an inquiry.  If the Court makes that determination, to let
22    us know as soon as possible.  The reason why I say that is
23    because, then, we would obviously make -- want to make
24    arrangements to have interpreters present and to -- to work out
25    the funding for them as opposed to getting a bill two weeks or
```

1    three weeks or five weeks down the road.

2              THE COURT:  It would be a surprise.

3              MR. KOURY:  Well, thank you.

4              THE COURT:  Yes.  I will.  I will.  I don't know

5    what the rules are.  I just -- I must say I've been doing this

6    for a long time, and I've never -- I've never faced the issue.

7    I just -- we'll see.  Maybe I'm wrong.

8              But in any event -- all right.  I appreciate it.

9    Everybody have a good weekend.  And we start at 8:30 on Tuesday

10   morning.  So everybody be here on time.

11             Oh.  Shannon's not here.  But Shannon, as you know,

12   has a lot of rules.  And her rules are -- well, it's really the

13   Court's rules.  We don't use original exhibits during the

14   course of the trial.  The original exhibits are in binders, and

15   they're put over on that table or some other place.

16             What we require is that for each witness that's

17   called to the stand, that you prepare a binder which contains

18   the exhibits that you intend to use with that particular

19   witness.  And when the witness takes the stand, you'll give

20   that witness one or more binders of those exhibits, and then

21   those are copies.

22             Because what happens at the end of the trial, as you

23   know, we take the original exhibits and we send them back to

24   the jury room.  So we need those originals preserved in a

25   central location.  So that's Rule No. 1.

1          I usually require a bench copy of that same witness

2     binder, but I think that I can use those copies, so I don't

3     need a separate binder.  But it would be helpful if you could

4     provide a list of the exhibits that you intend to use with a

5     particular witness.  So I will have that so I can look at it

6     and pick out the appropriate -- the appropriate binder.

7          Shannon requires -- or the Court requires that

8     counsel e-mail the witness list to the courtroom deputy.

9          What else?  Anything else?

10         And of course -- and donuts.

11         All right.  Thank you very much.  And we will see

12    you on Tuesday morning.

13         (Proceedings concluded at 11:11 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

            I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.




            DATED THIS 21ST DAY OF JULY, 2017.




            /S/ MYRA L. PONCE
    _____
        MYRA L. PONCE, CSR NO. 11544, CRR, RDR
            FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**

## 1

**1** [5] - 36:8, 48:19, 48:22, 48:23, 100:25
**1(B** [1] - 18:16
**1026** [1] - 17:16
**105** [1] - 70:3
**10TH** [1] - 64:10
**11,000** [1] - 85:13
**110** [1] - 66:19
**114** [1] - 84:18
**115** [1] - 82:18
**1184** [1] - 52:17
**11:11** [1] - 101:13
**122** [1] - 73:14
**128** [1] - 87:6
**129** [43] - 7:3, 7:24, 8:4, 12:5, 14:3, 16:8, 17:6, 17:11, 17:23, 18:24, 19:3, 19:19, 19:22, 20:3, 20:5, 20:25, 21:3, 21:9, 26:14, 26:21, 27:7, 29:16, 30:1, 30:10, 31:17, 31:21, 35:13, 35:24, 35:25, 36:5, 36:9, 36:16, 40:1, 40:21, 41:5, 56:3, 70:23, 71:8, 71:15, 71:18, 71:25, 72:17, 72:20
**13TH** [1] - 66:24
**15** [3] - 45:14, 68:2, 83:10
**16** [3] - 18:15, 45:14, 76:17
**16-824(A** [1] - 3:4
**18** [5] - 16:3, 16:13, 17:8, 18:4, 18:22
**19** [1] - 37:6
**1956** [1] - 18:4
**1956(C** [1] - 19:1
**1956(C)** [1] - 17:13
**1957** [3] - 16:4, 52:9, 71:19
**1978** [1] - 18:17

## 2

**2** [8] - 24:15, 25:9, 36:10, 43:5, 48:22, 53:24, 55:25, 58:10
**20** [12] - 16:2, 16:3, 16:9, 16:22, 16:24, 19:10, 45:6, 45:14, 45:19, 45:21, 46:2, 47:20
**201** [12] - 7:2, 16:13, 17:8, 18:2, 18:7, 18:22, 19:13, 30:23,

31:1, 31:3, 31:15, 34:5
**2015** [1] - 65:21
**2016** [1] - 58:16
**2017** [8] - 3:1, 15:23, 45:17, 61:8, 64:7, 64:10, 66:24, 70:15
**21** [3] - 16:6, 16:10, 19:12
**22** [7] - 16:7, 19:20, 20:18, 30:19, 35:16, 43:18, 44:23
**23** [1] - 45:15
**24** [1] - 37:10
**26** [2] - 21:14, 36:23
**27** [2] - 21:14, 36:23
**28TH** [2] - 15:23, 15:25
**29** [1] - 22:14
**29TH** [1] - 48:18

## 3

**3** [5] - 21:1, 45:19, 48:22, 69:25, 73:11
**301301** [1] - 4:16
**302** [4] - 90:14, 90:15, 90:16, 90:22
**35** [1] - 37:15
**36** [1] - 45:15
**37** [2] - 21:13, 36:23
**3RD** [2] - 82:17, 84:17

## 4

**4** [3] - 21:1, 48:22, 58:11
**401** [1] - 72:9
**403** [3] - 53:21, 57:11, 57:12
**404(B** [1] - 50:25
**404(B)** [2] - 53:13, 53:19
**45** [2] - 65:10, 83:11
**469** [1] - 65:10

## 5

**5** [4] - 48:22, 52:6, 61:3, 73:14
**526** [1] - 44:2
**564** [1] - 17:16
**5TH** [2] - 45:17, 70:15

## 6

**6** [4] - 48:22, 52:6, 66:17, 67:17
**622** [1] - 63:20

## 7

**7** [8] - 3:1, 18:16, 48:19, 48:22, 68:8, 68:9, 69:24, 90:13
**702** [1] - 69:14
**71** [1] - 20:8
**747** [1] - 52:17
**7TH** [2] - 61:8, 64:6

## 8

**8** [5] - 48:20, 48:22, 73:13, 77:1, 80:8
**803(3** [4] - 63:12, 63:15, 63:21, 64:1
**813** [1] - 44:2
**843** [1] - 51:5
**8:30** [1] - 100:9
**8:37** [1] - 3:1

## 9

**97** [2] - 15:23, 20:2
**98** [1] - 15:25
**985** [1] - 63:20

## A

**A.M** [1] - 101:13
**A.M** [1] - 3:1
**ABEL** [1] - 65:9
**ABILITY** [1] - 83:23
**ABLE** [15] - 29:11, 41:20, 47:24, 52:4, 61:25, 62:6, 65:6, 79:21, 83:23, 85:4, 85:12, 85:20, 85:25, 92:21, 92:24
**ABSENCE** [1] - 44:20
**ABSOLUTELY** [1] - 74:5
**ABUNDANCE** [1] - 48:9
**ACCEPT** [6] - 12:3, 17:24, 35:3, 36:1, 36:11, 72:23
**ACCEPTABLE** [2] - 37:2, 63:17
**ACCEPTED** [4] - 45:12, 81:14, 95:20, 97:23
**ACCESS** [1] - 67:6
**ACCORDING** [5] - 9:18, 20:9, 52:3, 59:1, 59:10
**ACCORDINGLY** [6] - 53:21, 63:24, 65:6, 66:14, 69:23, 70:7
**ACCOUNT** [7] - 49:13,

49:19, 51:23, 51:24, 52:11, 83:7
**ACCOUNTANT** [1] - 83:1
**ACCOUNTING** [1] - 66:23
**ACCOUNTS** [1] - 52:12
**ACCURATE** [2] - 3:20, 8:3
**ACCURATELY** [1] - 73:2
**ACT** [6] - 17:20, 20:13, 22:16, 31:2, 51:6, 71:21
**ACT** [2] - 18:14, 18:16
**ACTED** [2] - 34:2, 73:8
**ACTING** [1] - 81:13
**ACTION** [3] - 33:14, 72:12, 91:9
**ACTIONS** [2] - 20:13, 56:15
**ACTIVITIES** [4] - 53:11, 57:2, 64:8, 65:16
**ACTIVITY** [7] - 17:3, 18:10, 56:10, 56:12, 57:4, 58:1, 70:20
**ACTS** [7] - 21:17, 21:25, 36:18, 36:19, 36:20, 37:25, 43:6
**ADD** [12] - 9:20, 16:16, 31:25, 40:8, 49:4, 54:9, 55:8, 55:10, 55:13, 68:18, 71:3, 71:6
**ADDING** [1] - 32:2
**ADDITION** [7] - 35:6, 57:8, 57:10, 63:10, 91:21, 93:2, 98:20
**ADDITIONAL** [3] - 11:21, 44:9, 80:9
**ADDITIONALLY** [1] - 81:23
**ADDRESS** [1] - 40:13
**ADDRESSED** [1] - 75:11
**ADEQUATE** [1] - 40:22
**ADEQUATELY** [7] - 39:25, 40:20, 41:4, 41:18, 44:24, 45:8, 55:16
**ADHERENCE** [1] - 70:5
**ADMINISTER** [1] - 42:1
**ADMISSIBILITY** [2] - 53:13, 70:1
**ADMISSIBLE** [9] -

56:4, 63:11, 63:14, 64:20, 66:3, 68:7, 70:9, 74:1, 80:3
**ADMIT** [4] - 53:17, 53:22, 61:23, 63:25
**ADMITTED** [6] - 54:5, 56:19, 56:20, 57:18, 65:17, 67:22
**ADVANTAGE** [3] - 4:25, 5:12, 90:21
**ADVICE** [21] - 9:5, 9:12, 9:17, 25:22, 26:1, 54:20, 63:17, 63:18, 64:25, 65:4, 65:18, 65:20, 66:7, 72:14, 78:5, 78:7, 78:18, 79:4, 79:18, 92:5, 98:10
**ADVISE** [2] - 13:13, 98:11
**ADVISES** [1] - 26:18
**ADVISING** [1] - 89:10
**ADVISORY** [2] - 93:9, 93:13
**AFFECT** [1] - 25:16
**AFFECTED** [1] - 25:18
**AGENCIES** [4] - 78:6, 91:24, 92:2, 93:11
**AGENCY** [1] - 93:14
**AGENT** [4] - 62:5, 66:3, 92:21, 92:24
**AGO** [1] - 99:7
**AGREE** [12] - 10:5, 17:9, 20:20, 22:5, 26:7, 27:13, 41:7, 45:11, 54:7, 60:19, 70:21, 72:13
**AGREED** [4] - 20:25, 55:20, 68:25, 69:1
**AGREEMENT** [8] - 55:17, 58:14, 58:17, 58:20, 58:23, 59:19, 61:1, 65:21
**AGREEMENTS** [3] - 65:5, 71:2, 79:23
**AGREES** [1] - 41:4
**AHEAD** [3] - 3:22, 5:8, 89:18
**ALERT** [1] - 86:16
**ALLEGATION** [4] - 25:18, 49:9, 89:14, 98:1
**ALLEGATIONS** [5] - 52:2, 52:13, 52:20, 52:21, 66:16
**ALLEGE** [2] - 97:9, 97:18
**ALLEGEDLY** [2] - 52:7, 53:4
**ALLEGES** [2] - 35:21,

90:20

**ALLOCATION** [1] - 57:23

**ALLOW** [6] - 25:13, 25:25, 31:10, 61:11, 68:21, 81:21

**ALLOWABLE** [1] - 26:1

**ALLOWED** [4] - 60:22, 69:4, 72:14, 80:1

**ALLOWING** [1] - 31:12

**ALLOWS** [2] - 25:23, 94:9

**ALMOST** [1] - 22:8

**ALTERED** [1] - 25:18

**ALTERNATIVELY** [1] - 50:25

**AMAZING** [1] - 68:24

**AMBIGUITY** [1] - 11:11

**AMEND** [1] - 87:9

**AMENDED** [1] - 82:19

**AMERICA** [3] - 3:5, 49:19, 51:23

**AMERICAN** [1] - 32:4

**AMOUNT** [3] - 12:4, 29:23, 83:16

**ANALYSIS** [4] - 32:4, 38:8, 83:5, 83:8

**ANALYZE** [2] - 78:13, 78:15

**ANALYZES** [1] - 37:16

**ANALYZING** [2] - 78:9, 78:10

**ANGELES** [1] - 3:2

**ANNA** [1] - 3:9

**ANNIE** [1] - 4:5

**ANNIE** [1] - 4:8

**ANNOUNCE** [1] - 12:13

**ANSWER** [2] - 11:8, 60:10

**ANTICIPATE** [3] - 10:9, 10:10, 87:14

**ANTICIPATES** [1] - 68:12

**ANYWAY** [1] - 32:20

**APART** [1] - 81:3

**APPEAR** [1] - 15:23

**APPEARANCE** [4] - 3:6, 12:14, 13:18, 54:14

**APPLICATION** [1] - 33:22

**APPLIED** [3] - 28:17, 38:23, 39:3

**APPLIES** [3] - 9:4, 41:18, 56:13

**APPLY** [3] - 42:15,

42:17, 80:19

**APPLYING** [1] - 25:12

**APPRECIATE** [10] - 13:1, 14:2, 43:18, 50:17, 69:3, 82:14, 84:15, 89:9, 98:24, 100:8

**APPROACH** [2] - 12:12, 38:18

**APPROPRIATE** [18] - 8:8, 10:17, 22:22, 32:6, 35:8, 38:10, 43:25, 45:3, 53:20, 55:21, 67:19, 70:3, 72:7, 79:15, 90:8, 93:22, 101:6

**APPROVAL** [3] - 70:3, 70:5, 70:18

**APPROVES** [1] - 72:15

**APRIL** [2] - 66:24, 67:24

**AREA** [4] - 6:25, 21:17, 21:18, 60:22

**AREAS** [1] - 6:8

**ARGUE** [9] - 10:8, 10:16, 19:17, 19:18, 19:22, 30:18, 33:18, 44:19, 55:18

**ARGUED** [2] - 33:21, 55:4

**ARGUES** [7] - 18:1, 51:20, 56:13, 59:8, 63:14, 65:6, 73:1

**ARGUMENT** [18] - 5:17, 10:17, 17:4, 33:4, 33:5, 41:16, 50:16, 53:12, 54:2, 56:21, 58:12, 63:10, 66:10, 66:19, 69:3, 70:16, 71:11, 73:4

**ARGUMENTS** [2] - 40:14, 68:12

**ARISE** [1] - 7:6

**ARRANGEMENT** [1] - 65:23

**ARRANGEMENTS** [2] - 67:13, 99:24

**ARREST** [1] - 58:4

**ARRESTED** [5] - 54:3, 56:2, 56:23, 57:18, 58:3

**ARRESTING** [1] - 57:1

**ARTICLE** [41] - 7:3, 8:4, 12:5, 14:3, 16:8, 17:6, 17:11, 17:23, 18:24, 19:3, 19:19, 19:22, 20:3, 20:5, 20:25, 21:3, 21:9, 26:14, 27:7, 29:16,

30:10, 31:17, 35:13, 35:24, 35:25, 36:5, 36:9, 36:16, 40:1, 40:21, 41:5, 45:6, 45:19, 45:21, 46:2, 47:20, 56:3, 70:23, 71:8, 71:18, 72:17

**ARTICLE** [1] - 72:20

**ARTICULATE** [1] - 41:12

**ASIDE** [1] - 43:2

**ASSERTING** [1] - 64:10

**ASSERTS** [2] - 66:2, 72:18

**ASSESS** [1] - 60:16

**ASSIGNED** [1] - 37:9

**ASSIST** [7] - 11:11, 36:20, 43:6, 43:8, 43:10, 46:4, 70:12

**ASSISTANCE** [5] - 11:17, 13:1, 40:15, 75:25, 97:22

**ASSISTED** [1] - 9:24

**ASSOCIATION** [1] - 93:6

**ASSUME** [2] - 67:12, 85:7

**ASSUMED** [1] - 29:5

**ATTACHED** [2] - 86:7, 87:7

**ATTACHING** [1] - 86:8

**ATTACK** [1] - 59:3

**ATTEMPTED** [1] - 88:24

**ATTEND** [1] - 13:23

**AUCTION** [1] - 95:16

**AUTHORITIES** [7] - 56:10, 56:25, 57:17, 57:21, 57:25, 58:3, 66:24

**AUTHORITY** [4] - 37:8, 37:19, 37:25, 39:3

**AUTHORITY'S** [1] - 57:6

**AVAILABLE** [4] - 30:14, 67:4, 68:1, 96:11

**AVERMENT** [1] - 52:22

**AVOUAC** [2] - 78:5, 87:17

**AWARE** [4] - 27:18, 28:6, 28:25, 72:15

**AWFUL** [1] - 84:20

**B**

**B'S** [1] - 93:15

**BACKGROUND** [1] - 34:13

**BALANCING** [1] - 57:11

**BALLPARK** [1] - 97:23

**BANK** [2] - 49:19, 51:22

**BANK** [4] - 18:15, 49:16, 54:25, 83:6

**BANKING** [1] - 85:14

**BANKING** [1] - 18:16

**BASED** [31] - 16:25, 20:21, 20:25, 21:12, 33:4, 38:8, 42:10, 42:18, 42:19, 42:22, 43:17, 44:15, 44:17, 45:10, 45:20, 46:3, 46:9, 47:16, 52:18, 61:14, 65:21, 66:25, 74:11, 76:23, 79:3, 88:19, 92:4, 95:20, 97:13, 97:21

**BASIC** [1] - 26:10

**BASIS** [6] - 29:13, 51:9, 51:19, 74:6, 76:8, 85:23

**BB** [1] - 75:3

**BEARING** [1] - 57:25

**BECOMES** [1] - 84:2

**BEDNARSKI** [16] - 3:10, 3:24, 41:2, 41:8, 41:13, 41:17, 41:23, 85:9, 85:12, 87:15, 87:19, 87:25, 88:3, 88:14, 88:22, 89:1

**BEDNARSKI** [3] - 3:11, 28:24, 29:1

**BEGAN** [3] - 64:7, 65:16

**BEGIN** [1] - 15:20

**BEGS** [1] - 79:14

**BEHALF** [2] - 3:9, 81:12

**BEHIND** [2] - 15:3, 63:21

**BELIEF** [1] - 63:16

**BELIEVABLE** [1] - 66:1

**BELIEVES** [1] - 84:12

**BENCH** [1] - 101:1

**BENEFIT** [3] - 13:4, 23:3, 35:19

**BEST** [3] - 33:13, 73:1, 93:20

**BETTER** [5] - 67:18, 76:25, 78:3, 79:2, 85:4

**BETWEEN** [17] - 8:25,

9:12, 9:21, 21:10, 22:24, 26:1, 31:10, 32:4, 41:15, 76:4, 78:7, 81:25, 89:22, 91:10, 93:25, 94:13, 95:6

**BEYOND** [3] - 10:17, 33:22, 36:7

**BIAS** [5] - 59:16, 61:22, 64:20, 65:8, 65:11

**BIASED** [3] - 65:5, 77:7, 77:12

**BID** [1] - 95:7, 96:2

**BIDDER** [1] - 95:8

**BIDDING** [12] - 93:19, 94:1, 94:3, 94:16, 95:3, 95:5, 95:7, 95:9, 95:11, 96:1, 96:5, 97:14

**BIDS** [5] - 94:17, 95:13, 95:18, 95:19, 95:20

**BIG** [3] - 6:7, 21:8, 29:23

**BILL** [2] - 89:7, 99:25

**BINDER** [4] - 100:17, 101:2, 101:3, 101:6

**BINDERS** [2] - 100:14, 100:20

**BIT** [2] - 37:5, 37:24

**BLESSES** [1] - 96:3

**BLINDERS** [1] - 62:9

**BLUR** [1] - 81:24

**BOEING'S** [1] - 98:2

**BOILS** [1] - 23:10

**BOOKS** [1] - 85:20

**BORDERS** [1] - 50:16

**BOREHOLE** [1] - 76:1

**BOTHER** [1] - 90:4

**BOTTOM** [1] - 60:11

**BOUNDS** [1] - 72:4

**BOY** [4] - 75:2, 75:3

**BREAKING** [1] - 37:18

**BRIBE** [11] - 20:11, 21:24, 22:25, 31:7, 36:1, 68:10, 68:22, 69:7, 69:13, 69:18, 72:21

**BRIBERY** [45] - 8:24, 9:22, 16:13, 17:6, 17:7, 17:10, 17:12, 17:18, 17:21, 17:22, 18:2, 18:3, 18:6, 18:20, 18:22, 18:23, 18:25, 19:3, 19:5, 19:13, 26:10, 28:17, 29:22, 30:25, 32:7, 32:16, 32:21, 34:17, 34:21, 35:22, 36:4,

50:8, 50:15, 51:1, 55:15, 56:2, 56:17, 57:2, 57:18, 58:18, 68:20, 69:12, 70:6, 70:20

**BRIBES** [4] - 20:15, 68:14, 69:2

**BRIEF** [2] - 6:3, 8:11

**BRIEFED** [1] - 5:20

**BRIEFING** [1] - 90:3

**BRING** [8] - 4:21, 6:3, 12:6, 24:11, 33:22, 76:9, 76:13, 99:16

**BRINGING** [2] - 76:10, 76:12

**BROAD** [2] - 21:15, 43:8

**BROADER** [2] - 37:5, 38:23, 42:15

**BROADLY** [1] - 34:7

**BROKERAGE** [1] - 52:10

**BRUTE** [1] - 44:4

**BURDEN** [1] - 91:5

**BUSINESS** [8] - 45:12, 47:7, 48:15, 84:11, 85:11, 85:24, 90:21, 92:25

**BUY** [6] - 93:14, 93:15, 97:24, 98:2

**BUYER** [1] - 95:6

**BYUNG** [1] - 66:21

# C

**CALIBRATE** [1] - 81:11

**CALIFORNIA** [1] - 83:7

**CALIFORNIA** [1] - 3:2

**CALTECH** [2] - 78:5, 87:17

**CAMERA** [4] - 45:17, 46:24, 46:25, 70:15

**CAP** [1] - 61:5

**CAPACITIES** [1] - 73:7

**CAPACITY** [3] - 25:14, 92:14, 93:12

**CAPS** [1] - 20:24

**CAPTURE** [3] - 25:22, 39:25, 43:9

**CAPTURES** [2] - 12:5, 34:8

**CARRIED** [1] - 37:13

**CASE** [71] - 5:19, 6:13, 6:15, 8:8, 8:15, 12:24, 13:1, 14:4, 14:23, 14:24, 15:6, 15:19, 17:14, 19:6,

19:7, 20:22, 22:20, 23:10, 23:17, 23:19, 23:25, 24:1, 25:2, 25:25, 29:12, 32:14, 32:15, 33:1, 34:20, 35:9, 37:6, 37:16, 38:5, 40:18, 41:12, 42:16, 42:23, 43:13, 43:25, 44:7, 44:16, 45:3, 45:9, 45:10, 46:3, 48:4, 54:5, 54:19, 56:7, 56:8, 56:9, 57:20, 63:6, 66:11, 67:1, 67:15, 73:1, 76:24, 76:25, 77:13, 82:7, 84:4, 86:20, 88:5, 88:18, 89:10, 89:12, 91:11, 95:4, 99:16

**CASES** [21] - 5:22, 8:24, 11:23, 21:20, 27:16, 29:16, 29:23, 30:1, 32:14, 36:22, 37:20, 38:7, 38:8, 38:10, 44:13, 51:6, 51:8, 51:10, 51:12, 55:9

**CATEGORIES** [1] - 51:6

**CATEGORY** [5] - 17:12, 32:7, 37:7, 51:17, 97:4

**CAUSAL** [2] - 22:24, 91:10

**CAUSED** [1] - 96:15

**CAUTION** [1] - 48:9

**CENTRAL** [1] - 100:25

**CEO** [1] - 61:7

**CERTAIN** [14] - 9:6, 12:22, 30:5, 30:6, 30:12, 43:20, 44:21, 51:12, 60:13, 61:21, 62:1, 93:8, 93:10

**CERTAINLY** [12] - 5:24, 6:16, 10:13, 13:1, 53:8, 55:10, 60:23, 66:10, 71:9, 71:12, 80:7, 99:14

**CERTIFICATION** [7] - 90:24, 96:3, 96:6, 96:12, 96:15, 96:24, 97:7

**CERTIFICATIONS** [3] - 90:21, 96:8, 96:9

**CERTIFIED** [3] - 96:14, 96:18, 96:25

**CERTIFIED** [1] - 4:15

**CERTIFY** [1] - 97:5

**CHANCE** [1] - 64:1

**CHANGED** [1] - 10:10

**CHARACTER** [1] - 59:3

**CHARACTERIZE** [2] - 68:14, 88:22

**CHARACTERIZED** [1] - 69:15

**CHARGE** [6] - 51:9, 57:22, 58:4, 88:13, 88:21, 91:23

**CHARGED** [8] - 32:8, 51:7, 52:15, 54:3, 56:2, 56:23, 57:18, 58:3

**CHARGES** [4] - 51:20, 51:21, 54:5, 57:20

**CHARGING** [1] - 57:1

**CHARITY** [1] - 50:5

**CHARTS** [3] - 83:13, 83:24, 84:3

**CHECK** [1] - 60:8

**CHEOL** [2] - 3:5, 3:12

**CHERRY** [3] - 8:7, 10:7, 44:13

**CHERRY-PICKED** [3] - 8:7, 10:7, 44:13

**CHI** [34] - 3:5, 3:12, 9:24, 54:20, 56:19, 71:1, 74:6, 74:10, 75:5, 76:12, 77:8, 77:12, 78:1, 78:12, 78:14, 79:9, 79:22, 81:19, 89:11, 89:13, 89:17, 90:9, 90:19, 91:1, 91:6, 91:8, 91:18, 92:12, 92:14, 93:1, 93:3, 93:25, 95:25, 98:19

**CHI'S** [4] - 74:3, 74:17, 79:18, 93:20

**CHIEF** [1] - 48:5

**CHO** [1] - 98:8

**CHOOSE** [1] - 88:6

**CHRIS** [3] - 62:4, 81:24, 82:2

**CIRCUIT** [8] - 16:25, 17:14, 27:9, 51:4, 52:16, 56:9, 63:20, 63:24

**CIRCUMSTANCE** [2] - 9:23, 88:19

**CIRCUMSTANCES** [11] - 8:10, 9:6, 43:25, 44:18, 51:13, 53:2, 63:1, 63:22, 64:3, 72:1, 72:7

**CIRCUMSTANTIALLY** [1] - 56:16

**CITATION** [1] - 87:2

**CITED** [2] - 18:19, 19:6

**CJA** [2] - 88:18, 88:22

**CLAIMS** [1] - 56:16

**CLARIFICATION** [1] - 33:6

**CLARIFY** [3] - 29:11, 37:3, 59:20

**CLEAR** [13] - 6:7, 21:1, 22:4, 24:14, 24:20, 29:19, 32:14, 32:25, 33:4, 61:11, 63:4, 80:17

**CLEARER** [1] - 22:5

**CLEARLY** [5] - 22:2, 28:16, 52:18, 67:23

**CLERK** [4] - 88:1, 88:25, 89:3

**CLICK** [1] - 87:8

**CLIENT** [1] - 99:17

**CLOSE** [5] - 45:24, 48:15, 84:11, 85:11, 85:24

**CLOSELY** [15] - 7:13, 21:11, 22:10, 22:16, 22:21, 23:6, 23:8, 23:20, 24:22, 25:4, 34:16, 35:6, 36:18, 44:11

**CLOSER** [1] - 4:13

**CLOSING** [2] - 10:17, 68:11

**CLUE** [1] - 79:20

**CODE** [12] - 16:3, 16:8, 16:13, 17:6, 17:8, 17:11, 18:4, 18:22, 18:24, 35:24, 36:6, 56:3

**COEXTENSIVE** [1] - 72:5

**COHERENT** [1] - 51:11

**COHESIVE** [1] - 52:25

**COLEMAN** [4] - 62:5, 66:8, 92:21, 92:24

**COLEMAN'S** [2] - 59:12, 66:4

**COLLEAGUES** [1] - 81:10

**COLLECTED** [1] - 78:10

**COLOR** [1] - 98:21

**COMBINING** [1] - 38:19

**COMFORTABLE** [1] - 13:11

**COMING** [1] - 77:16

**COMMISSION** [4] - 51:12, 51:15, 53:2, 94:21

**COMMIT** [1] - 44:6

**COMMITTED** [2] -

70:19, 71:21

**COMMITTEE** [3] - 27:11, 93:10, 93:13

**COMMITTING** [1] - 51:1

**COMMON** [7] - 17:17, 17:18, 17:21, 19:5, 19:9, 31:1, 34:5

**COMMONLY** [2] - 69:7, 75:7

**COMMUNICATE** [1] - 88:25

**COMMUNICATED** [2] - 90:25, 91:20

**COMMUNICATING** [1] - 88:24

**COMMUNICATION** [3] - 59:22, 60:14, 94:8

**COMMUNITY** [1] - 45:13

**COMPANIES** [9] - 63:17, 73:10, 81:13, 91:20, 93:12, 95:18, 95:19, 96:17, 98:7

**COMPANY** [14] - 83:17, 90:23, 93:15, 93:21, 94:19, 95:16, 97:11, 97:12, 98:2

**COMPANY** [6] - 49:8, 58:18, 91:3, 94:3, 97:16, 97:22

**COMPANY'S** [2] - 65:22, 92:3

**COMPETITIVE** [1] - 93:19

**COMPLETE** [3] - 41:2, 41:3, 41:4

**COMPLETED** [2] - 39:19, 39:21

**COMPLETELY** [1] - 46:2

**COMPLETES** [1] - 50:2

**COMPLEX** [1] - 82:8

**COMPLIANCE** [2] - 71:17, 72:1

**COMPLIED** [1] - 71:7

**COMPREHENSIBLE** [1] - 51:11

**CONCEPT** [2] - 31:6, 43:9

**CONCEPTS** [3] - 22:3, 25:6, 44:13

**CONCERN** [3] - 38:4, 43:5, 45:18

**CONCERNED** [3] - 41:6, 60:21, 88:7

**CONCERNING** [1] - 42:21

**CONCERNS** [1] -

58:20
**CONCLUDE** [18] - 19:3, 22:10, 34:14, 35:7, 40:22, 43:24, 44:7, 44:14, 45:7, 45:20, 51:16, 53:13, 53:19, 53:20, 55:15, 56:22, 58:6, 69:4
**CONCLUDED** [3] - 19:24, 21:12, 101:13
**CONCLUDES** [1] - 19:2
**CONCLUSION** [1] - 44:12
**CONDITION** [1] - 99:13
**CONDITIONS** [1] - 94:10
**CONDUCT** [19] - 17:12, 18:25, 23:12, 23:13, 23:14, 31:11, 34:8, 43:15, 54:23, 56:20, 57:3, 69:7, 69:11, 69:12, 69:16, 72:19, 91:8, 91:11, 92:9
**CONDUCTED** [1] - 66:8
**CONDUCTING** [1] - 59:13
**CONFER** [2] - 46:1, 85:22
**CONFERENCE** [1] - 91:12
**CONFERENCES** [1] - 85:3
**CONFERRED** [2] - 23:3, 89:24
**CONFIDENT** [1] - 28:14
**CONFIDENTIALITY** [1] - 60:9
**CONFINED** [1] - 45:13
**CONFIRM** [3] - 4:4, 26:23, 89:11
**CONFIRMED** [1] - 42:18
**CONFLICT** [1] - 97:18
**CONFORMANCE** [1] - 34:5
**CONFORMED** [2] - 71:10, 71:12
**CONFORMS** [1] - 26:9
**CONFRONTING** [1] - 80:6
**CONFUSE** [2] - 54:6, 58:8
**CONFUSED** [1] - 14:16
**CONFUSING** [4] -

22:19, 57:14, 59:4, 69:14
**CONGRATULATE** [1] - 12:3
**CONGRESS** [5] - 18:5, 18:21, 18:25, 30:25, 55:3
**CONNECTION** [20] - 6:23, 10:11, 10:14, 14:1, 14:7, 21:10, 22:24, 22:25, 23:20, 35:12, 35:13, 36:2, 72:21, 90:13, 91:10, 92:5, 93:5, 93:8, 94:6, 95:25
**CONSEQUENCE** [1] - 72:11
**CONSIDER** [2] - 57:22, 63:25
**CONSIDERATION** [3] - 20:16, 28:2, 28:11
**CONSIDERATIONS** [1] - 10:7
**CONSIDERED** [7] - 9:21, 37:25, 53:12, 55:22, 70:11, 96:4, 97:23
**CONSTITUTE** [3] - 52:7, 57:2, 59:3
**CONSTITUTES** [3] - 32:21, 51:8, 69:12
**CONSULTING** [2] - 64:12, 73:6
**CONTACTED** [2] - 54:22, 88:4
**CONTAINS** [1] - 100:17
**CONTEMPLATED** [2] - 17:3, 17:13
**CONTEMPORANEO USLY** [1] - 91:7
**CONTEMPORANEO USNESS** [1] - 64:1
**CONTEMPORARY** [1] - 76:12
**CONTEND** [1] - 77:7
**CONTENDS** [4] - 56:1, 58:24, 59:14, 64:20
**CONTENTS** [1] - 87:7
**CONTEXT** [6] - 22:1, 25:11, 25:24, 43:14, 59:7, 92:1
**CONTINUE** [4] - 7:21, 87:10, 91:13, 96:19
**CONTINUED** [1] - 65:1
**CONTRACT** [11] - 9:12, 26:1, 54:20, 79:18, 94:1, 94:5, 94:9, 94:14, 94:15, 95:4, 97:10

**CONTRACTS** [6] - 9:5, 63:18, 66:7, 94:13, 94:24, 95:1
**CONTRADICTED** [1] - 32:25
**CONTRADICTS** [1] - 66:6
**CONTROL** [2] - 62:22, 94:9
**CONTROLLED** [2] - 18:12, 18:17
**CONTROLLED** [1] - 18:14
**CONTROLLING** [1] - 97:16
**CONVERSATIONS** [1] - 64:14
**CONVICT** [1] - 72:21
**CONVICTED** [4] - 54:3, 56:2, 56:23, 70:6
**CONVICTION** [2] - 52:17, 89:12
**CONVINCE** [2] - 5:25, 91:5
**COOPERATING** [1] - 60:5
**COOPERATION** [1] - 58:17
**COP** [2] - 37:17, 38:24
**COPIES** [5] - 84:23, 85:19, 86:8, 100:21, 101:2
**COPY** [4] - 28:21, 30:9, 35:16, 101:1
**CORE** [2] - 24:25, 49:9
**CORRECT** [25] - 7:11, 12:7, 21:21, 29:7, 29:8, 30:15, 37:22, 40:2, 40:23, 40:24, 42:22, 59:19, 60:1, 64:16, 67:1, 67:10, 75:17, 75:18, 77:21, 79:11, 89:15, 93:17, 97:1, 97:15, 98:3
**CORRECTED** [2] - 13:14, 66:18
**CORRECTLY** [1] - 34:4
**CORRESPONDENC E** [1] - 69:16
**CORRESPONDS** [1] - 52:18
**CORRUPT** [2] - 17:20
**CORRUPTLY** [6] - 31:2, 31:4, 31:9, 32:3, 32:10, 34:2
**COST** [1] - 99:8
**COUNSEL** [23] - 3:6, 3:18, 13:13, 14:11,

21:9, 27:4, 29:5, 29:15, 34:15, 35:17, 38:22, 39:17, 43:21, 44:9, 54:16, 60:7, 60:8, 60:15, 85:21, 86:19, 89:11, 89:23, 101:8
**COUNSEL'S** [3] - 36:24, 40:14, 86:3
**COUNT** [2] - 55:23, 90:7
**COUNTRY** [2] - 12:15, 13:22
**COUPLE** [3] - 40:7, 87:11, 88:4
**COURSE** [15] - 3:20, 7:6, 8:14, 14:5, 21:4, 33:13, 44:19, 57:8, 69:6, 76:21, 91:9, 92:8, 95:24, 100:14, 101:10
**COURT** [190] - 3:14, 4:2, 4:7, 4:9, 4:12, 4:17, 4:21, 5:1, 5:8, 5:14, 6:5, 6:10, 7:14, 7:17, 8:1, 8:13, 9:24, 10:2, 10:24, 11:2, 11:5, 11:8, 11:12, 12:1, 12:10, 12:17, 12:20, 13:10, 13:17, 13:21, 14:11, 14:21, 15:5, 15:8, 16:21, 19:15, 24:6, 24:15, 24:20, 25:3, 26:4, 26:7, 26:12, 26:20, 26:24, 27:9, 27:21, 28:3, 28:7, 28:12, 28:20, 29:5, 29:9, 29:14, 29:24, 30:8, 30:14, 30:16, 31:13, 31:17, 31:24, 33:13, 33:18, 34:10, 38:2, 38:6, 39:4, 39:6, 39:11, 39:15, 39:17, 39:21, 39:24, 40:3, 40:9, 40:12, 40:25, 41:3, 41:11, 41:14, 41:22, 41:24, 42:8, 42:20, 43:1, 43:16, 46:12, 46:15, 46:19, 46:25, 47:12, 48:2, 48:6, 48:11, 48:14, 49:14, 50:4, 50:10, 50:16, 50:20, 54:12, 54:15, 55:4, 55:7, 55:24, 59:23, 59:25, 60:3, 60:18, 62:3, 62:7, 62:12, 62:15, 62:24, 64:17, 64:19, 67:3, 67:7, 67:12,

67:15, 68:24, 71:9, 71:20, 72:8, 74:21, 75:13, 75:20, 76:6, 76:14, 77:11, 77:22, 78:12, 78:16, 78:21, 79:4, 79:8, 79:14, 79:20, 80:4, 80:12, 80:15, 81:5, 81:21, 82:3, 82:12, 82:15, 83:3, 83:10, 83:13, 83:15, 83:25, 85:10, 85:21, 86:12, 86:15, 87:18, 87:21, 88:2, 88:13, 88:15, 88:23, 89:5, 89:18, 89:21, 90:4, 92:7, 92:11, 92:19, 92:23, 93:15, 93:19, 94:12, 94:18, 94:23, 95:7, 95:15, 96:8, 96:20, 96:22, 97:2, 97:10, 97:20, 98:16, 98:23, 99:6, 99:10, 99:12, 99:17, 100:2, 100:4
**COURT** [5] - 3:19, 3:25, 8:17, 28:18, 54:16
**COURT** [65] - 4:16, 6:17, 10:21, 10:23, 11:10, 11:23, 14:2, 16:10, 16:22, 17:4, 17:5, 18:1, 18:4, 19:1, 19:11, 20:22, 24:10, 26:6, 26:8, 30:22, 30:23, 31:8, 31:18, 32:5, 32:13, 33:8, 33:16, 33:24, 37:6, 37:10, 37:18, 40:15, 42:5, 43:4, 44:1, 47:9, 47:16, 47:24, 50:21, 53:21, 55:1, 57:12, 59:9, 59:10, 63:24, 65:9, 65:24, 66:14, 68:20, 70:7, 70:12, 75:9, 75:10, 80:9, 81:7, 86:16, 86:21, 87:23, 88:5, 89:14, 90:2, 99:7, 99:21, 101:7
**COURT'S** [16] - 10:6, 11:20, 16:12, 35:16, 36:24, 37:3, 38:14, 39:8, 45:4, 46:9, 46:18, 48:10, 82:1, 86:14, 89:2, 100:13
**COURTROOM** [2] - 3:4, 42:3
**COURTROOM** [6] - 3:16, 11:15, 12:21, 35:15, 42:1, 101:8

**COURTS** [1] - 38:17
**COURTS** [1] - 35:10
**COVER** [4] - 7:17, 18:25, 35:13, 41:18
**COVERED** [1] - 55:17
**COVERS** [2] - 27:12, 41:5
**CR** [1] - 3:4
**CREATE** [1] - 59:3
**CREDIBILITY** [3] - 58:21, 59:15, 59:16
**CREDITWORTHINES S** [1] - 95:21
**CRIME** [11] - 18:14, 44:6, 51:7, 51:12, 51:15, 52:15, 52:25, 53:3, 56:23, 57:23, 58:4
**CRIMES** [1] - 27:16
**CRIMINAL** [12] - 7:3, 13:2, 14:3, 27:13, 51:9, 51:20, 54:1, 54:3, 57:4, 58:18, 72:2, 82:19
**CRIMINAL** [7] - 16:8, 17:6, 17:11, 18:24, 35:24, 36:6, 56:3
**CRIMINALIZE** [1] - 18:5
**CRIMINALLY** [3] - 52:9, 56:5, 70:10
**CRITERIA** [3] - 95:21, 97:13, 97:14
**CRITICAL** [3] - 72:25, 76:3
**CROSS** [8] - 60:14, 60:15, 62:13, 62:18, 65:8, 68:4, 77:14, 82:23
**CROSS-COMMUNICATION** [1] - 60:14
**CROSS-EXAMINATION** [6] - 60:15, 62:13, 62:18, 65:8, 77:14, 82:23
**CROSS-EXAMINE** [1] - 68:4
**CUMULATIVE** [1] - 57:16
**CURRENT** [2] - 61:6, 61:7
**CUSTOMARILY** [1] - 36:20
**CUT** [4] - 79:8, 94:20, 96:21, 97:18

# D

**DANGER** [1] - 58:8

**DANGERS** [1] - 57:14
**DARK** [1] - 47:21
**DATA** [1] - 78:9
**DATE** [1] - 85:15
**DAVID** [1] - 3:9
**DAY-TO-DAY** [2] - 74:6, 76:8
**DAYS** [1] - 19:17
**DEADLINE** [2] - 77:4, 82:10
**DEAL** [1] - 84:21
**DEALING** [1] - 14:4
**DEALS** [2] - 78:8, 78:9
**DECADE** [1] - 54:21
**DECIDE** [2] - 44:3, 90:6
**DECIDED** [2] - 58:19, 99:16
**DECIDING** [1] - 57:22
**DECISION** [11] - 21:24, 21:25, 25:20, 26:2, 26:19, 28:7, 36:21, 40:20, 43:7, 43:10, 90:1
**DECISION-MAKING** [1] - 43:10
**DECISIONS** [2] - 21:13, 28:18
**DECLARANT'S** [1] - 63:13
**DECLARATION** [4] - 12:24, 47:2, 63:23, 86:7
**DEEMED** [4] - 9:1, 20:12, 24:25
**DEEP** [1] - 79:2
**DEFENDANT** [97] - 16:6, 17:9, 18:1, 19:7, 21:5, 22:5, 22:8, 22:15, 22:16, 23:8, 24:22, 27:25, 28:8, 32:3, 32:11, 32:24, 34:15, 34:16, 35:3, 36:8, 36:10, 43:23, 44:6, 44:12, 44:19, 45:5, 45:21, 47:25, 49:16, 49:21, 51:2, 51:7, 51:22, 52:4, 52:13, 52:23, 53:4, 53:7, 53:9, 53:15, 53:22, 54:2, 54:9, 56:1, 56:6, 56:13, 56:22, 57:1, 57:3, 57:18, 57:20, 58:1, 58:4, 58:19, 58:22, 59:2, 59:8, 59:11, 63:7, 63:14, 64:9, 64:20, 64:23, 64:24, 65:2, 65:6, 65:17, 65:23, 66:2,

66:12, 68:12, 68:14, 69:15, 69:21, 70:2, 70:9, 70:13, 70:22, 72:13, 72:17, 72:18, 72:21, 73:1, 73:5, 73:8, 73:16, 80:18, 81:9, 82:18, 84:10, 85:1, 88:11, 88:20, 89:23, 92:1
**DEFENDANT'S** [33] - 16:24, 17:4, 19:11, 33:4, 34:23, 34:24, 35:5, 44:11, 44:23, 45:16, 47:15, 47:24, 48:24, 49:7, 51:1, 51:18, 52:11, 53:12, 54:1, 56:24, 63:10, 64:8, 65:1, 65:16, 65:20, 66:4, 68:9, 69:6, 69:23, 70:4, 70:16, 83:6, 86:2
**DEFENDANTS** [1] - 60:19
**DEFENDING** [1] - 96:19
**DEFENSE** [28] - 11:16, 12:25, 22:12, 23:7, 28:23, 35:20, 38:2, 38:22, 39:7, 40:14, 40:17, 40:19, 41:12, 45:8, 46:12, 46:20, 47:3, 49:3, 60:15, 61:10, 71:11, 84:9, 84:12, 85:1, 85:22, 87:13, 88:11, 99:8
**DEFER** [4] - 45:22, 60:20, 61:2, 77:1
**DEFINED** [5] - 18:13, 18:14, 18:15, 28:16, 44:24
**DEFINES** [1] - 18:9, 69:9
**DEFINING** [2] - 35:8, 35:10
**DEFINITION** [39] - 16:12, 17:5, 17:7, 17:10, 17:18, 17:21, 17:22, 18:2, 18:12, 18:21, 19:3, 19:5, 19:9, 19:21, 21:15, 21:19, 23:17, 23:18, 25:7, 25:8, 26:4, 26:10, 30:23, 30:24, 31:20, 31:21, 31:22, 31:23, 33:23, 33:24, 34:1, 34:6, 34:7, 34:9, 36:22, 38:4, 38:10, 69:8
**DEFINITIONS** [1] - 18:11

**DELAY** [1] - 57:15
**DELEGATIONS** [1] - 81:9
**DELIVER** [2] - 85:7, 85:20
**DELIVERED** [2] - 84:23, 85:11
**DELVES** [1] - 45:2
**DEMANDED** [3] - 35:3, 36:10, 72:23
**DEMANDING** [3] - 17:24, 36:1, 42:23
**DEMONSTRATE** [2] - 63:16, 98:5
**DEMONSTRATING** [1] - 72:19
**DENIED** [2] - 47:6, 96:11
**DENIES** [1] - 53:21
**DENY** [4] - 49:1, 62:22, 68:15, 69:23
**DEPARTMENT** [1] - 13:20
**DEPARTMENT'S** [1] - 38:22
**DEPOSITED** [2] - 54:25, 83:18
**DEPOSITION** [1] - 68:3
**DEPOSITS** [1] - 49:19
**DEPRIVE** [1] - 99:14
**DEPUTY** [3] - 35:15, 42:1, 101:8
**DEPUTY** [2] - 3:4, 42:3
**DERIVED** [8] - 35:22, 36:4, 52:9, 56:5, 56:12, 56:17, 57:4, 70:10
**DESCRIBED** [1] - 52:19
**DESCRIBES** [1] - 46:2
**DESCRIPTION** [1] - 24:7
**DETERMINATION** [3] - 71:13, 85:4, 99:21
**DETERMINATIVE** [1] - 71:8
**DETERMINE** [4] - 11:11, 18:3, 47:15, 68:20
**DETERMINING** [4] - 63:25, 71:23, 72:12, 73:2
**DETRIMENT** [1] - 98:12
**DICTATED** [1] - 66:12
**DICTIONARY** [1] - 69:9
**DIFFERENCE** [10] - 6:8, 6:10, 7:12,

41:15, 50:4, 76:2, 76:4, 88:24, 94:13, 97:11
**DIFFERENT** [9] - 27:16, 27:20, 38:7, 42:18, 76:11, 94:25
**DIFFERENTIATE** [1] - 31:10
**DIFFERENTLY** [1] - 9:4
**DIFFICULT** [1] - 35:2
**DIRE** [1] - 86:4
**DIRECT** [2] - 37:6, 82:22
**DIRECTLY** [2] - 3:19, 94:19
**DIRECTOR** [4] - 20:23, 21:2, 21:5, 36:14
**DISAGREE** [5] - 8:3, 14:18, 37:22, 41:20, 72:8
**DISAGREES** [1] - 18:5
**DISCIPLINED** [1] - 56:15
**DISCLOSED** [1] - 85:15
**DISCLOSURE** [1] - 76:17
**DISCLOSURES** [1] - 47:5
**DISCOUNT** [2] - 98:9, 98:12
**DISCRETE** [2] - 7:5, 7:12
**DISCUSS** [5] - 15:14, 28:22, 53:1, 89:5, 89:9
**DISCUSSED** [1] - 34:15
**DISCUSSING** [1] - 29:6
**DISCUSSION** [5] - 7:19, 15:21, 21:10, 38:5, 89:22
**DISHEARTENING** [2] - 86:21, 86:23
**DISMISS** [1] - 16:15
**DISPUTE** [2] - 63:5, 88:15
**DISPUTED** [10] - 5:17, 6:14, 6:22, 7:7, 16:1, 16:2, 16:7, 16:21, 19:20, 30:19
**DISPUTES** [1] - 70:4
**DISPUTING** [1] - 6:23
**DISREGARDS** [1] - 37:17
**DISTANCE** [2] - 13:8, 13:24

**DISTINCTION** [6] - 8:25, 9:8, 21:10, 78:7, 81:25, 95:10
**DISTINGUISH** [2] - 26:1, 75:6
**DISTINGUISHES** [1] - 93:25
**DISTINGUISHING** [2] - 9:12, 9:21
**DISTRACT** [1] - 54:5
**DISTRICT** [1] - 39:1
**DIVISION** [2] - 98:6, 98:9
**DOCKET** [9] - 15:23, 15:25, 20:8, 66:19, 70:3, 73:14, 82:18, 84:18
**DOCKET** [2] - 87:4, 87:8
**DOCTRINALLY** [1] - 38:16
**DOCTRINES** [1] - 50:24
**DOCUMENT** [5] - 30:13, 62:5, 86:25, 87:4, 87:6
**DOCUMENT** [2] - 20:2, 87:6
**DOCUMENTS** [3] - 30:12, 86:20, 87:2
**DONE** [3] - 30:6, 38:17, 94:8
**DONUTS** [1] - 101:10
**DOOR** [3] - 57:6, 97:12, 97:21
**DOUBT** [2] - 32:22, 36:7
**DOWN** [2] - 23:10, 100:1
**DR** [38] - 9:24, 54:20, 56:19, 61:25, 71:1, 74:3, 74:6, 74:10, 74:17, 75:5, 77:12, 78:5, 78:12, 78:14, 79:9, 79:10, 79:18, 79:22, 80:19, 81:19, 87:16, 87:17, 89:11, 89:13, 89:17, 90:9, 90:19, 91:1, 91:6, 91:18, 92:12, 92:14, 93:1, 93:3, 93:20, 93:25, 95:25, 98:19
**DRAFT** [3] - 24:20, 27:12, 64:10
**DRAFTED** [5] - 8:4, 22:4, 25:11, 34:13, 44:25
**DRAFTING** [2] - 12:4, 46:4
**DRAW** [2] - 38:9,

43:15
**DRAWN** [1] - 34:7
**DRAWS** [1] - 34:4
**DURING** [13] - 7:6, 8:13, 14:5, 21:6, 54:22, 65:7, 65:22, 68:11, 69:17, 76:21, 88:11, 88:12, 100:13
**DUTIES** [69] - 8:10, 10:12, 10:14, 17:25, 20:15, 20:16, 21:11, 21:16, 22:17, 22:22, 22:25, 23:5, 23:7, 23:9, 23:14, 23:18, 23:21, 23:22, 24:2, 24:6, 24:7, 24:8, 24:11, 24:13, 24:23, 25:5, 25:8, 25:16, 26:5, 34:17, 35:1, 35:4, 35:5, 35:7, 35:8, 35:11, 36:2, 36:12, 36:13, 36:17, 36:19, 37:5, 37:11, 37:12, 37:19, 38:1, 38:4, 38:11, 42:12, 42:17, 42:21, 44:12, 44:17, 44:25, 72:21, 72:24, 72:25, 73:2, 73:9, 74:4, 74:18, 75:6, 75:7, 79:18, 81:14, 91:10
**DUTY** [5] - 23:15, 25:20, 37:7, 37:8, 42:15

# E

**E-MAIL** [4] - 69:16, 87:25, 96:7, 101:8
**E-MAILS** [16] - 56:18, 65:17, 74:23, 75:22, 91:20, 93:3, 93:7, 93:25, 94:7, 95:24, 96:1, 96:16, 98:4, 98:18, 98:19, 98:21
**EARPHONES** [1] - 9:25
**EASIEST** [1] - 5:23
**EASY** [1] - 31:9
**EDITORIALIZING** [1] - 91:3
**EDUCATE** [1] - 77:17
**EDUCATING** [1] - 14:2
**EFFECT** [6] - 38:20, 59:12, 61:19, 62:19, 65:7, 78:1
**EFFORT** [1] - 67:17
**EFFORTS** [4] - 14:2, 49:8, 68:10, 84:15
**EIGHT** [1] - 87:15

**EIGHTH** [1] - 56:9
**EITHER** [10] - 3:17, 5:10, 8:15, 19:25, 29:14, 51:17, 67:19, 70:4, 89:14, 91:23
**ELEMENT** [1] - 24:15
**ELEMENT** [24] - 20:18, 22:23, 24:14, 24:20, 24:21, 25:9, 25:15, 28:16, 32:4, 33:7, 34:14, 34:17, 34:23, 34:24, 35:14, 38:16, 38:19, 42:25, 44:5, 44:6, 90:18
**ELEMENT-BY-ELEMENT** [1] - 32:4
**ELEMENTS** [31] - 7:3, 7:11, 8:2, 12:5, 19:8, 19:13, 19:21, 20:3, 20:6, 20:10, 22:2, 22:6, 22:7, 22:8, 22:11, 22:13, 22:15, 23:10, 26:10, 26:13, 34:10, 34:21, 36:7, 40:1, 40:21, 41:5, 53:14, 53:19, 70:23, 71:14, 71:19
**ELICIT** [3] - 68:12, 77:6, 80:24
**ELICITING** [4] - 60:12, 69:19, 80:19, 80:22
**ELIGIBLE** [1] - 96:5
**ELIMINATE** [1] - 94:20
**EMBELLISH** [1] - 40:17
**EMPLOYEE** [1] - 65:3
**EMPLOYEES** [9] - 9:1, 42:10, 63:16, 63:18, 64:11, 64:24, 65:4, 66:6, 73:6
**EMPLOYER** [4] - 32:17, 71:24, 79:16, 94:7
**ENCOMPASSED** [1] - 34:23
**END** [2] - 85:19, 100:22
**ENDED** [1] - 83:19
**ENDORSE** [3] - 80:23, 81:19, 92:2
**ENDS** [1] - 33:20
**ENFORCEMENT** [2] - 54:22, 56:14
**ENGAGE** [1] - 73:6
**ENGAGED** [1] - 58:1
**ENGLISH** [1] - 4:24, 39:10
**ENORMOUS** [1] - 12:4
**ENRICHMENT** [1] - 50:13

**ENSURE** [1] - 17:10
**ENTER** [2] - 63:18, 65:4
**ENTERED** [2] - 54:13, 58:16
**ENTERING** [1] - 66:7
**ENTERTAINMENT** [1] - 52:1
**ENTIRELY** [2] - 20:19, 31:4
**ENTITIES** [1] - 78:17
**ENTITLED** [3] - 70:24, 70:25, 87:4
**ENTITY** [2] - 92:4, 92:21
**EQUIPMENT** [7] - 81:11, 81:19, 90:23, 90:24, 95:12, 96:4, 98:2
**ESPECIALLY** [1] - 29:23
**ESSENCE** [1] - 12:5
**ESSENTIALLY** [4] - 25:14, 26:9, 31:19, 87:25
**ESTABLISH** [1] - 36:3
**ESTABLISHED** [1] - 18:18
**ESTABLISHING** [1] - 56:4
**ESTIMATES** [2] - 82:5, 82:22
**ETHICAL** [1] - 80:20
**ETHICALLY** [1] - 79:7
**EVALUATING** [1] - 66:3
**EVALUATION** [1] - 46:9
**EVENT** [10] - 11:14, 12:6, 22:3, 56:21, 67:20, 69:3, 76:14, 84:21, 89:12, 100:8
**EVENTS** [1] - 51:14
**EVIDENCE** [1] - 65:10
**EVIDENCE** [66] - 45:24, 48:24, 49:7, 49:11, 49:15, 51:3, 51:6, 51:8, 51:10, 51:14, 51:16, 52:4, 52:23, 53:1, 53:7, 53:10, 53:16, 53:22, 54:4, 54:8, 54:19, 54:21, 55:13, 56:1, 56:7, 56:9, 57:10, 57:12, 57:13, 57:16, 57:17, 58:2, 58:7, 58:8, 58:12, 58:24, 59:5, 59:10, 59:11, 59:14, 62:10, 63:15, 64:1, 65:11, 65:13,

65:19, 66:2, 66:5, 70:1, 70:8, 70:14, 71:12, 72:9, 72:11, 72:13, 72:18, 73:2, 73:8, 77:16, 90:16, 91:13, 91:25, 94:2, 96:14
**EXACTLY** [2] - 74:19, 92:18
**EXAMINATION** [7] - 60:15, 62:13, 62:18, 65:8, 77:14, 82:22, 82:23
**EXAMINE** [2] - 68:4, 84:5
**EXAMPLE** [10] - 23:25, 25:1, 25:17, 77:11, 77:18, 78:21, 92:12, 93:6, 93:9, 98:8
**EXCEPT** [1] - 68:11
**EXCEPTION** [3] - 22:9, 54:16, 63:21
**EXCESSIVE** [1] - 82:23
**EXCHANGE** [12] - 23:4, 33:9, 34:25, 35:4, 36:11, 44:11, 44:17, 73:9, 90:19, 92:16, 93:18, 94:11
**EXCHANGED** [1] - 84:15
**EXCHANGING** [1] - 85:16
**EXCLUDE** [8] - 53:20, 54:8, 55:14, 57:12, 63:13, 66:15, 66:20, 67:8
**EXCLUDED** [2] - 5:10, 72:23
**EXCLUDING** [1] - 57:12
**EXERCISE** [3] - 20:16, 23:5, 68:2
**EXERCISING** [7] - 17:25, 35:1, 35:4, 36:11, 36:12, 44:17, 72:24
**EXERTION** [1] - 98:13
**EXHIBIT** [5] - 64:15, 84:16, 85:20, 86:8, 91:22
**EXHIBITS** [22] - 15:19, 84:14, 84:16, 84:19, 84:20, 84:24, 84:25, 85:2, 85:5, 85:6, 85:8, 85:14, 85:23, 86:2, 86:9, 86:10, 100:13, 100:14, 100:18, 100:20,

100:23, 101:4
**EXISTING** [1] - 63:13
**EXPECT** [1] - 85:24
**EXPENDITURES** [7] -
48:25, 50:7, 50:23,
51:18, 51:24, 52:11,
53:1
**EXPENSES** [2] -
50:13, 50:23
**EXPERT** [59] - 4:23,
4:24, 5:10, 5:12,
5:15, 6:8, 6:9, 6:12,
7:20, 8:6, 8:21, 9:15,
9:16, 10:4, 10:10,
10:19, 10:25, 11:14,
11:16, 11:22, 11:25,
12:23, 13:15, 14:1,
20:7, 20:9, 22:9,
26:17, 27:3, 28:24,
35:20, 38:12, 39:7,
40:15, 45:11, 46:10,
46:12, 46:17, 47:10,
47:17, 48:7, 48:12,
69:15, 73:22, 73:24,
74:5, 74:9, 74:13,
75:11, 75:13, 77:23,
78:23, 79:11, 79:20,
80:2, 80:3, 87:16,
87:17
**EXPERT** [1] - 87:5
**EXPERT'S** [1] - 46:21
**EXPERTISE** [4] - 6:8,
25:14, 25:16, 31:12
**EXPERTS** [17] - 4:18,
5:10, 5:18, 6:1, 6:11,
10:22, 12:6, 27:1,
29:15, 41:7, 46:4,
46:6, 47:4, 47:25,
68:19, 73:17
**EXPERTS'** [3] - 6:16,
20:22, 43:19
**EXPLAIN** [6] - 37:24,
41:9, 45:8, 51:13,
53:3, 83:23
**EXPLAINED** [2] - 51:4,
63:21
**EXPLAINS** [1] - 59:5
**EXPLANATION** [3] -
21:23, 45:1, 98:25
**EXPLANATIONS** [1] -
30:5
**EXPLORE** [2] - 62:1,
65:7
**EXTENDED** [1] - 92:8
**EXTENT** [7] - 49:11,
53:6, 63:7, 71:18,
84:24, 97:4, 98:18
**EXTORTION** [1] - 19:9
**EXTRA** [1] - 11:15
**EYES** [1] - 65:13

# F

**F.3D** [1] - 51:5
**FACE** [2] - 5:3, 66:5
**FACED** [1] - 100:6
**FACILITATE** [2] -
96:6, 97:7
**FACILITATED** [1] -
53:4
**FACILITATION** [1] -
96:9
**FACILITY** [1] - 24:4
**FACING** [1] - 71:1
**FACT** [16] - 9:15, 9:16,
17:19, 21:4, 21:5,
32:15, 49:10, 56:14,
56:25, 60:25, 62:1,
67:11, 72:10, 72:11,
89:3, 94:6
**FACTOR** [1] - 62:11
**FACTORS** [18] - 7:25,
8:2, 8:7, 8:8, 8:22,
9:9, 9:21, 10:6,
10:11, 10:15, 24:19,
24:21, 44:9, 44:14,
44:19, 44:21, 57:22,
63:25
**FACTS** [9] - 38:8,
44:4, 45:3, 64:6,
65:12, 65:13, 65:22,
65:25, 66:11
**FACTUAL** [2] - 10:7,
44:20
**FAILED** [1] - 90:24
**FAILS** [2] - 20:5, 45:8
**FALL** [1] - 24:8
**FALLS** [3] - 17:11,
24:7, 37:7
**FAMILIAR** [2] - 8:14,
8:18
**FAR** [5] - 8:6, 41:6,
53:9, 60:21, 94:2
**FAST** [1] - 39:13
**FAVOR** [2] - 57:11,
69:10
**FAVORABLE** [1] -
94:3
**FAVORITE** [1] - 50:24
**FBI** [3] - 62:5, 64:22,
66:3
**FEBRUARY** [2] - 61:8,
64:6
**FED.2D** [1] - 63:20
**FED.3D** [2] - 17:16,
52:17
**FEDERAL** [3] - 65:10,
99:13, 99:16
**FEDERAL** [6] - 30:23,
33:23, 33:25, 34:6,
34:8, 44:3

**FEE** [12] - 9:5, 9:12,
25:22, 26:1, 63:18,
64:25, 65:4, 65:20,
66:7, 92:3, 92:5,
98:10
**FEES** [4] - 65:18,
72:14, 72:16, 99:14
**FEW** [1] - 89:19
**FIELD** [4] - 9:16, 75:8,
78:11, 78:13
**FIGHT** [1] - 91:9
**FIGHTING** [4] - 22:21,
23:23, 23:24, 61:15
**FIGURE** [1] - 83:20
**FIGURED** [2] - 4:24,
86:17
**FILE** [16] - 4:4, 4:6,
4:16, 41:6, 46:20,
46:22, 48:12, 48:15,
70:13, 73:16, 77:2,
81:21, 82:1, 85:25,
87:9, 90:10
**FILED** [18] - 12:24,
12:25, 15:22, 15:25,
45:17, 48:18, 48:19,
54:10, 66:18, 70:15,
73:13, 82:17, 82:18,
84:17, 86:24, 86:25,
87:3
**FILING** [3] - 6:20,
67:24, 73:20
**FILL** [1] - 90:8
**FINAL** [4] - 19:16,
45:5, 73:12, 90:3
**FINALLY** [1] - 66:2
**FINANCIAL** [4] -
49:18, 73:22, 82:25,
99:13
**FINDER** [1] - 21:4
**FINE** [3] - 14:20,
49:21, 90:4
**FINISHED** [1] - 84:22
**FIRST** [12] - 6:6, 8:18,
15:14, 32:2, 40:10,
48:23, 49:12, 51:18,
65:15, 73:21, 80:13,
80:16
**FIRST** [8] - 14:23,
14:25, 15:4, 15:10,
49:9, 51:21, 52:2,
52:7
**FIT** [2] - 51:16, 97:23
**FITS** [2] - 30:24, 32:6
**FITTING** [1] - 47:18
**FIVE** [2] - 10:6, 100:1
**FIX** [1] - 96:19
**FIXED** [2] - 92:3, 97:8
**FLAG** [1] - 99:2
**FLAWED** [1] - 66:4
**FLOW** [1] - 83:6

**FOCUS** [2] - 6:14,
94:23
**FOCUSED** [1] - 6:25
**FOCUSING** [2] - 6:17,
26:13
**FOLKS** [2] - 73:20,
82:4
**FOLLOWED** [1] - 70:2
**FOLLOWING** [4] -
36:7, 48:21, 50:20,
55:24
**FOLLOWS** [1] - 16:22
**FOREIGN** [6] - 6:23,
18:6, 18:10, 18:15,
32:8, 35:23
**FORENSIC** [1] - 83:1
**FORFEITURE** [2] -
89:13, 90:6
**FORM** [5] - 15:9,
62:17, 85:25, 86:1,
90:8
**FORMAL** [1] - 73:19
**FORMED** [1] - 65:20
**FORTH** [11] - 20:1,
20:6, 22:2, 22:8,
38:8, 39:1, 39:25,
63:19, 63:21, 74:14
**FORWARD** [3] -
12:10, 12:11, 27:4
**FOUR** [3] - 10:9,
18:17, 53:14
**FRANKLY** [3] - 6:12,
22:18, 77:4
**FRAUD** [4] - 58:13,
58:17, 59:6, 59:18
**FREE** [3] - 44:19,
87:24, 88:20
**FREESTANDING** [1] -
23:17
**FREQUENTLY** [1] -
27:15
**FRIDAY** [1] - 3:1
**FRIVOLOUS** [1] -
50:17
**FRONT** [3] - 91:5,
97:12, 97:21
**FUHR** [1] - 3:9
**FULL** [3] - 13:4, 67:21,
72:1
**FULLY** [1] - 46:2
**FUNCTION** [2] -
24:25, 27:19
**FUND** [1] - 9:4
**FUNDAMENTALLY**
[1] - 9:4
**FUNDED** [1] - 9:3
**FUNDING** [1] - 99:25
**FUNDS** [12] - 49:7,
49:10, 51:22, 51:24,
52:5, 52:10, 53:5,

53:8, 53:9, 53:11,
55:2, 83:8
**FURNISHES** [2] -
50:3, 50:8
**FUTURE** [2] - 37:12,
58:5

# G

**GAMBLING** [1] - 38:25
**GATHERED** [1] -
65:22
**GEE** [4] - 74:8, 77:20,
78:22, 80:12
**GEE** [4] - 75:12, 78:1,
79:10, 80:19
**GEE** [1] - 77:20
**GENERAL** [8] - 21:17,
32:6, 37:8, 37:19,
37:25, 39:3, 42:14,
81:16
**GENERALLY** [3] -
17:17, 43:3, 51:5
**GENERIC** [11] - 26:10,
30:23, 30:24, 31:19,
31:20, 31:22, 31:23,
33:23, 33:25, 34:6,
34:8
**GENTLEMEN** [1] -
12:7
**GEOSCIENCE** [1] -
36:15
**GIVEN** [20] - 5:12,
5:13, 22:2, 26:6,
29:11, 29:12, 30:21,
31:18, 34:25, 38:23,
43:3, 43:4, 46:17,
59:15, 60:8, 61:21,
63:1, 69:10, 77:18,
99:13
**GLEAN** [2] - 86:9,
90:22
**GLEANING** [1] - 95:24
**GOAL** [1] - 80:1
**GOD** [1] - 42:6
**GOLF** [5] - 48:25,
49:17, 49:22, 50:11,
51:19
**GOVERNMENT** [7] -
9:1, 42:14, 64:23,
65:3, 65:17, 91:24,
93:11
**GOVERNMENT** [84] -
10:3, 16:10, 16:19,
17:1, 20:10, 20:21,
25:17, 29:17, 31:24,
33:2, 33:21, 34:4,
36:6, 37:2, 45:11,
47:10, 47:12, 48:14,
49:4, 49:15, 51:2,

51:13, 51:20, 52:3, 52:24, 52:25, 53:3, 53:6, 53:14, 54:7, 54:25, 55:18, 56:7, 57:21, 58:22, 58:24, 59:1, 59:17, 59:25, 60:25, 64:5, 64:7, 65:19, 68:3, 68:10, 68:12, 69:4, 70:4, 70:7, 70:21, 71:14, 72:22, 73:14, 75:13, 75:14, 76:15, 76:18, 77:6, 77:16, 77:18, 80:20, 80:22, 81:2, 81:18, 81:22, 82:17, 84:10, 84:23, 85:8, 85:13, 85:23, 86:6, 86:24, 87:3, 90:12, 90:16, 91:13, 91:15, 92:2, 99:13, 99:16
**GOVERNMENT'S** [44] - 8:3, 13:15, 16:23, 16:24, 20:4, 20:7, 20:9, 20:17, 21:15, 21:22, 22:1, 22:9, 25:17, 27:2, 37:4, 37:23, 38:12, 45:11, 48:24, 49:2, 50:22, 53:21, 53:25, 54:1, 62:25, 66:6, 66:14, 66:19, 69:13, 69:18, 70:1, 73:18, 74:8, 74:22, 75:11, 77:9, 80:10, 82:19, 82:21, 82:22, 84:16, 85:2, 85:6, 85:14
**GRANT** [1] - 62:25
**GRANTED** [1] - 60:1
**GRANTS** [1] - 66:14
**GRASP** [1] - 11:23
**GREATER** [1] - 63:22
**GREED** [2] - 49:24, 51:1
**GROUNDS** [1] - 53:18
**GSL** [2] - 58:18, 61:7
**GSL'S** [1] - 69:21
**GSN** [1] - 75:1
**GUESS** [2] - 73:21, 92:16
**GUIDED** [1] - 9:7
**GUILT** [2] - 28:8, 62:10
**GUILTY** [1] - 71:11
**GUN** [3] - 98:25, 99:2, 99:4
**GURALP** [2] - 98:10, 98:11

# H

**HALF** [1] - 84:7
**HAND** [2] - 13:13, 42:3
**HANDLED** [2] - 37:11
**HANDLING** [1] - 47:4
**HAPPY** [2] - 10:22, 32:13
**HARD** [1] - 86:8
**HEAD** [1] - 66:22
**HEAR** [19] - 3:15, 3:21, 4:13, 5:17, 5:25, 7:22, 12:17, 16:17, 19:22, 29:4, 30:19, 33:16, 49:3, 49:4, 55:10, 60:23, 68:16, 70:21, 71:4
**HEARD** [1] - 68:16
**HEARING** [1] - 63:6
**HEARSAY** [9] - 58:24, 59:14, 60:13, 61:11, 61:19, 62:24, 63:9, 63:12, 67:23
**HEAVILY** [1] - 56:7
**HELP** [1] - 42:6
**HELPFUL** [6] - 6:13, 6:17, 22:1, 75:5, 77:5, 101:3
**HELPING** [5] - 3:25, 13:1, 43:12, 91:21, 97:5
**HEON** [2] - 3:5, 3:12
**HEON-CHEOL** [2] - 3:5, 3:12
**HIGHEST** [2] - 95:8
**HIGHLY** [3] - 72:16, 74:20, 74:23
**HIMSELF** [3] - 21:23, 57:3, 65:17
**HO** [1] - 61:5
**HONOR** [101] - 3:8, 3:10, 4:5, 4:10, 4:14, 4:19, 4:20, 4:23, 5:7, 5:9, 6:2, 7:10, 7:23, 8:11, 8:20, 10:5, 11:1, 11:6, 11:9, 11:19, 12:8, 12:9, 13:9, 13:16, 14:19, 14:20, 15:2, 15:7, 16:19, 16:20, 19:14, 26:16, 27:8, 29:4, 29:18, 30:21, 31:15, 32:1, 33:2, 33:11, 33:20, 37:1, 37:21, 38:3, 39:9, 39:20, 39:23, 40:2, 40:4, 40:8, 41:2, 43:2, 46:8, 46:16, 46:23, 47:8, 47:14, 48:7, 48:13, 49:6, 50:1,

50:6, 50:13, 50:19, 54:11, 54:18, 55:12, 59:20, 60:2, 60:6, 64:16, 67:2, 67:5, 68:17, 71:5, 71:22, 74:15, 75:18, 77:4, 80:13, 81:7, 83:2, 83:12, 83:14, 83:22, 85:9, 86:10, 89:16, 89:24, 91:17, 92:9, 92:18, 93:17, 93:24, 94:22, 95:23, 96:16, 97:1, 97:15, 98:17, 99:20
**HONOR'S** [2] - 7:11, 95:2
**HONORED** [1] - 13:9
**HOPE** [2] - 22:3, 86:19
**HOUR** [1] - 83:11
**HOURS** [5] - 73:21, 83:3, 84:5, 84:6, 84:7
**HUNDREDS** [1] - 74:23
**HUNG** [1] - 23:6
**HYPHEN** [1] - 61:5
**HYPOTHETICALS** [1] - 80:2

# I

**I.E** [1] - 34:25
**IDEA** [6] - 22:18, 74:5, 75:24, 80:5, 84:12, 86:1
**IDENTICAL** [2] - 17:22, 22:8
**IDENTIFICATION** [1] - 17:2
**IDENTIFIED** [1] - 52:6
**IDENTIFIES** [1] - 93:1
**ILL** [1] - 68:23
**ILL-INFORMED** [1] - 68:23
**ILLEGAL** [8] - 49:8, 53:4, 54:23, 55:2, 56:10, 56:12, 57:3, 64:25
**ILLEGALLY** [2] - 53:7, 53:23
**IMAGINE** [4] - 23:19, 35:2, 71:25, 82:24
**IMMUNITY** [1] - 60:1
**IMPEACHMENT** [1] - 66:5
**IMPERMISSIBLE** [1] - 52:8
**IMPLICATE** [1] - 69:14
**IMPLICATION** [1] - 96:7

**IMPORTANT** [8] - 3:20, 6:4, 6:5, 26:25, 42:24, 42:25, 86:20, 90:7
**IMPORTANTLY** [5] - 44:15, 57:5, 69:15, 74:2, 75:24
**IMPRISONMENT** [1] - 29:22
**IMPROPER** [8] - 34:25, 59:3, 65:21, 79:7, 96:9, 96:24, 97:9, 98:1
**IMPROPERLY** [4] - 55:15, 57:19, 96:14
**IN-PERSON** [1] - 69:17
**INACTION** [1] - 20:13
**INADMISSIBLE** [2] - 58:24, 63:9
**INAPPROPRIATE** [4] - 59:8, 70:17, 81:20, 97:19
**INAPPROPRIATELY** [1] - 45:2
**INCLINATION** [1] - 10:6
**INCLUDE** [8] - 8:9, 14:25, 15:6, 28:15, 36:17, 38:18, 66:18, 87:1
**INCLUDED** [1] - 33:3
**INCLUDES** [2] - 21:16, 31:8
**INCLUDING** [5] - 18:12, 51:25, 57:23, 87:16, 98:15
**INCLUSION** [1] - 45:3
**INCORPORATE** [1] - 11:24, 18:21
**INCORPORATES** [1] - 18:11
**INCREDIBLE** [1] - 56:18
**INDEED** [5] - 18:9, 19:6, 20:9, 35:9, 69:9
**INDEPENDENT** [2] - 40:15, 52:21
**INDEX** [1] - 86:25
**INDICATED** [3] - 21:9, 32:13, 82:20
**INDICATING** [1] - 7:19
**INDICTMENT** [2] - 14:23, 15:12
**INDICTMENT** [13] - 14:24, 14:25, 15:11, 35:21, 49:10, 51:21, 52:3, 52:7, 52:19, 52:20, 90:20, 96:13

**INDIVIDUAL** [5] - 29:12, 57:23, 73:7, 74:8, 74:9
**INDIVIDUAL'S** [2] - 23:5, 23:21
**INDUSTRY** [1] - 75:7
**INEXTRICABLY** [2] - 50:23, 51:6
**INFER** [1] - 57:19
**INFLUENCE** [8] - 21:17, 31:11, 32:12, 36:21, 43:11, 69:10, 98:13
**INFLUENCED** [2] - 21:25, 43:6
**INFLUENCING** [2] - 43:9, 98:2
**INFLUENTIAL** [1] - 42:24
**INFORMATION** [18] - 9:14, 49:18, 52:15, 60:12, 61:21, 62:1, 62:19, 74:24, 78:10, 78:13, 78:15, 78:25, 80:3, 90:25, 91:2, 97:5, 98:15
**INFORMED** [1] - 68:23
**INITIAL** [6] - 10:6, 17:9, 49:12, 61:5, 73:21, 85:15
**INJECT** [1] - 25:8
**INNOCENCE** [3] - 28:8, 62:2, 62:11
**INNOCENT** [2] - 43:15, 57:20
**INPUT** [1] - 43:19
**INQUIRE** [1] - 46:16
**INQUIRING** [2] - 58:23, 65:8
**INQUIRY** [5] - 60:6, 60:10, 88:16, 99:12, 99:21
**INSTALL** [1] - 78:18, 78:19
**INSTANCE** [3] - 49:13, 60:17, 95:3
**INSTITUTE** [1] - 36:15
**INSTITUTE** [1] - 96:3
**INSTITUTIONS** [1] - 9:3
**INSTRUCT** [6] - 16:11, 16:12, 17:5, 19:4, 20:23, 36:14
**INSTRUCTED** [3] - 10:18, 19:2, 19:8
**INSTRUCTION** [66] - 7:1, 7:9, 7:24, 8:4, 8:5, 8:9, 8:23, 11:24, 12:2, 14:7, 16:4, 16:23, 16:25, 19:12,

20:4, 21:8, 21:18, 22:2, 22:4, 22:14, 23:7, 23:16, 25:11, 27:7, 27:12, 27:19, 28:6, 28:13, 28:15, 28:21, 29:15, 30:3, 30:10, 30:22, 31:4, 31:14, 33:3, 34:12, 34:13, 34:22, 34:25, 35:19, 36:25, 38:13, 39:8, 39:22, 40:20, 40:22, 41:17, 43:4, 43:14, 43:21, 43:24, 44:7, 44:10, 44:25, 45:6, 45:7, 45:22, 45:23, 46:1, 46:5, 55:21, 70:8, 70:17, 72:6

**INSTRUCTION** [18] - 16:1, 16:3, 16:5, 16:7, 16:9, 16:22, 16:24, 17:1, 17:3, 19:10, 19:12, 19:20, 20:18, 27:14, 30:19, 35:16, 43:18, 44:23

**INSTRUCTIONS** [31] - 5:17, 6:15, 6:22, 6:25, 11:10, 11:18, 14:22, 15:1, 15:9, 15:15, 15:16, 15:20, 15:24, 19:25, 20:1, 26:21, 27:2, 27:6, 27:22, 27:23, 27:24, 28:5, 28:25, 29:7, 29:10, 29:25, 30:5, 30:9, 45:4, 47:17

**INSTRUCTIONS** [3] - 15:22, 27:10, 27:15

**INTEND** [5] - 8:1, 46:13, 73:17, 100:18, 101:4

**INTENDED** [4] - 18:5, 18:25, 31:11, 32:12

**INTENDS** [1] - 75:16

**INTENT** [1] - 32:19

**INTENTION** [1] - 54:7

**INTERACTION** [1] - 74:10

**INTERACTIONS** [1] - 81:8

**INTEREST** [2] - 50:14, 97:19

**INTERNAL** [3] - 30:13, 65:22, 72:3

**INTERNATIONAL** [1] - 18:16

**INTERPRET** [1] - 74:19

**INTERPRETATION** [2] - 35:18, 75:21

**INTERPRETED** [2] - 5:11, 45:9

**INTERPRETER** [14] - 4:3, 4:6, 4:9, 9:25, 11:16, 11:17, 12:11, 12:17, 39:18, 39:19, 87:24, 88:1, 89:7, 99:18

**INTERPRETER** [6] - 4:5, 4:8, 4:10, 4:14, 39:20, 39:23

**INTERPRETER** [1] - 4:16

**INTERPRETER'S** [3] - 3:25, 88:3, 88:9

**INTERPRETERS** [13] - 3:13, 3:23, 3:25, 6:1, 87:20, 88:4, 88:6, 88:7, 88:10, 88:12, 88:19, 99:9, 99:24

**INTERPRETERS'** [1] - 99:14

**INTERPRETING** [2] - 78:9, 87:23

**INTERRUPT** [3] - 29:24, 62:15, 96:22

**INTERTWINED** [2] - 50:24, 51:7

**INTERVIEWED** [2] - 64:22, 67:6

**INTRODUCE** [6] - 3:22, 48:24, 53:6, 65:11, 70:14, 98:20

**INTRODUCING** [1] - 51:2

**INTRODUCTION** [2] - 58:12, 59:5

**INVESTIGATED** [1] - 56:14

**INVESTIGATING** [2] - 64:8, 65:16

**INVESTIGATION** [9] - 58:18, 59:7, 59:14, 62:11, 62:20, 65:21, 65:23, 66:4, 66:9

**INVITING** [1] - 33:24

**INVOLVE** [2] - 26:2, 52:9

**INVOLVED** [3] - 35:21, 36:3, 56:5

**IRRELEVANT** [5] - 7:8, 52:14, 52:15, 54:4, 67:10

**ISSUE** [39] - 7:9, 11:4, 11:5, 16:1, 16:9, 16:14, 19:19, 21:8, 22:20, 22:22, 23:13, 24:12, 38:3, 40:12, 40:13, 41:18, 45:5, 49:22, 55:9, 59:2,

59:9, 59:21, 61:9, 61:10, 66:8, 70:22, 72:16, 73:1, 74:18, 77:17, 79:17, 82:16, 83:16, 84:8, 86:18, 94:18, 94:25, 98:22, 100:6

**ISSUED** [1] - 73:15

**ISSUES** [20] - 6:18, 6:21, 7:1, 7:5, 7:6, 8:2, 12:22, 15:18, 38:13, 43:20, 48:17, 57:5, 57:15, 59:15, 62:22, 71:1, 77:15, 87:11, 90:10

**ITEM** [1] - 3:4

**ITEM** [2] - 26:25, 92:9

**ITEMS** [5] - 18:17, 52:12, 53:10, 92:6, 92:7

## J

**JAIL** [1] - 64:9

**JAILHOUSE** [1] - 64:14

**JANUARY** [1] - 64:10

**JAVIER** [3] - 88:9, 89:2

**JFW** [1] - 3:5

**JOB** [5] - 32:17, 33:10, 37:12, 78:3, 81:17

**JOEL** [1] - 3:11

**JOINT** [3] - 15:22, 15:24, 87:4

**JOINT** [8] - 5:20, 6:16, 6:20, 6:24, 46:1, 84:16, 85:25, 86:24

**JOONG** [1] - 61:5

**JOONGI** [1] - 13:19

**JOONGI** [1] - 13:19

**JUDGE** [5] - 26:18, 28:2, 28:10, 30:4, 30:7

**JUDGES** [1] - 27:11

**JUDGMENT** [1] - 32:22, 42:19, 69:10

**JULY** [1] - 3:1

**JULY** [5] - 45:17, 70:15, 73:14, 82:17, 84:17

**JUNE** [3] - 15:23, 15:25, 48:18

**JURISDICTION** [1] - 32:8

**JUROR** [1] - 24:16

**JURORS** [3] - 26:1, 31:5, 31:10

**JURY** [8] - 15:22, 16:1, 16:3, 16:7,

16:21, 19:20, 30:19, 90:9

**JURY** [85] - 5:17, 6:14, 6:22, 6:24, 6:25, 7:9, 7:24, 9:6, 10:8, 10:16, 10:18, 11:10, 11:18, 11:24, 12:2, 14:7, 14:16, 14:22, 14:25, 15:9, 15:14, 15:16, 15:20, 15:24, 16:11, 17:5, 19:2, 19:4, 19:7, 20:2, 20:6, 20:23, 21:4, 22:1, 22:6, 23:18, 24:17, 25:11, 26:15, 26:18, 26:20, 27:6, 27:20, 27:21, 27:25, 29:7, 29:20, 29:21, 29:25, 30:5, 33:6, 38:11, 40:20, 44:3, 44:10, 44:14, 44:20, 45:4, 46:1, 47:17, 52:4, 53:4, 54:6, 55:15, 57:15, 57:19, 58:8, 69:1, 69:6, 70:23, 70:25, 71:13, 75:5, 75:12, 75:25, 83:23, 84:1, 87:22, 89:10, 89:13, 90:1, 90:5, 91:5, 98:23, 100:24

**JURY'S** [1] - 65:12

**JUSTICE** [1] - 13:20

**JUSTICE** [1] - 38:22

**JUSTIFY** [1] - 44:21

## K

**KAMINSKA** [1] - 3:9

**KAMINSKA** [34] - 49:6, 50:1, 50:6, 50:12, 50:19, 59:20, 59:24, 60:2, 60:6, 64:16, 64:18, 71:5, 71:16, 71:22, 75:18, 91:17, 92:8, 92:18, 92:20, 92:24, 93:17, 93:24, 94:16, 94:22, 95:1, 95:13, 95:23, 96:16, 96:21, 97:1, 97:3, 97:15, 98:4, 98:17

**KEEP** [6] - 5:5, 49:8, 50:8, 73:20, 90:15, 90:16

**KEEPING** [1] - 50:14

**KEVIN** [2] - 3:11, 54:13

**KEY** [2] - 23:22, 88:23

**KIGAM** [43] - 20:24,

21:2, 40:11, 42:10, 47:20, 61:4, 61:7, 63:16, 63:18, 64:11, 65:4, 66:6, 70:2, 70:5, 71:2, 72:14, 72:15, 73:6, 74:3, 74:4, 74:10, 74:16, 76:6, 76:7, 78:15, 79:23, 81:10, 81:16, 92:21, 92:25, 94:7, 94:20, 95:17, 95:20, 96:12, 96:15, 97:13, 97:24, 98:1, 98:2, 98:12, 98:15

**KIGAM'S** [2] - 66:23, 73:3

**KIM** [9] - 8:16, 13:19, 20:10, 66:22, 67:1, 67:8, 67:9, 67:22

**KIM** [10] - 13:19, 14:10, 27:8, 27:18, 27:23, 28:4, 28:9, 28:13, 38:14, 39:5

**KIND** [11] - 29:21, 62:9, 74:23, 74:24, 78:2, 78:3, 78:4, 78:5, 78:24, 79:1

**KINDS** [1] - 27:16

**KINGDOM'S** [1] - 58:13

**KNOCKED** [1] - 57:6

**KNOWLEDGE** [8] - 55:2, 55:22, 56:11, 74:11, 75:15, 79:22, 81:16

**KNOWN** [1] - 69:12

**KNOWS** [4] - 59:21, 60:4, 60:12, 61:1

**KOREA** [27] - 12:7, 12:16, 12:19, 14:13, 14:17, 16:8, 17:11, 26:15, 26:18, 27:17, 27:19, 29:16, 30:1, 32:15, 33:1, 38:1, 49:21, 51:25, 53:8, 53:10, 54:1, 54:4, 56:23, 66:23, 68:3, 93:5

**KOREA'S** [3] - 18:24, 35:24, 36:6

**KOREAN** [49] - 3:13, 3:24, 4:6, 5:21, 5:25, 6:1, 6:13, 6:15, 7:3, 13:2, 14:3, 14:13, 14:15, 17:6, 17:22, 21:13, 23:17, 25:13, 25:22, 26:9, 28:18, 32:4, 34:18, 36:5, 36:15, 38:17, 40:16, 45:9, 54:22, 55:15,

56:3, 56:14, 56:25, 57:17, 57:25, 58:3, 64:25, 66:23, 67:25, 68:19, 68:20, 70:7, 71:16, 81:3, 87:1, 87:2, 87:16, 87:18
**KOURY** [34] - 29:4, 29:8, 29:10, 39:9, 39:13, 40:6, 74:15, 74:22, 75:19, 76:3, 76:9, 77:4, 77:21, 77:25, 78:14, 78:17, 78:24, 79:6, 79:10, 79:17, 80:1, 80:9, 81:23, 82:11, 82:14, 89:16, 89:19, 89:24, 99:5, 99:7, 99:11, 99:15, 99:19, 100:3
**KOURY** [1] - 3:11
**KUMAR** [33] - 3:8, 4:20, 10:5, 11:1, 11:4, 11:6, 11:9, 12:8, 13:16, 14:19, 15:2, 15:7, 16:19, 26:16, 26:22, 29:17, 32:1, 37:1, 46:8, 46:16, 47:14, 48:4, 48:9, 80:13, 80:16, 81:7, 83:1, 83:5, 83:12, 83:14, 83:22, 86:10, 86:13
**KUMAR** [1] - 3:8

**L**

**L-E-E** [1] - 4:8
**LAHUE** [2] - 3:11, 54:13
**LAHUE** [6] - 54:11, 54:13, 54:18, 55:6, 55:12, 68:17
**LAND** [1] - 79:3
**LANGUAGE** [20] - 4:6, 20:5, 34:19, 35:7, 35:10, 35:12, 35:13, 38:24, 39:3, 43:8, 45:7, 74:19, 74:20, 74:21, 74:22, 74:25, 75:4, 75:22, 78:4
**LARGE** [2] - 32:22, 45:13
**LARGELY** [1] - 51:25
**LAST** [7] - 4:8, 17:15, 24:1, 44:22, 61:6, 66:22, 74:6
**LATE** [1] - 48:19
**LATTER** [2] - 32:2, 36:22
**LAUNDERING** [2] - 18:6, 55:23

**LAW** [1] - 15:24
**LAW** [63] - 6:13, 6:15, 6:23, 7:4, 7:8, 8:8, 9:4, 9:8, 13:2, 14:3, 14:13, 14:14, 14:15, 17:17, 17:18, 17:21, 19:5, 19:9, 20:22, 21:1, 21:22, 23:17, 24:1, 25:13, 25:22, 26:9, 27:13, 28:17, 31:1, 32:4, 32:5, 32:7, 32:14, 33:1, 34:5, 34:18, 34:20, 35:9, 35:23, 36:14, 36:18, 37:18, 38:1, 40:16, 43:13, 44:16, 45:9, 45:10, 46:3, 54:22, 55:16, 56:14, 64:25, 68:20, 70:7, 71:17, 72:2, 72:4, 72:20, 87:1, 87:16
**LAWS** [3] - 30:6, 42:11, 42:23
**LAWYERS** [1] - 27:11
**LAY** [4] - 27:24, 28:4, 68:13, 68:21
**LAZARENKO** [1] - 32:6
**LAZARENKO** [1] - 17:16
**LEAD** [1] - 54:16
**LEAST** [4] - 33:25, 46:11, 74:8, 97:23
**LECTERN** [4] - 3:17, 5:5, 12:11, 12:12
**LEE** [4] - 4:5, 4:8, 39:20, 39:23
**LEE** [1] - 4:5
**LEEWAY** [1] - 59:15
**LEFT** [1] - 4:3
**LEGAL** [1] - 34:8
**LEGITIMATE** [1] - 31:7
**LESS** [4] - 63:23, 65:12, 65:25, 72:10
**LETTER** [15] - 61:3, 61:4, 61:12, 61:15, 61:17, 61:19, 61:24, 62:20, 63:2, 64:3, 64:5, 64:10, 64:21, 65:7, 66:15
**LETTER'S** [1] - 61:11
**LIBRARY** [1] - 30:2
**LIGHT** [1] - 56:18
**LIKEWISE** [1] - 47:9
**LIMINE** [7] - 15:17, 48:18, 58:11, 59:9, 73:12, 73:13, 82:10
**LIMINE** [19] - 45:19, 48:20, 48:23, 53:24,

55:25, 58:9, 58:11, 61:3, 66:17, 67:17, 68:8, 68:9, 69:24, 69:25, 73:11, 73:13, 77:1, 80:8, 90:13
**LIMIT** [1] - 70:1
**LIMITED** [2] - 6:21, 17:18
**LIMITING** [4] - 55:21, 70:8, 70:16, 72:6
**LINDSAY** [1] - 82:24
**LINE** [3] - 34:5, 60:11, 74:24
**LINES** [1] - 60:14
**LINK** [1] - 95:25
**LINKAGE** [1] - 92:5
**LIST** [1] - 18:18
**LIST** [12] - 7:24, 48:8, 64:15, 82:17, 82:20, 84:9, 84:11, 91:23, 92:20, 92:25, 101:4, 101:8
**LISTEN** [2] - 11:2, 11:17
**LOCATION** [2] - 79:2, 100:25
**LOFTIS** [1] - 51:5
**LOFTIS** [1] - 51:5
**LOGIC** [1] - 56:13
**LOOK** [14] - 18:2, 30:13, 43:17, 68:25, 73:3, 75:23, 76:1, 80:7, 84:25, 85:2, 87:8, 87:10, 90:9, 101:5
**LOOKED** [1] - 6:11
**LOOKING** [3] - 22:13, 62:10, 86:17
**LOS** [1] - 3:2
**LOST** [2] - 20:19, 86:6
**LOWER** [1] - 14:23
**LYNCH** [5] - 49:13, 49:20, 51:23, 52:10, 83:8

**M**

**MACHINE** [2] - 76:1, 95:18
**MAIL** [4] - 69:16, 87:25, 96:7, 101:8
**MAILS** [16] - 56:18, 65:17, 74:23, 75:22, 91:20, 93:3, 93:7, 93:25, 94:7, 95:24, 96:1, 96:16, 98:4, 98:18, 98:19, 98:21
**MAINTAINED** [1] - 64:22
**MAKER** [5] - 21:24,

55:25, 58:9, 58:11, 61:3, 66:17, 67:17, 68:8, 68:9, 69:24, 69:25, 73:11, 73:13, 77:1, 80:8, 90:13
21:25, 25:20, 26:19, 43:7
**MAKERS** [1] - 36:21
**MANAGEMENT** [2] - 15:17, 72:15
**MANAGER** [1] - 93:4
**MANNER** [1] - 43:12
**MARILYN** [1] - 3:11
**MARKED** [1] - 91:22
**MARKETPLACE** [2] - 91:2, 95:17
**MASSAGE** [3] - 48:25, 49:22, 51:18
**MASSAGES** [3] - 49:17, 50:10, 51:25
**MATERIALS** [2] - 13:25, 87:1
**MATTER** [10] - 10:13, 17:9, 21:1, 32:21, 36:14, 42:16, 43:5, 44:20, 45:5, 71:16
**MATTERS** [1] - 75:15
**MCCONNELL** [4] - 4:10, 4:14, 4:15
**MCCONNELL** [1] - 4:15
**MEAN** [15] - 24:9, 24:15, 25:10, 27:7, 27:8, 29:24, 41:11, 43:10, 55:7, 60:14, 67:4, 71:10, 76:7, 83:15, 96:22
**MEANING** [2] - 17:17, 18:3
**MEANS** [5] - 23:9, 24:23, 44:5, 65:8, 74:19
**MEANT** [1] - 35:13
**MEANTIME** [1] - 45:25
**MEET** [4] - 33:25, 45:25, 65:14, 85:21
**MEETING** [1] - 69:17
**MEETS** [4] - 31:19, 31:22, 53:18, 95:21
**MEMBERS** [1] - 42:9
**MEMORANDUM** [1] - 82:21
**MEMORANDUM** [1] - 15:24
**MEMORY** [3] - 63:3, 85:3, 86:18
**MERELY** [2] - 20:4, 44:14
**MERRILL** [5] - 49:13, 49:20, 51:23, 52:10, 83:8
**MET** [1] - 66:23
**METEOROLOGICAL** [1] - 93:6
**MICROPHONE** [6] -

3:15, 3:19, 4:13, 5:2, 5:3, 12:18
**MIDDLE** [1] - 66:21
**MIGHT** [4] - 25:19, 38:5, 75:23, 94:10
**MIND** [9] - 5:6, 56:24, 59:13, 63:11, 63:14, 63:15, 64:4, 71:19, 98:14
**MINERAL** [1] - 36:15
**MINIMAL** [1] - 58:6
**MINIMUM** [2] - 33:25, 86:22
**MINOR** [1] - 34:21
**MINUS** [2] - 39:5, 39:6
**MINUTE** [4] - 34:12, 41:25, 47:5, 73:15
**MINUTES** [2] - 83:10, 83:11
**MISLEAD** [3] - 20:2, 44:14, 58:8
**MISLEADING** [3] - 10:16, 41:9, 57:15
**MISREPRESENTATI ON** [1] - 63:22
**MISS** [1] - 9:7
**MISSING** [2] - 74:18, 83:20
**MLAR** [1] - 91:22
**MODEL** [9] - 26:20, 27:1, 27:6, 27:7, 27:19, 28:5, 28:25, 29:7, 29:12
**MODEL** [5] - 16:25, 17:3, 27:10, 27:14, 27:15
**MODIFICATION** [1] - 17:1
**MODIFICATIONS** [1] - 34:22
**MODIFYING** [1] - 85:16
**MOMENT** [1] - 21:19
**MONDAY** [9] - 46:22, 48:12, 77:3, 82:2, 82:3, 82:13, 85:18, 85:19, 85:24
**MONETARY** [1] - 35:22, 36:4, 52:8
**MONEY** [19] - 9:18, 23:2, 42:11, 42:13, 49:15, 49:17, 50:3, 52:8, 52:11, 54:20, 54:25, 55:23, 56:17, 69:9, 81:13, 81:14, 83:6, 90:20, 91:7
**MONIES** [7] - 49:12, 49:20, 74:7, 83:16, 83:17, 83:18, 83:19
**MONTH** [1] - 64:21

**MONTHS** [2] - 68:19, 91:12
**MOOT** [1] - 67:19
**MOREOVER** [6] - 45:1, 45:16, 52:23, 58:2, 65:19, 73:5
**MORNING** [13] - 3:8, 3:10, 4:10, 4:14, 5:17, 12:22, 13:5, 13:17, 14:7, 41:16, 54:11, 100:10, 101:12
**MOST** [6] - 3:20, 5:21, 6:22, 28:14, 38:4, 75:1
**MOTION** [28] - 16:14, 48:24, 49:1, 49:2, 49:4, 50:22, 53:25, 55:5, 58:11, 59:9, 60:19, 61:2, 61:10, 62:25, 66:15, 66:17, 66:18, 66:20, 67:9, 68:15, 70:1, 70:3, 70:13, 73:12, 73:13, 73:15, 73:20, 82:10
**MOTION** [19] - 45:19, 48:20, 48:23, 53:24, 55:25, 58:9, 58:11, 61:3, 66:16, 67:17, 68:8, 68:9, 69:23, 69:25, 73:11, 73:12, 77:1, 80:7, 90:13
**MOTIONS** [5] - 15:16, 16:14, 48:18, 67:18, 89:15
**MOTIVATION** [2] - 50:3, 50:8
**MOTIVE** [2] - 51:1, 59:13
**MOVE** [1] - 15:16
**MOVING** [1] - 51:22
**MR** [112] - 4:19, 4:23, 5:7, 5:9, 6:2, 6:6, 7:10, 7:16, 7:23, 8:11, 8:20, 10:1, 11:19, 12:9, 12:16, 12:19, 13:9, 13:19, 14:10, 14:20, 16:20, 19:14, 23:24, 24:9, 24:18, 24:24, 25:10, 26:6, 26:8, 27:8, 27:18, 27:23, 28:4, 28:9, 28:13, 29:3, 29:4, 29:8, 29:10, 29:19, 30:4, 30:12, 30:15, 30:21, 31:15, 31:18, 33:16, 33:19, 38:3, 38:14, 39:5, 39:9, 39:13, 40:2, 40:4, 40:5, 40:6,

40:7, 40:10, 40:24, 42:7, 42:9, 42:21, 43:2, 46:13, 46:23, 47:8, 48:7, 48:13, 54:11, 54:13, 54:18, 55:6, 55:12, 61:18, 62:4, 62:8, 62:14, 62:21, 67:2, 67:4, 67:11, 67:14, 68:17, 74:15, 74:22, 75:19, 76:3, 76:9, 77:4, 77:21, 77:25, 78:14, 78:17, 78:24, 79:6, 79:10, 79:17, 80:1, 80:9, 81:23, 82:11, 82:14, 89:16, 89:19, 89:24, 99:5, 99:7, 99:11, 99:15, 99:19, 100:3
**MS** [83] - 3:8, 3:10, 3:24, 4:20, 10:5, 11:1, 11:4, 11:6, 11:9, 12:8, 13:16, 14:19, 15:2, 15:7, 16:19, 26:16, 26:22, 29:17, 32:1, 37:1, 41:2, 41:8, 41:13, 41:17, 41:23, 46:8, 46:16, 47:14, 48:4, 48:9, 49:6, 50:1, 50:6, 50:12, 50:19, 59:20, 59:24, 60:2, 60:6, 64:16, 64:18, 71:5, 71:16, 71:22, 75:18, 80:13, 80:16, 81:7, 83:1, 83:5, 83:12, 83:14, 83:22, 85:9, 85:12, 86:10, 86:13, 87:15, 87:19, 87:25, 88:3, 88:14, 88:22, 89:1, 91:17, 92:8, 92:18, 92:20, 92:24, 93:17, 93:24, 94:16, 94:22, 95:1, 95:13, 95:23, 96:16, 96:21, 97:1, 97:3, 97:15, 98:4, 98:17
**MUNITIONS** [1] - 18:18
**MUST** [14] - 16:11, 17:5, 17:10, 20:6, 20:10, 20:11, 20:14, 20:15, 36:6, 45:12, 51:13, 52:3, 63:24, 100:5
**MYRA** [1] - 8:14
**MYRA'S** [1] - 8:18
**MYUNG** [3] - 8:21, 12:16, 12:19
**MYUNG** [1] - 8:21

**N**

**NAME** [16] - 4:4, 4:7, 4:8, 8:16, 12:13, 12:16, 12:19, 13:18, 17:15, 54:13, 61:5, 61:6, 66:21, 66:22
**NAMED** [1] - 8:15
**NAMELY** [1] - 35:23
**NAMES** [2] - 8:15, 8:17
**NARROW** [1] - 7:12
**NATALIE** [2] - 58:15, 90:14
**NATE** [1] - 90:14
**NATURE** [2] - 50:7, 69:21
**NECESSARILY** [1] - 43:10
**NECESSARY** [10] - 7:21, 9:9, 19:4, 20:3, 43:25, 51:10, 52:24, 69:6, 69:19, 84:21
**NECESSITY** [1] - 9:14
**NEED** [25] - 5:14, 5:24, 7:22, 9:15, 15:8, 15:10, 21:23, 21:24, 24:21, 37:23, 44:3, 46:17, 47:14, 47:25, 49:3, 53:1, 53:10, 62:20, 72:22, 77:23, 78:22, 87:19, 88:12, 100:24, 101:3
**NEEDED** [3] - 10:13, 24:19, 66:17
**NEEDLESSLY** [1] - 57:16
**NEEDS** [4] - 10:18, 24:13, 24:14, 25:25
**NETWORK** [1] - 93:5
**NEVER** [6] - 56:14, 56:25, 60:10, 78:25, 100:6
**NEVERTHELESS** [2] - 51:20, 72:3
**NEW** [1] - 49:13
**NEW** [2] - 54:17, 85:18
**NEWS** [1] - 96:4
**NEXT** [6] - 19:19, 47:7, 48:17, 82:4, 82:6, 83:11
**NICE** [1] - 86:15
**NINTH** [7] - 16:25, 17:14, 27:9, 51:4, 52:16, 63:20, 63:24
**NON** [1] - 59:11
**NON-HEARSAY** [1] - 59:11
**NONE** [1] - 57:24
**NOS** [1] - 21:1

**NOTED** [3] - 52:16, 65:9, 73:5
**NOTES** [2] - 65:19, 86:7
**NOTHING** [5] - 6:24, 16:19, 16:20, 42:6, 75:20
**NOTICE** [2] - 54:14, 64:13
**NOTICE** [2] - 20:7, 87:5
**NOTICED** [1] - 14:22
**NOTIFIED** [1] - 56:10
**NOTWITHSTANDING** [1] - 93:21
**NUANCED** [1] - 21:9
**NUMBER** [12] - 7:24, 38:7, 51:24, 62:4, 66:16, 91:19, 92:9, 93:2, 93:7, 93:25, 94:17, 95:13

**O**

**OATH** [4] - 4:4, 4:6, 4:16, 42:1
**OBJECT** [1] - 14:15
**OBJECTION** [2] - 60:24, 86:11
**OBJECTIONS** [1] - 43:3
**OBJECTIVE** [1] - 50:12
**OBTAINED** [6] - 51:14, 52:14, 52:17, 53:2, 53:7, 53:23
**OBVIOUSLY** [4] - 76:25, 86:20, 98:19, 99:23
**OCCASION** [2] - 8:19, 90:22
**OCCURRED** [1] - 52:25
**OCCURRING** [1] - 56:11
**OCEAN** [1] - 79:2
**OFF-THE-RECORD** [1] - 89:22
**OFFENSE** [6] - 33:7, 34:11, 35:14, 52:18, 52:21, 54:3
**OFFENSES** [2] - 18:10, 29:21
**OFFER** [33] - 8:12, 45:16, 46:20, 47:3, 47:11, 47:15, 47:19, 47:24, 48:5, 48:15, 51:11, 52:24, 61:14, 63:8, 66:25, 70:13, 70:14, 73:5, 73:16,

73:22, 74:14, 75:20, 76:22, 76:23, 77:2, 77:9, 80:5, 81:22, 82:1, 82:12, 85:5, 98:11
**OFFER** [1] - 87:5
**OFFERED** [3] - 66:11, 70:2, 77:8
**OFFERING** [1] - 78:2
**OFFICE** [4] - 58:13, 58:17, 59:6, 59:19
**OFFICE** [5] - 3:25, 66:23, 87:23, 88:4, 88:10
**OFFICIAL** [82] - 3:12, 9:2, 17:12, 17:20, 17:23, 17:25, 18:3, 18:21, 19:1, 20:12, 20:14, 20:24, 21:2, 21:7, 21:16, 21:23, 21:25, 22:15, 22:17, 22:22, 23:5, 23:7, 23:9, 23:11, 23:14, 23:15, 23:18, 24:10, 24:13, 24:22, 25:1, 25:5, 25:8, 25:20, 26:2, 26:5, 30:25, 32:7, 32:18, 33:9, 34:17, 35:1, 35:4, 35:5, 35:7, 35:23, 35:25, 36:5, 36:8, 36:11, 36:13, 36:16, 36:17, 36:18, 36:19, 37:4, 37:13, 37:14, 38:1, 38:4, 38:11, 42:15, 44:11, 44:16, 44:17, 44:24, 65:18, 72:20, 72:22, 72:24, 72:25, 73:9, 80:20, 80:22, 81:2, 81:3, 81:9, 81:14, 81:18, 91:9, 92:14
**OFFICIAL'S** [8] - 10:12, 10:14, 20:15, 20:16, 21:11, 21:17, 35:11, 42:21
**OFFICIALLY** [1] - 93:13
**OFFICIALS** [2] - 42:13, 64:11
**ONCE** [4] - 19:15, 28:1, 32:6, 85:5
**ONE** [36] - 4:24, 5:12, 7:1, 7:7, 7:13, 10:24, 19:14, 20:11, 22:15, 23:11, 29:22, 30:10, 30:11, 30:21, 43:5, 47:9, 50:24, 51:21, 53:18, 62:4, 64:14, 64:18, 71:25, 72:5,

76:6, 76:13, 78:3,
82:6, 85:3, 86:22,
90:22, 95:3, 95:5,
99:5, 100:20
**ONE'S** [1] - 42:17
**ONE-TO-ONE** [1] -
95:5
**ONE-YEAR** [1] - 29:22
**ONGOING** [1] - 58:18
**OPENING** [1] - 68:11
**OPERATIVE** [2] -
15:6, 32:9
**OPINION** [1] - 20:7
**OPINION** [6] - 14:1,
28:1, 65:20, 69:15,
77:24, 81:2
**OPPORTUNITY** [5] -
11:20, 39:10, 68:4,
76:20, 85:2
**OPPOSED** [4] - 31:11,
75:6, 97:6, 99:25
**ORDER** [21] - 9:6,
36:3, 45:25, 47:7,
47:9, 47:15, 48:22,
60:15, 69:10, 70:12,
73:15, 82:19, 84:10,
85:10, 85:21, 92:2,
92:14, 96:2, 96:21,
97:6
**ORDER** [1] - 87:5
**ORDERED** [2] - 70:13,
85:15
**ORGANIZATIONS** [1]
- 76:11
**ORIGINAL** [3] -
100:13, 100:14,
100:23
**ORIGINALS** [1] -
100:24
**OTHERWISE** [4] -
16:17, 19:16, 32:12,
96:12
**OUTSIDE** [7] - 4:20,
4:21, 4:22, 5:16,
73:6, 78:6, 88:8
**OUTWEIGHED** [2] -
57:14, 58:7
**OUTWEIGHS** [1] -
53:16
**OVERALL** [2] - 37:1,
40:2
**OVERLAPPED** [1] -
24:3
**OVERREACH** [1] -
55:18
**OWN** [4] - 24:4, 69:16,
88:1, 94:6
**OXY** [3] - 23:25, 24:3,
42:19

**P**

**P-I-Z-A-N-O** [1] - 56:8
**PAGE** [3] - 22:14,
43:5, 86:23
**PAGES** [2] - 52:6,
85:13
**PAID** [12] - 23:2, 24:3,
32:17, 32:19, 33:9,
78:12, 78:15, 78:17,
79:15, 81:13, 83:17,
90:20
**PAPERS** [10] - 16:16,
30:20, 54:10, 55:8,
55:11, 68:18, 71:3,
71:6, 89:25
**PARAGRAPH** [3] -
18:16, 44:23, 45:2
**PARAGRAPHS** [1] -
51:22
**PARK** [1] - 8:16
**PART** [18] - 8:23,
11:22, 23:15, 31:15,
31:20, 33:10, 44:10,
51:8, 51:19, 52:19,
52:20, 58:17, 58:20,
79:18, 91:19, 92:5,
95:14
**PARTICIPATE** [3] -
67:13, 68:4, 96:5
**PARTICIPATING** [3] -
29:20, 56:19, 91:23
**PARTICULAR** [13] -
9:2, 9:15, 11:4, 15:3,
27:12, 43:5, 44:5,
51:14, 93:8, 98:6,
98:14, 100:18, 101:5
**PARTICULARLY** [2] -
10:19, 63:1
**PARTIES** [13] - 6:19,
6:22, 10:8, 10:16,
14:13, 14:14, 29:11,
34:20, 45:10, 45:25,
68:19, 84:15, 87:1
**PARTIES'** [1] - 20:25
**PARTY** [4] - 9:14,
10:13, 65:10, 79:16
**PASS** [1] - 90:24
**PAST** [1] - 37:11
**PATTERN** [1] - 26:20
**PAUSE** [1] - 39:16
**PAY** [2] - 32:19, 73:7
**PAYMENT** [23] -
17:20, 17:24, 22:16,
22:24, 22:25, 23:2,
23:8, 23:11, 23:19,
24:22, 25:3, 25:4,
31:6, 31:7, 34:16,
34:25, 35:3, 35:4,
36:11, 44:16, 72:23,
91:11, 93:21
**PAYMENTS** [4] -
64:12, 68:14, 69:22,
73:9
**PEARCE** [18] - 58:15,
58:16, 58:20, 59:2,
59:15, 59:21, 59:25,
60:3, 61:1, 68:13,
69:16, 69:20, 84:6,
90:14, 90:15, 90:22,
91:1
**PENDING** [1] - 42:5
**PEOPLE** [9] - 9:1, 9:5,
67:5, 74:3, 74:16,
74:19, 76:8, 76:10,
98:5
**PER** [2] - 82:18, 86:23
**PERCENTAGE** [5] -
49:20, 53:9, 92:17,
97:8, 98:10
**PERCIPIENT** [2] -
79:22, 81:15
**PERFECTLY** [1] -
70:23
**PERHAPS** [3] - 50:14,
68:13, 71:22
**PERIOD** [3] - 7:18,
21:6, 54:22
**PERMISSIBLE** [4] -
9:5, 9:13, 65:3, 65:4
**PERMISSION** [1] -
82:1
**PERMIT** [5] - 51:10,
52:24, 65:10, 67:21,
73:6
**PERMITS** [1] - 63:16
**PERMITTED** [3] -
11:15, 64:12, 65:18
**PERMITTING** [1] -
59:1
**PERSON** [13] - 9:16,
24:25, 25:15, 31:2,
34:2, 43:11, 69:11,
69:17, 76:13, 77:20,
77:22, 79:6, 82:25
**PERSON'S** [2] - 24:13,
25:13
**PERSONAL** [5] -
50:12, 51:24, 52:12,
74:11, 75:15
**PERSONALLY** [1] -
89:5
**PERSONS** [4] - 27:24,
28:4, 42:10, 42:16
**PERSUADED** [1] -
66:10
**PERSUASIVE** [2] -
56:22, 73:4
**PHENOMENON** [1] -
26:17
**PHRASE** [2] - 22:10,
37:7
**PICK** [3] - 5:4, 86:21,
101:6
**PICKED** [3] - 8:7,
10:7, 44:13
**PIECE** [3] - 90:23,
95:12
**PITCHES** [1] - 92:2
**PIZANO** [1] - 56:8
**PLACE** [4] - 25:9,
76:2, 76:19, 100:15
**PLACES** [1] - 14:12
**PLAY** [1] - 50:11
**PLAYS** [1] - 59:10
**PLEADING** [2] - 15:6,
86:22
**PLEADINGS** [4] -
12:25, 14:12, 86:22,
87:2
**PLEASED** [1] - 12:2
**PLENTY** [1] - 48:16
**POINT** [7] - 9:7, 13:12,
32:14, 50:6, 75:9,
76:16, 83:25
**POINTED** [2] - 56:25,
67:24
**POINTING** [2] - 62:2,
62:10
**POINTS** [3] - 6:4, 6:5,
57:21
**POLICEMAN** [1] -
37:16
**POLICIES** [4] - 70:17,
72:14, 73:3, 73:6
**POLICY** [1] - 71:23
**PONTICELLI** [1] -
63:19
**PONTICELLI** [1] -
63:20
**POONAM** [1] - 3:8
**POOR** [1] - 99:13
**POSITION** [12] - 37:4,
37:23, 38:14, 56:6,
60:12, 65:2, 66:6,
68:25, 69:11, 71:22,
79:9, 89:25
**POSSIBILITY** [1] -
32:22
**POSSIBLE** [5] - 33:4,
44:4, 44:5, 77:19,
99:22
**POSSIBLY** [3] - 69:20,
79:21, 83:3
**POTENTIAL** [2] - 79:5,
79:6
**POTENTIALLY** [2] -
54:23, 59:4
**POTTS** [21] - 56:20,
59:12, 61:4, 61:7,
62:4, 64:7, 64:20,
64:22, 65:1, 65:5,
65:7, 65:15, 65:20,
65:25, 66:15, 68:13,
69:17, 69:20, 81:24,
84:7, 90:14
**POTTS'S** [2] - 64:20,
82:2
**POWERS** [2] - 89:6
**PRACTICALLY** [3] -
36:19, 38:24, 38:25
**PRACTICE** [1] - 45:12
**PRACTICES** [3] -
70:18, 72:14, 73:3
**PRECISELY** [1] -
41:15
**PRECLUDE** [5] - 51:2,
53:25, 58:12, 61:3,
68:10
**PRECLUDED** [2] -
54:4, 78:1
**PRECLUDES** [1] -
70:6
**PREFER** [1] - 39:17
**PREFERS** [1] - 10:23
**PREJUDICE** [4] -
34:3, 53:15, 55:14,
57:14
**PREJUDICIAL** [1] -
68:23
**PRELIMINARILY** [1] -
84:19
**PREPARE** [4] - 46:1,
86:5, 90:8, 100:17
**PREPARED** [6] - 5:16,
14:8, 16:17, 46:13,
69:1, 73:19
**PREREQUISITE** [1] -
97:17
**PRESENCE** [1] -
44:20
**PRESENT** [4] - 3:12,
14:5, 80:2, 99:24
**PRESENTED** [1] -
64:5
**PRESENTING** [1] -
57:16
**PRESENTS** [1] - 56:7
**PRESERVED** [1] -
100:24
**PRESIDENT** [1] - 61:6
**PRESIDING** [2] - 30:4,
30:7
**PRESUMABLY** [2] -
61:16, 95:8
**PRESUME** [1] - 80:13
**PRESUMED** [1] -
17:17
**PRETRIAL** [4] - 82:20,
84:16, 85:25, 86:8

**UNITED STATES DISTRICT COURT**

**PRETTY** [1] - 80:5
**PREVENT** [1] - 58:22
**PREVIOUSLY** [2] - 32:5, 81:7
**PRICE** [3] - 94:10, 95:21, 98:6
**PRICING** [1] - 98:14
**PRIMARILY** [1] - 77:8
**PRIMARY** [3] - 6:14, 75:1, 79:19
**PRINCIPAL** [2] - 19:7, 91:19
**PRINCIPLE** [1] - 32:16
**PRIORITIES** [1] - 57:24
**PRISON** [1] - 66:12
**PRIVATE** [13] - 25:13, 42:10, 42:16, 64:12, 94:1, 94:5, 94:9, 94:13, 94:14, 94:24, 95:4, 95:9, 95:11
**PRO** [14] - 17:25, 20:18, 23:1, 23:12, 23:19, 25:7, 34:24, 35:14, 36:12, 42:23, 72:24, 90:18, 91:6
**PROBABLE** [2] - 65:12, 72:10
**PROBATIVE** [10] - 49:7, 50:14, 53:16, 55:1, 57:13, 58:6, 71:24, 72:16, 77:14, 98:21
**PROBING** [1] - 64:20
**PROBLEM** [9] - 5:2, 32:23, 33:23, 34:6, 47:3, 47:12, 57:7, 79:1, 90:25
**PROBLEMS** [2] - 13:12, 78:19
**PROCEED** [3] - 28:19, 42:8, 90:2
**PROCEEDING** [1] - 94:1
**PROCEEDINGS** [8] - 5:11, 8:14, 13:3, 13:4, 13:23, 14:6, 39:16, 101:13
**PROCEEDS** [8] - 18:6, 48:25, 52:14, 52:24, 53:23, 56:11, 57:4, 70:10
**PROCESS** [14] - 28:12, 78:10, 93:20, 94:1, 94:16, 95:2, 95:4, 95:5, 95:7, 95:9, 95:11, 96:1, 96:6, 96:12
**PROCLAIMING** [1] - 93:3

**PROCUREMENT** [1] - 95:14
**PRODUCE** [1] - 85:22
**PRODUCT** [6] - 92:15, 96:18, 96:19, 96:25, 97:5
**PRODUCTS** [10] - 80:23, 92:3, 92:4, 93:10, 93:14, 93:16, 93:20, 97:22, 98:6, 98:15
**PROFESSOR** [3] - 8:12, 8:13, 11:16
**PROFESSORS** [1] - 9:2
**PROFFER** [1] - 47:22
**PROHIBITED** [1] - 66:7
**PROHIBITS** [3] - 17:23, 35:25, 72:20
**PROJECT** [4] - 92:13, 93:4
**PROJECTS** [6] - 91:23, 92:1, 92:20, 92:25, 93:8, 94:3
**PROMISED** [4] - 35:3, 36:10, 69:10, 72:23
**PROMISES** [1] - 23:2
**PROMISING** [2] - 17:24, 36:1
**PROMOTE** [1] - 92:15
**PROOF** [1] - 87:5
**PROOF** [27] - 8:12, 45:17, 46:20, 47:3, 47:11, 47:15, 47:19, 47:24, 48:5, 48:15, 52:18, 61:14, 66:25, 70:13, 70:14, 73:5, 73:16, 73:22, 74:14, 75:21, 76:23, 77:2, 80:5, 81:22, 82:2, 82:12
**PROOFREADING** [1] - 86:19
**PROP** [1] - 62:23
**PROPERLY** [1] - 96:18
**PROPERTY** [5] - 23:3, 35:21, 36:3, 52:9, 56:5
**PROPOSED** [29] - 8:3, 8:4, 9:18, 11:10, 11:20, 16:5, 16:6, 16:23, 16:24, 16:25, 19:12, 19:25, 20:4, 20:17, 22:1, 22:9, 22:10, 22:13, 31:13, 34:14, 34:24, 44:10, 44:23, 46:1, 46:20, 46:21, 47:21, 86:3

**PROPOSED** [1] - 15:22
**PROPOSES** [2] - 17:2, 45:6
**PROPOSITION** [1] - 45:14
**PROPOSITIONS** [2] - 7:8, 21:1
**PROSECUTE** [1] - 55:19
**PROSECUTED** [2] - 55:16, 55:20
**PROSECUTOR** [3] - 6:9, 8:24, 51:11
**PROSECUTORIAL** [1] - 57:24
**PROTOCOL** [1] - 88:8
**PROVE** [6] - 20:11, 36:6, 52:2, 56:11, 70:24, 72:22
**PROVED** [1] - 71:14
**PROVIDE** [17] - 25:21, 28:21, 33:14, 35:15, 47:11, 63:17, 66:13, 74:13, 78:6, 78:18, 78:25, 84:10, 87:23, 88:1, 88:10, 98:20, 101:4
**PROVIDED** [12] - 9:17, 9:18, 22:6, 24:13, 29:15, 34:20, 45:10, 64:9, 69:22, 84:9, 85:13, 88:20
**PROVIDES** [1] - 88:5
**PROVIDING** [1] - 40:15
**PUBLIC** [50] - 9:2, 17:12, 17:23, 18:3, 18:20, 19:1, 20:11, 20:12, 20:13, 20:14, 20:16, 20:24, 21:2, 21:7, 21:10, 22:15, 23:11, 25:1, 29:20, 30:25, 32:7, 32:18, 33:9, 35:10, 35:23, 35:25, 36:4, 36:8, 36:16, 36:17, 36:19, 37:13, 42:13, 42:21, 44:16, 64:11, 72:20, 72:22, 94:16, 94:24, 95:3, 95:7, 95:9, 95:10, 95:11, 95:14, 95:16, 95:19, 96:1, 97:10
**PUBLICLY** [2] - 9:3, 30:14
**PUBLISHED** [1] - 30:8
**PULL** [2] - 4:12, 30:2
**PUNISH** [1] - 42:12
**PUNISHED** [1] - 29:22

**PURCHASE** [4] - 53:11, 93:23, 97:8, 97:17
**PURCHASES** [1] - 98:15
**PURCHASING** [3] - 95:16, 98:5, 98:8
**PURPOSE** [5] - 5:15, 10:24, 18:13, 32:24, 56:4, 61:19, 61:23, 70:11, 81:5, 86:7
**PURPOSES** [10] - 15:13, 15:21, 20:25, 21:3, 26:12, 36:9, 36:16, 59:12, 66:3, 70:18
**PURSUANT** [2] - 17:22, 25:21
**PURSUE** [1] - 60:15
**PUT** [7] - 10:21, 49:16, 53:10, 89:25, 91:16, 96:2, 100:15

### Q

**QUALIFICATIONS** [1] - 6:11
**QUALIFY** [4] - 18:10, 74:13, 96:2, 96:13
**QUASI** [1] - 20:12
**QUESTIONNAIRE** [1] - 86:5
**QUESTIONS** [10] - 5:18, 13:3, 13:5, 14:6, 33:12, 62:17, 81:10, 84:24, 86:4
**QUICK** [1] - 39:14
**QUID** [14] - 17:25, 20:18, 23:1, 23:12, 23:19, 25:7, 34:24, 35:14, 36:12, 42:23, 72:24, 90:18, 91:6
**QUITE** [4] - 6:12, 22:18, 32:14, 33:4
**QUO** [14] - 17:25, 20:18, 23:1, 23:12, 23:19, 25:7, 34:24, 35:14, 36:12, 42:23, 72:24, 90:18, 91:6
**QUOTE** [2] - 37:8, 37:12
**QUOTE/UNQUOTE** [1] - 27:20
**QUOTING** [1] - 44:2

### R

**R-O-H** [1] - 8:22
**RAILWAY** [1] - 93:5
**RAISE** [2] - 13:13,

42:3
**RAISED** [5] - 6:19, 16:14, 43:20, 44:9, 45:5
**RAISES** [1] - 84:8, 86:18
**RANGE** [2] - 37:12, 38:23
**RANK** [1] - 37:13
**RATE** [1] - 99:20
**RATHER** [4] - 15:11, 35:11, 53:3, 79:2
**RAYNOR** [46] - 4:19, 4:23, 5:7, 5:9, 6:2, 6:6, 7:10, 7:16, 7:23, 8:11, 8:20, 10:1, 11:19, 12:9, 14:20, 16:20, 19:14, 23:24, 24:9, 24:18, 24:24, 25:10, 26:6, 26:8, 30:21, 31:15, 31:18, 33:16, 33:19, 38:3, 40:4, 43:2, 46:13, 46:23, 47:8, 48:7, 48:13, 61:18, 62:4, 62:8, 62:14, 62:21, 67:2, 67:4, 67:11, 67:14
**RAYNOR** [1] - 3:11
**RE** [1] - 20:7
**REACH** [1] - 40:19
**REACTED** [1] - 61:22
**READ** [10] - 5:22, 13:25, 35:19, 38:7, 39:11, 39:14, 55:8, 55:9, 69:1, 98:18
**READING** [4] - 11:23, 35:17, 39:19, 39:21
**READY** [1] - 85:7
**REAL** [1] - 91:4
**REALITY** [3] - 37:9, 39:2
**REALIZE** [1] - 12:20
**REALLY** [12] - 22:22, 23:1, 23:10, 23:12, 23:16, 25:22, 34:17, 43:8, 82:8, 83:16, 84:20, 100:12
**REASON** [9] - 4:22, 11:14, 14:24, 15:3, 15:5, 46:25, 55:14, 77:5, 99:22
**REASONABLE** [2] - 36:7, 91:7
**REASONED** [1] - 40:19
**REASONS** [3] - 19:11, 58:13, 58:23
**REBUT** [2] - 77:23, 78:23

REBUTTAL [3] - 48:3, 76:19, 77:8
RECEIPT [3] - 64:24, 70:5, 72:15
RECEIVE [6] - 27:24, 28:4, 62:18, 64:12, 65:18, 93:22
RECEIVED [21] - 9:18, 22:16, 23:8, 23:12, 24:22, 25:4, 34:16, 35:3, 36:10, 42:11, 42:13, 44:16, 54:20, 62:5, 64:21, 68:14, 72:23, 73:10, 73:17, 86:3, 94:4
RECEIVING [6] - 17:19, 17:24, 36:1, 72:20, 74:7, 91:7
RECENT [2] - 26:17, 42:22
RECENTLY [2] - 5:21, 42:19
RECIPIENT [1] - 20:11
RECITES [1] - 20:4
RECOGNIZE [2] - 22:7, 40:18
RECOMMENDATIONS [2] - 78:2, 93:10
RECONSIDERATION [1] - 19:16
RECORD [9] - 3:7, 3:20, 37:3, 41:21, 43:17, 63:4, 80:17, 89:22, 92:25
RECORDS [1] - 85:14
REFER [2] - 14:13, 15:10
REFERENCE [2] - 14:16, 24:10
REFERENCES [1] - 53:25
REFERRED [3] - 21:20, 34:15, 75:7
REFERRING [3] - 15:21, 22:19, 95:2
REFLECTION [1] - 64:2
REFLECTIVE [1] - 64:4
REFRESHED [1] - 86:18
REGARD [1] - 53:5
REGARDING [1] - 87:5
REGARDING [8] - 15:24, 19:12, 47:20, 51:12, 52:13, 58:12, 80:19, 93:3
REGULARLY [2] - 27:2, 79:12

REGULATIONS [2] - 18:19, 71:1
REGURGITATE [1] - 55:11
REJECTS [1] - 17:4
RELATE [2] - 16:2, 94:18
RELATED [16] - 21:11, 22:10, 22:17, 22:21, 23:7, 23:8, 23:20, 24:22, 25:4, 34:16, 35:5, 35:6, 36:18, 44:11, 50:23, 92:13
RELATEDNESS [1] - 42:17
RELATES [8] - 16:1, 19:20, 23:14, 50:22, 53:25, 75:21, 89:10, 98:14
RELATING [1] - 9:2
RELATION [5] - 20:14, 22:21, 35:11, 42:12, 74:18
RELATIONS [1] - 81:17
RELATIONSHIP [6] - 20:14, 24:12, 49:8, 60:16, 69:21, 95:6
RELATIVELY [1] - 7:18
RELEVANCE [5] - 49:23, 49:25, 64:2, 74:5, 76:24
RELEVANT [21] - 18:9, 19:8, 21:6, 56:3, 56:15, 56:24, 57:11, 57:13, 59:11, 66:5, 69:5, 69:19, 70:18, 71:18, 71:19, 71:20, 71:23, 72:9, 72:19, 73:8, 75:25
RELIABLE [1] - 63:23
RELIED [2] - 19:7, 45:14
RELIES [1] - 56:6
RELY [1] - 71:13
REMAINS [1] - 89:25
REMEMBER [1] - 15:9
REMIND [1] - 82:9
REPAIRED [1] - 3:16
REPEAT [1] - 40:14
REPEATEDLY [1] - 80:25
REPLACED [1] - 3:16
REPORT [2] - 12:23, 24:3
REPORTER [3] - 3:19, 8:17, 17:16
REPORTS [2] - 6:16, 20:22

REPRESENTATION [1] - 81:4
REPRESENTATIVE [5] - 93:12, 93:13, 94:20, 98:9, 98:11
REPRESENTATIVES [1] - 96:17
REPUBLIC [2] - 14:13, 14:17
REQUEST [10] - 7:24, 11:20, 28:1, 32:2, 47:6, 47:9, 53:22, 90:1, 95:18, 99:5
REQUESTED [2] - 43:4, 86:25
REQUESTING [1] - 8:23
REQUIRE [8] - 31:1, 46:19, 59:5, 76:9, 82:13, 86:1, 100:16, 101:1
REQUIRED [1] - 21:5
REQUIREMENT [3] - 6:20, 31:2, 34:1
REQUIREMENTS [2] - 18:7, 31:19
REQUIRES [3] - 23:17, 101:7
REQUIRING [1] - 73:16
RESEARCH [2] - 21:12, 24:3
RESEARCHER [11] - 20:23, 21:2, 21:6, 25:12, 25:13, 31:12, 36:15, 40:10, 41:15, 41:19, 75:6
RESEARCHERS [1] - 9:3
RESERVATIONS [1] - 73:25
RESERVE [4] - 47:23, 75:10, 76:14, 80:7
RESOURCES [1] - 57:24
RESOURCES [1] - 36:16
RESPECT [20] - 6:21, 8:2, 10:3, 15:18, 16:9, 16:12, 18:20, 19:19, 22:12, 30:18, 34:10, 35:6, 38:13, 43:21, 45:6, 61:9, 79:9, 84:14, 90:10, 91:24
RESPECTIVE [3] - 4:18, 46:4, 59:13
RESPOND [2] - 47:24, 85:18
RESPONSE [6] - 29:9,

45:18, 60:7, 73:15, 73:18, 82:19
RESPONSIBILITIES [4] - 74:4, 74:17, 79:19, 79:23
RESPONSIBILITY [1] - 21:18
RESPONSIBLE [5] - 36:18, 36:20, 38:24, 38:25, 99:8
REST [1] - 7:5
RESTAURANTS [1] - 51:25
RESULT [5] - 6:19, 32:18, 91:1, 97:7, 97:9
RETAINED [3] - 40:18, 88:18, 88:22
RETURN [1] - 91:22
RETURNED [1] - 49:20
REVIEW [10] - 6:15, 20:21, 21:13, 34:19, 35:9, 44:15, 45:20, 84:22, 85:17, 86:14
REVIEWED [3] - 12:23, 45:16, 95:20
REVIEWING [1] - 83:5
REVISE [2] - 15:8, 15:10
RICHARD [1] - 3:11
RICHARDSON [1] - 44:1
RIGHTS [1] - 68:2
RISE [1] - 4:3
RISK [2] - 53:15, 57:19
ROAD [1] - 100:1
ROH [7] - 8:12, 8:13, 8:22, 11:16, 12:16, 12:19, 87:16
ROH [16] - 12:16, 12:19, 13:9, 29:3, 29:19, 30:4, 30:12, 30:15, 40:2, 40:5, 40:7, 40:10, 40:24, 42:7, 42:9, 42:21
ROLE [1] - 80:20
ROLES [1] - 76:11
ROLLING [1] - 85:23
ROOM [1] - 100:24
ROUTINELY [2] - 78:5, 94:7
RULE [13] - 7:7, 16:18, 43:22, 45:12, 48:22, 54:15, 59:9, 60:19, 60:23, 63:12, 71:17, 72:1, 72:3
RULE [1] - 68:2, 69:14, 76:17, 100:25

RULED [3] - 32:5, 37:3, 47:16
RULES [12] - 47:20, 70:2, 70:5, 70:25, 71:7, 71:10, 71:12, 80:19, 100:5, 100:12, 100:13
RULES [1] - 65:10
RULING [32] - 6:14, 15:21, 16:5, 16:6, 16:21, 19:10, 19:15, 26:13, 45:22, 49:1, 50:21, 55:25, 58:9, 61:2, 63:4, 67:17, 67:20, 67:21, 68:5, 68:6, 68:15, 70:12, 72:9, 73:11, 73:19, 75:10, 76:15, 76:21, 77:1, 80:7
RULINGS [10] - 5:16, 11:12, 11:18, 12:22, 13:6, 15:15, 16:2, 46:9, 46:18, 48:10

## S

SALE [7] - 92:3, 92:4, 92:17, 94:10, 95:3, 97:18, 98:11
SALES [1] - 97:8
SATISFIED [1] - 18:23
SATISFY [2] - 53:14, 97:16
SAW [2] - 28:23, 85:5
SCHEDULED [1] - 46:10
SCHEME [3] - 50:8, 50:15, 56:18
SCOPE [13] - 10:12, 24:2, 35:10, 37:4, 38:21, 46:17, 72:25, 73:2, 73:9, 74:18, 81:14, 91:18, 93:1
SEAL [4] - 45:18, 46:24, 47:1, 70:15
SEATED [1] - 14:9
SECOND [15] - 4:9, 7:2, 22:23, 24:10, 25:15, 28:15, 34:14, 34:23, 38:15, 38:19, 39:14, 44:22, 45:2, 46:11, 81:23
SECOND-TO-THE-LAST [1] - 44:22
SECONDARY [1] - 75:3
SECONDS [1] - 89:19
SECRET [1] - 49:9
SECTION [14] - 7:2, 16:4, 16:13, 17:8,

17:13, 18:2, 18:4, 18:7, 18:15, 18:16, 18:22, 19:1, 19:13, 52:9
**SECTION** [1] - 18:9
**SECTIONS** [1] - 18:18
**SEE** [33] - 4:22, 5:14, 9:25, 10:17, 11:10, 11:14, 11:20, 11:21, 34:3, 46:25, 47:14, 47:19, 48:6, 49:23, 49:25, 59:10, 74:4, 74:12, 76:17, 76:23, 77:15, 77:17, 77:20, 84:6, 91:6, 91:14, 96:13, 98:23, 98:25, 99:3, 100:7, 101:11
**SEEK** [2] - 70:14, 85:5
**SEEKING** [2] - 67:8, 80:24
**SEEKS** [4] - 51:2, 58:11, 58:22, 66:20
**SEEM** [1] - 80:5
**SEISMOLOGIST** [7] - 73:24, 75:23, 76:4, 76:12, 77:3, 79:13, 81:25
**SEISMOLOGY** [5] - 77:15, 78:8, 78:9, 87:17
**SELECTION** [1] - 97:13
**SELL** [2] - 92:15, 94:19
**SELLER** [1] - 95:6
**SEND** [1] - 100:23
**SENDS** [1] - 95:18
**SENSE** [2] - 24:21, 42:15
**SENSOR** [5] - 75:2, 75:3, 76:2, 79:1, 79:2
**SENSORS** [7] - 75:4, 78:2, 78:3, 78:18, 78:19, 78:20
**SENT** [2] - 66:15, 94:7
**SENTENCE** [1] - 45:2
**SEPARATE** [5] - 24:14, 34:17, 34:20, 81:2, 101:3
**SEPARATED** [1] - 22:6
**SEPARATELY** [1] - 19:4
**SEQUENTIALLY** [1] - 22:7
**SERIES** [2] - 48:17, 48:19
**SERIOUS** [4] - 58:13, 58:17, 59:6, 59:18

**SERVE** [1] - 51:19
**SERVES** [2] - 51:9, 63:3
**SERVICE** [6] - 9:16, 9:17, 9:19, 25:21, 31:7, 95:14
**SERVICES** [2] - 24:12, 64:12
**SET** [11] - 20:1, 20:6, 22:2, 22:8, 39:25, 63:19, 63:21, 74:13, 82:5, 85:15
**SETS** [2] - 38:7, 44:4
**SEVEN** [1] - 87:15
**SEVERAL** [8] - 14:12, 21:19, 32:1, 37:20, 44:4, 44:5, 68:19, 96:16
**SEVERE** [1] - 73:25
**SFO** [5] - 58:19, 59:18, 60:8, 60:9, 60:13
**SHALL** [2] - 42:4, 42:5
**SHANNON** [2] - 100:11, 101:7
**SHANNON'S** [1] - 100:11
**SHEER** [1] - 79:25
**SHIN** [9] - 61:6, 63:5, 64:6, 64:9, 64:21, 65:2, 66:11, 66:13, 66:15
**SHIN** [1] - 61:6
**SHIN** [3] - 61:13, 61:25
**SHIN'S** [5] - 63:11, 63:15, 64:4, 65:14, 65:24
**SHOCKED** [1] - 87:22
**SHORT** [1] - 7:18
**SHORTLY** [1] - 58:19
**SHOW** [12] - 28:20, 52:4, 53:1, 53:7, 53:9, 54:19, 57:3, 61:19, 63:11, 81:12, 91:25, 94:2
**SHOWING** [1] - 45:21
**SHOWS** [5] - 49:24, 50:25, 61:22, 65:20, 67:11
**SIDE** [2] - 5:3, 23:6
**SIDES** [1] - 86:21
**SIGNIFICANT** [1] - 57:19
**SIGNIFICANTLY** [1] - 53:15
**SILLY** [1] - 61:2
**SIMILAR** [2] - 30:23, 68:11
**SIMPLE** [1] - 31:9
**SIMPLY** [7] - 10:7,

12:3, 15:11, 31:5, 40:13, 58:2, 96:11
**SIT** [4] - 4:22, 13:10, 27:4, 87:12
**SITS** [1] - 93:9
**SITTING** [1] - 99:1
**SITUATION** [1] - 35:2
**SIX** [4] - 10:6, 44:10, 44:14, 44:18
**SIX-PART** [1] - 44:10
**SLIGHTLY** [1] - 10:9
**SMALLER** [1] - 45:13
**SMOKING** [3] - 98:25, 99:2, 99:4
**SOCIETY** [2] - 32:22, 45:12
**SOLEMNLY** [1] - 42:4
**SOMEONE** [4] - 66:18, 72:1, 72:3, 76:9
**SOMEWHAT** [2] - 8:18, 24:11
**SOMEWHERE** [1] - 82:21
**SOON** [1] - 99:22
**SORRY** [4] - 47:8, 60:14, 66:16, 96:22
**SORT** [5] - 28:5, 37:17, 93:1, 95:5, 98:13
**SORTS** [1] - 91:21
**SOUND** [2] - 3:15, 75:22
**SOUNDS** [1] - 10:20
**SOURCE** [3] - 30:2, 73:1, 83:8
**SOURCES** [1] - 91:19
**SOUTH** [17] - 5:21, 7:3, 14:13, 14:15, 16:8, 17:6, 17:11, 17:22, 18:24, 29:16, 30:1, 34:18, 35:24, 36:5, 36:6, 45:9, 51:25
**SOYOUN** [2] - 4:11, 4:15
**SOYOUN** [1] - 4:15
**SPEAKING** [1] - 26:17
**SPEC** [2] - 97:6
**SPECIAL** [1] - 42:11
**SPECIFIC** [9] - 32:14, 33:11, 44:18, 49:15, 53:10, 75:23, 88:17, 92:1, 93:4
**SPECIFICALLY** [11] - 7:23, 8:22, 9:11, 14:3, 18:11, 20:5, 21:13, 32:10, 80:18, 80:21
**SPECIFIED** [3] - 17:2, 18:10, 70:19

**SPECIFY** [1] - 8:17
**SPECULATION** [2] - 58:25, 79:25
**SPELL** [7] - 4:4, 4:7, 8:17, 13:18, 17:15, 61:5, 66:21
**SPEND** [2] - 67:16, 83:3
**SPENDING** [1] - 12:4
**SPENT** [9] - 49:17, 49:21, 52:13, 52:23, 53:5, 53:7, 53:9, 53:22, 67:10
**STAFF** [2] - 42:9, 85:18
**STAND** [3] - 5:2, 100:17, 100:19
**STANDARD** [2] - 29:25, 65:15
**STANDARDS** [2] - 33:25, 42:18
**START** [3] - 4:2, 86:19, 100:9
**STARTED** [3] - 7:19, 41:14, 41:16
**STARTING** [1] - 82:6
**STATE** [12] - 3:6, 4:3, 12:13, 13:17, 46:2, 56:24, 59:12, 63:11, 63:13, 63:15, 64:4, 71:19
**STATEMENT** [8] - 6:20, 21:22, 63:13, 66:20, 67:22, 68:6, 68:25, 69:2
**STATEMENTS** [19] - 5:20, 6:17, 6:24, 24:1, 49:16, 63:6, 63:8, 63:11, 63:14, 64:4, 64:6, 64:8, 64:19, 65:14, 65:15, 65:24, 66:11, 66:13, 67:8
**STATES** [3] - 37:15, 63:12, 96:1
**STATES** [21] - 3:5, 3:9, 16:3, 16:13, 17:7, 17:8, 17:15, 18:4, 18:11, 18:17, 18:22, 19:5, 44:1, 44:2, 51:4, 52:16, 56:8, 63:19, 65:9, 68:21, 81:19
**STATIONS** [1] - 75:1
**STATUS** [4] - 54:1, 60:4, 85:3, 91:12
**STATUTE** [2] - 18:19, 35:12
**STATUTES** [3] - 18:7, 18:12, 19:8

**STATUTORY** [4] - 17:16, 20:5, 34:19, 45:7
**STEP** [1] - 28:12
**STILL** [6] - 32:21, 37:18, 64:22, 67:5, 97:12, 98:24
**STIPULATION** [4] - 55:17, 84:17, 85:25, 86:8
**STORY** [3] - 50:2, 51:11, 52:25
**STRADDLES** [1] - 97:3
**STREAMLINE** [1] - 86:13
**STRIP** [2] - 31:3, 31:21
**STRUCTURED** [1] - 28:17
**STRUGGLED** [1] - 5:22
**STS-1** [1] - 75:4
**STUFF** [1] - 73:20
**SUBJECTIVE** [2] - 55:2, 55:22
**SUBJECTIVELY** [1] - 56:16
**SUBMISSION** [1] - 5:20
**SUBMIT** [4] - 33:12, 74:23, 76:22, 95:19
**SUBMITTED** [6] - 6:13, 14:1, 21:14, 47:2, 94:17, 95:14
**SUBSTANCE** [2] - 18:12, 61:24
**SUBSTANCE** [1] - 18:14
**SUBSTANTIALLY** [2] - 57:13, 58:7
**SUBSUMING** [1] - 38:15
**SUBTLETIES** [1] - 11:25
**SUFFICIENT** [1] - 45:21
**SUGGEST** [2] - 64:6, 66:11
**SUGGESTED** [5] - 24:14, 38:22, 43:23, 64:3, 89:2
**SUGGESTS** [3] - 59:14, 65:5, 76:18
**SUITED** [1] - 79:2
**SUMMARY** [1] - 77:19
**SUN** [3] - 8:21, 12:16, 12:19
**SUN** [1] - 8:21
**SUPERSEDING** [7] - 14:24, 14:25, 15:11,

49:10, 51:21, 52:2, 52:7
**SUPERVISOR** [1] - 70:6
**SUPERVISORS** [1] - 76:10
**SUPPLEMENTAL** [3] - 76:22, 77:2, 87:7
**SUPPORT** [3] - 8:22, 45:14, 56:6
**SUPPORTS** [1] - 56:16
**SUPPOSED** [4] - 29:3, 86:9, 86:13, 86:17
**SUPPOSEDLY** [1] - 90:19
**SUPREME** [2] - 44:1, 65:9
**SURPRISE** [1] - 100:2
**SURPRISED** [1] - 89:6
**SURPRISINGLY** [1] - 66:22
**SURROUNDING** [4] - 51:14, 53:2, 63:2, 64:3
**SURROUNDS** [1] - 60:9
**SUSPECT** [2] - 56:10, 56:11
**SWEAR** [1] - 42:4
**SWORN** [3] - 67:8, 67:22, 68:6
**SYSTEM** [1] - 3:15

## T

**TAB** [10] - 21:13, 21:14, 36:23, 37:6, 37:10, 37:15, 45:14
**TABBED** [1] - 24:1
**TABLE** [1] - 87:7
**TABLE** [3] - 3:18, 27:5, 100:15
**TALKS** [2] - 11:25, 93:7
**TANGENT** [1] - 30:16
**TAUGHT** [1] - 28:18
**TEAM** [1] - 54:17
**TECHNICAL** [12] - 25:22, 54:20, 63:17, 64:24, 72:14, 74:20, 74:23, 75:8, 78:4, 78:7, 78:18
**TECHNICIAN** [4] - 75:8, 76:5, 79:12, 81:25
**TECHNICIANS** [1] - 78:11
**TEN** [1] - 74:6
**TENDENCY** [4] - 57:2,

65:11, 65:25, 72:10
**TENTATIVE** [3] - 49:1, 68:6, 68:15
**TENTATIVELY** [3] - 19:24, 20:20, 46:10
**TERM** [17] - 17:17, 18:4, 18:13, 30:25, 31:4, 31:8, 31:9, 32:2, 35:8, 42:15, 44:24, 69:5, 69:7, 69:9, 69:13, 69:18
**TERMINATE** [1] - 58:19
**TERMINATED** [4] - 58:23, 59:19, 60:4, 61:1
**TERMINATING** [1] - 58:14
**TERMS** [28] - 5:19, 6:8, 6:14, 6:17, 7:11, 8:6, 8:10, 9:11, 9:20, 14:16, 22:21, 23:13, 23:18, 28:13, 33:3, 36:24, 38:21, 39:8, 44:13, 49:18, 68:11, 71:1, 71:19, 74:3, 76:24, 79:14, 80:5, 90:5
**TEST** [5] - 44:10, 57:11, 59:16, 90:24, 97:17
**TESTIFIED** [1] - 80:11
**TESTIFIES** [3] - 65:12, 65:25, 81:22
**TESTIFY** [24] - 8:12, 8:24, 9:11, 10:22, 10:25, 11:3, 46:14, 48:1, 61:16, 68:1, 73:23, 75:16, 76:7, 77:23, 78:22, 79:21, 80:12, 87:17, 92:11, 92:19, 92:21, 92:24, 93:3, 98:16
**TESTIFYING** [3] - 61:13, 63:6, 74:3
**TESTIMONY** [27] - 5:15, 5:19, 6:12, 7:20, 8:6, 10:4, 10:19, 11:21, 42:4, 46:17, 46:21, 47:17, 47:21, 68:13, 69:20, 73:25, 74:13, 76:24, 77:7, 77:8, 80:19, 80:22, 80:24, 82:2, 83:10, 84:1, 92:12
**TESTING** [2] - 25:18, 81:11
**THE** [192] - 3:4, 3:14, 4:2, 4:7, 4:9, 4:12, 4:17, 4:21, 5:1, 5:8,

5:14, 6:5, 6:10, 7:14, 7:17, 8:1, 8:13, 9:24, 10:2, 10:24, 11:2, 11:5, 11:8, 11:12, 12:1, 12:10, 12:17, 12:20, 13:10, 13:17, 13:21, 14:11, 14:21, 15:5, 15:8, 16:21, 19:15, 24:6, 24:15, 24:20, 25:3, 26:4, 26:7, 26:12, 26:20, 26:24, 27:9, 27:21, 28:3, 28:7, 28:12, 28:20, 29:5, 29:9, 29:14, 29:24, 30:8, 30:14, 30:16, 31:13, 31:17, 31:24, 33:13, 33:18, 34:10, 38:2, 38:6, 39:4, 39:6, 39:11, 39:15, 39:17, 39:21, 39:24, 40:3, 40:9, 40:12, 40:25, 41:3, 41:11, 41:14, 41:22, 41:24, 42:3, 42:8, 42:20, 43:1, 43:16, 46:12, 46:15, 46:19, 46:25, 47:12, 48:2, 48:6, 48:11, 48:14, 49:14, 50:4, 50:10, 50:16, 50:20, 54:12, 54:15, 55:4, 55:7, 55:24, 59:23, 59:25, 60:3, 60:18, 62:3, 62:7, 62:12, 62:15, 62:24, 64:17, 64:19, 67:3, 67:7, 67:12, 67:15, 68:24, 71:9, 71:20, 72:8, 74:21, 75:13, 75:20, 76:6, 76:14, 77:11, 77:22, 78:12, 78:16, 78:21, 79:4, 79:8, 79:14, 79:20, 80:4, 80:12, 80:15, 81:5, 81:21, 82:3, 82:12, 82:15, 83:3, 83:10, 83:13, 83:15, 83:25, 85:10, 85:21, 86:12, 86:15, 87:18, 87:21, 88:2, 88:13, 88:15, 88:23, 89:5, 89:18, 89:21, 90:4, 92:7, 92:11, 92:19, 92:23, 93:15, 93:19, 94:12, 94:18, 94:23, 95:7, 95:15, 96:8, 96:20, 96:22, 97:2, 97:10, 97:20, 98:16, 98:23, 99:6, 99:10, 99:12, 99:17, 100:2, 100:4
**THEMSELVES** [1] -

7:11
**THEORY** [7] - 40:18, 41:12, 49:24, 50:22, 52:3, 54:1, 63:21
**THEREAFTER** [2] - 58:19, 91:8
**THEREFORE** [8] - 21:6, 34:1, 66:8, 69:13, 69:18, 72:6, 81:13, 81:19
**THEY'VE** [2] - 8:7, 77:18
**THIRD** [5] - 9:14, 20:18, 34:23, 38:16, 79:15
**THOROUGH** [2] - 66:9, 98:24
**THOROUGHLY** [1] - 5:20
**THREE** [12] - 18:15, 20:10, 20:15, 22:7, 22:10, 22:14, 34:21, 63:25, 82:5, 84:6, 86:23, 100:1
**THREE-DAY** [1] - 82:5
**THROW** [1] - 68:21
**TIMING** [2] - 57:23, 76:17
**TODAY** [16] - 4:1, 4:18, 5:15, 7:17, 8:14, 9:11, 13:23, 15:14, 15:21, 46:9, 48:10, 54:17, 84:11, 85:8, 85:11, 87:13
**TOGETHER** [1] - 27:11
**TOOK** [1] - 92:3
**TOTALITY** [2] - 8:10, 44:18
**TOTALLY** [1] - 84:2
**TOUGH** [1] - 97:20
**TRACKED** [1] - 18:7
**TRACKS** [1] - 45:7
**TRADE** [3] - 25:14, 25:15, 31:12
**TRADITIONAL** [1] - 17:18
**TRAFFIC** [2] - 37:17, 38:24
**TRANSACTING** [1] - 70:9
**TRANSACTION** [3] - 35:22, 36:4, 51:9
**TRANSACTIONS** [7] - 51:19, 52:6, 52:8, 53:5, 56:5, 83:7
**TRANSCRIPTS** [2] - 64:13, 64:18
**TRANSFER** [1] - 52:10
**TRANSFERRED** [3] -

23:3, 49:12, 83:18
**TRANSFERS** [2] - 49:14, 49:19
**TRANSLATED** [1] - 39:12
**TRANSLATING** [1] - 3:13
**TRANSLATION** [2] - 4:1, 13:12
**TRANSLATIONS** [3] - 5:21, 5:23, 21:14
**TRAVELED** [1] - 13:22
**TRAVELING** [1] - 13:7
**TREATING** [1] - 42:12
**TREATISE** [1] - 38:18
**TRIAL** [34] - 7:6, 15:17, 15:18, 19:20, 29:21, 46:7, 46:11, 46:14, 46:17, 46:21, 59:4, 60:20, 61:13, 61:15, 63:6, 67:13, 67:22, 68:1, 68:11, 69:5, 76:21, 80:6, 82:3, 82:5, 82:6, 82:19, 82:21, 88:11, 88:12, 90:1, 90:2, 100:14, 100:22
**TRIAL** [1] - 90:9
**TRIALS** [3] - 26:15, 29:20, 99:1
**TRIED** [3] - 38:9, 89:14
**TROUBLESHOOT** [1] - 78:20
**TROUBLESOME** [1] - 63:1
**TRUE** [3] - 24:9, 74:15, 84:14
**TRUST** [1] - 69:11
**TRUTH** [4] - 42:5, 42:6, 63:8
**TRY** [4] - 27:11, 81:24, 84:4, 91:5
**TRYING** [7] - 25:7, 32:11, 32:25, 40:19, 41:19, 43:11, 83:20
**TUESDAY** [6] - 48:15, 80:14, 80:16, 82:9, 100:9, 101:12
**TURN** [1] - 82:16
**TURNING** [1] - 82:7
**TURNS** [1] - 84:1
**TWO** [25] - 3:12, 3:24, 7:1, 18:14, 20:13, 22:16, 23:10, 23:11, 25:6, 28:12, 51:5, 51:10, 53:19, 65:15, 68:18, 73:10, 73:17, 74:24, 81:12, 83:3, 84:5, 84:7, 92:6,

94:13, 99:25
**TWO-AND-A-HALF** [1] - 84:7
**TWO-STEP** [1] - 28:12
**TYPE** [5] - 18:24, 27:18, 28:13, 75:4, 75:8
**TYPES** [1] - 50:13
**TYPICAL** [1] - 38:18
**TYPOS** [1] - 86:23

## U

**U.K** [1] - 68:21
**U.S** [8] - 19:9, 26:10, 44:2, 54:25, 65:10, 80:20, 80:22, 81:2
**UKRAINIAN** [1] - 19:8
**ULTIMATE** [4] - 21:24, 26:19, 28:7, 92:4
**UNANIMITY** [1] - 43:24
**UNANIMOUSLY** [1] - 44:3
**UNAWARE** [1] - 56:17
**UNCLEAR** [2] - 20:2, 59:21
**UNDER** [46] - 7:2, 7:3, 9:6, 9:8, 16:13, 17:6, 17:7, 17:10, 18:2, 18:18, 19:3, 19:13, 22:15, 29:15, 30:1, 30:22, 32:5, 34:8, 34:18, 36:18, 38:1, 40:16, 42:11, 43:25, 45:9, 45:18, 46:24, 47:1, 50:25, 51:13, 52:9, 53:13, 53:21, 56:2, 57:12, 63:14, 64:1, 64:25, 68:2, 68:20, 70:7, 70:15, 72:7, 72:9, 76:17
**UNDERLYING** [1] - 44:4
**UNDERSTOOD** [3] - 50:1, 55:12, 69:8
**UNDERTAKEN** [1] - 94:4
**UNDERTOOK** [1] - 91:8
**UNDUE** [1] - 57:15
**UNFAIR** [2] - 57:14, 90:21
**UNFORTUNATELY** [1] - 76:16
**UNITED** [22] - 3:5, 3:9, 16:3, 16:13, 17:7, 17:8, 17:15, 18:4, 18:11, 18:17, 18:22, 19:5, 44:1, 44:2,

51:4, 52:16, 56:8, 58:13, 63:19, 65:9, 68:21, 81:19
**UNLAWFUL** [9] - 17:2, 18:10, 56:17, 56:20, 57:9, 58:1, 69:12, 69:16, 70:19
**UNLESS** [6] - 5:24, 11:24, 14:14, 23:1, 31:4, 33:11
**UNNECESSARY** [3] - 44:8, 45:1, 52:20
**UNPERSUASIVE** [1] - 63:12
**UNWARRANTED** [1] - 45:1
**UP** [19] - 5:2, 5:4, 15:17, 23:6, 33:20, 34:7, 44:4, 60:3, 67:10, 67:11, 67:17, 67:18, 67:21, 77:16, 83:19, 86:22, 93:14, 97:12, 99:3
**UPHILL** [1] - 91:4
**URGES** [1] - 59:9
**USELESS** [2] - 52:21, 84:2
**USES** [3] - 30:25, 37:6, 69:2

## V

**VALUE** [4] - 17:19, 53:16, 57:13, 58:6
**VARIANT** [1] - 69:19
**VARIOUS** [13] - 12:25, 14:12, 15:17, 18:18, 29:11, 38:9, 44:13, 67:25, 75:22, 86:9, 87:2, 95:18, 98:21
**VBB** [2] - 75:1, 75:4
**VERDICT** [2] - 15:9, 44:21
**VERSA** [1] - 72:2
**VERSUS** [9] - 76:1, 76:4, 78:3, 78:8, 94:14, 94:24, 95:9, 95:11, 98:2
**VICE** [1] - 72:2
**VICTOR** [1] - 75:2
**VIEW** [11] - 6:18, 8:9, 10:3, 20:19, 34:21, 52:14, 65:1, 65:14, 66:4, 82:23, 93:20
**VIEWS** [2] - 36:24, 39:8
**VIOLATE** [1] - 72:19
**VIOLATED** [2] - 71:23, 72:17
**VIOLATES** [2] - 72:2,

72:3
**VIOLATION** [9] - 18:23, 26:14, 27:12, 35:23, 36:5, 71:8, 71:17, 71:21, 71:25
**VIOLENCE** [1] - 18:14
**VIRTUALLY** [1] - 17:21
**VIS-À-VIS** [2] - 79:24, 88:25
**VITAL** [1] - 84:2
**VITIATE** [1] - 71:17
**VOICE** [1] - 5:3
**VOIR** [1] - 86:4
**VOLT** [1] - 75:3
**VS** [7] - 3:5, 44:1, 51:4, 52:16, 56:8, 63:19, 65:9

## W

**WAIT** [4] - 5:16, 41:25, 59:10, 85:1
**WAITED** [1] - 76:16
**WAITING** [2] - 90:15, 90:16
**WAIVE** [1] - 89:13
**WAIVER** [1] - 90:8
**WANTS** [8] - 16:16, 19:22, 30:18, 49:4, 49:16, 53:6, 63:8, 76:19
**WARD** [1] - 52:17
**WARRANTED** [3] - 45:22, 45:23, 82:8
**WASTING** [1] - 57:15
**WAVE** [1] - 99:2
**WEEK** [5] - 54:14, 82:2, 82:3, 82:4, 82:6
**WEEKEND** [5] - 43:18, 85:17, 85:22, 86:4, 100:9
**WEEKS** [3] - 99:25, 100:1
**WEIGHS** [1] - 57:11
**WELCOME** [3] - 12:21, 13:7, 13:21
**WHATSOEVER** [1] - 49:23
**WHOLE** [3] - 37:12, 42:6, 67:9
**WIDELY** [2] - 69:8, 69:11
**WISHES** [1] - 54:9
**WITHHOLD** [1] - 68:5
**WITNESS** [36] - 8:21, 13:20, 42:2, 48:2, 48:3, 48:8, 59:25, 60:5, 61:14, 62:22,

63:7, 65:12, 66:20, 67:1, 67:9, 68:21, 75:14, 75:15, 76:19, 77:18, 77:19, 79:1, 80:16, 81:22, 81:24, 82:17, 82:20, 84:9, 84:11, 100:16, 100:19, 100:20, 101:1, 101:5, 101:8
**WITNESS'S** [1] - 75:21
**WITNESSES** [1] - 87:5
**WITNESSES** [25] - 15:18, 47:4, 61:10, 62:18, 67:25, 68:13, 77:7, 77:9, 77:19, 80:10, 82:16, 84:12, 84:13, 87:12, 87:13, 87:18, 87:24, 88:1, 88:6, 88:11, 88:20, 93:2, 98:18, 98:20, 99:9
**WONDERING** [1] - 87:9
**WOOK** [1] - 66:22
**WORD** [5] - 7:13, 32:25, 68:10, 69:2
**WORDS** [4] - 23:2, 36:12, 69:5, 95:17
**WORKERS** [1] - 42:14
**WRITTEN** [1] - 42:22
**WRONGLY** [1] - 31:11
**WROTE** [3] - 61:7, 61:17, 64:5

## X

**XYZ** [1] - 95:17

## Y

**YEAR** [1] - 29:22
**YEARS** [3] - 8:25, 65:15, 74:6
**YESTERDAY** [3] - 73:18, 84:23, 85:13
**YORK** [1] - 49:13

## Z

**ZIMMERMAN** [2] - 82:24, 84:5

**UNITED STATES DISTRICT COURT**