SANDRA R. BROWN
Acting United States Attorney
POONAM G. KUMAR (Cal. Bar No. 270802)
Assistant United States Attorney
Major Frauds Section
ANNA G. KAMINSKA
DAVID M. FUHR
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0719/(202)307-0321
     Facsimile: (213) 894-6269
     Email:     poonam.kumar@usdoj.gov
                anna.kaminska@usdoj.gov
                david.fuhr@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>HEON-CHEOL CHI,<br><br>　　　　Defendant. | No. CR 16-824(A)-JFW<br><br>GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS<br><br>Hearing: October 2, 2017<br>Time:　　9:00 a.m.<br>Place:　　Courtroom of the Hon.<br>　　　　　John F. Walter, 7A |

　　　　Plaintiff, United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Poonam G. Kumar, and United States Department of Justice Trial Attorneys Anna G. Kaminska and David M. Fuhr, hereby files its Objections to the Presentence

//
//

1

1  Report (Dkt. 188).  These objections are based on the attached
2  memorandum of points and authorities and exhibits, the files and
3  records in this case, and such further evidence and argument as the
4  Court may permit.
5
6  Dated: September 11, 2017         Respectfully submitted,
7                                    SANDRA R. BROWN
                                     Acting United States Attorney
8
                                     LAWRENCE S. MIDDLETON
9                                    Assistant United States Attorney
                                     Chief, Criminal Division
10
11                                        /s/
                                     POONAM G. KUMAR
12                                   Assistant United States Attorney
                                     ANNA G. KAMINSKA
13                                   DAVID M. FUHR
                                     Trial Attorneys
14                                   United States Department of Justice
15                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On April 12, 2017, defendant Heon-Cheol Chi ("defendant") was charged in a First Superseding Indictment ("FSI") with six counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2(b). (Dkt. 55.)  The FSI also sought criminal forfeiture based on 18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c).  As alleged in the FSI, defendant abused his public position in South Korea by demanding and receiving bribe payments from two private companies in excess of $1 million into his Bank of America bank account in California.  On six different occasions, defendant then transferred large portions of these corrupt funds into a Merrill Lynch investment account in New York.  The specified unlawful activity underlying each count was a violation of Korean bribery law, specifically, Article 129 of South Korea's Criminal Code.  On July 17, 2017, a jury found defendant guilty on one money-laundering count (Count Six), which alleged that defendant deposited a $56,000 check, representing a small portion of his overall bribe proceeds, from Bank of America into his Merrill Lynch account. (Dkt. 176.)  The Court granted defendant's unopposed motion for a mistrial on the other five money-laundering counts. (Dkt. 162.)

On August 28, 2017, the United States Probation Office ("USPO") issued its Presentence Report ("PSR").  The USPO calculated defendant's base-offense level under U.S.S.G. § 2S1.1(a), concluding that his underlying offense was a violation of bribery law and thereby applying U.S.S.G. § 2C1.1.  (PSR ¶ 20.)  The PSR then set the base-offense level at 24, which accounted for a 4-level enhancement

resulting from defendant's status as a public official in a high-level, decision-making position, and applied a 1-level enhancement for a conviction under 18 U.S.C. § 1957, yielding an adjusted offense level of 25.  (PSR ¶¶ 21-34.)  With respect to the more than $1 million in bribe payments, the USPO concluded that "it is unclear how much of these funds constituted bribes versus income legitimately earned by [defendant.]" (PSR ¶ 15, n.1.)  Accordingly, the USPO determined that "[i]n the absence of additional evidence, only the $56,000 is considered the proceeds of illegal activity."  (Id.) Given defendant's Criminal History Category of I, the PSR thus calculated the applicable Guidelines range as 57 to 71 months. (PSR ¶ 80.)

For the reasons set forth more fully below, the government objects to the following portions of the PSR: (1) its use of U.S.S.G. § 2S1.1(a)(1) to calculate defendant's base-offense level rather than U.S.S.G. § 2S1.1(a)(2); (2) its inclusion of only the $56,000 check, when the evidence at trial demonstrated that defendant received and transferred (in violation of 18 U.S.C. § 1957) over $1 million in bribe payments over the course of his scheme; and (3) its determination not to apply an enhancement for abuse of trust, given defendant's position and influence in South Korea, which allowed him to facilitate the commission of the offense.

As detailed below, the government contends that the appropriate calculation under U.S.S.G. § 2S1.1(a)(2) results in an adjusted offense level of 25 with a Guidelines range of 57-71 months. Moreover, the government submits that no variance is warranted based on defendant's conduct, work history, lack of criminal history,

2

family circumstances, health issues, or any other factor, as will be argued in its separate sentencing memorandum.

## II. STATEMENT OF FACTS

From 1994 through 2017, defendant was a public official at the Korea Institute of Geoscience and Mineral Resources ("KIGAM"), a research institute funded principally by the government of South Korea. (PSR ¶ 9.) Defendant worked at all relevant times either as the director of KIGAM's Earthquake Research Center or as a principal researcher. (PSR ¶ 11.) KIGAM was established as the geological survey of South Korea and serves important governmental functions, including monitoring seismic activity from earthquakes and nuclear tests. (PSR ¶ 9.) KIGAM purchases seismic equipment for its own use in research and development from private companies, including Guralp Systems Limited ("Guralp") and Kinemetrics, Inc. ("Kinemetrics"). (Id.) In addition, KIGAM is an official testing center that certifies seismic instruments sold to and used by KIGAM and other public entities in South Korea. (Id.)

Defendant abused his official position at KIGAM by demanding and receiving bribes from both Guralp and Kinemetrics in exchange for providing them with unfair business advantages, such as: (1) advocating the purchase and use of Guralp and Kinemetrics products by KIGAM at prices that included amounts to be paid to defendant; (2) advocating the purchase and use of Guralp and Kinemetrics products to other research institutes in South Korea, including by using his position on the earthquake-monitoring committee; (3) influencing KIGAM to certify Guralp and Kinemetrics products even in instances when the products were not working; (4) providing market intelligence to help Guralp and Kinemetrics improve

3

their respective positions in South Korea; and (5) providing technical advice to increase the chance of sale of Guralp and Kinemetrics products. (PSR ¶ 11(a)-(e).)[1]

In order to effectuate his bribery scheme, defendant, who lived and worked in South Korea, entered into secret side arrangements with Guralp and Kinemetrics, pursuant to which he instructed the companies to pay him into his personal checking account at Bank of America in Glendora, California. (PSR ¶ 10.) Defendant also submitted fictitious invoices that listed a false address in New Jersey in his name. (Declaration of Anna G. Kaminska (hereinafter "Kaminska Decl."), Exh. A (Gov't Trial Exh. 57).) As demonstrated at trial, largely through defendant's own witnesses, KIGAM was not aware of defendant's receipt of payments into his personal bank account in the United States. (See, e.g., Chi Trial Tr. July 11, 2017, at 275:7-12 (testimony of C. Potts); id. at July 13, 2017, at 728:4-725:8; 737:19-738:9 (testimony of J.S. Shin); id. at July 14, 2017, at 782:14-784:12; 788:15-789:3 (testimony of J.H. Park); id. at 799:12-21) (testimony of T.S. Lee); id. at 821:20-822:13 (testimony of H.H. Kim); id. at 843:6-8 (testimony of B.C. Kim); id. at 854:13-855:7 (testimony of B.W. Kim).

Defendant confirmed in emails how he used his official role at KIGAM to assist the companies, explaining to employees of Guralp in 2011, "I am fully responsible for the center and I would be involved

---

[1] The government objects to the PSR's recitation of defendant's "technical input and support" services listed in paragraph 14. These descriptions appear to be taken directly from a document submitted by counsel for Cansun Guralp in the related civil litigation pending in the United Kingdom. Given its context, the information contained in the document is necessarily self-serving and made in anticipation of litigation; it was not admitted during defendant's trial in this district.

in the official advisory committee.  Hence I should be more cautious officially."  (PSR ¶ 12.)  Defendant also advised representatives of Kinemetrics that "all high-level organizations belong to the committee of earthquake monitoring organizations (this committee is a legal committee by the law right now), and I have recommended to use STS-2," which is equipment sold by Kinemetrics.  (Id.)  In return for leveraging his influence to assist Guralp and Kinemetrics in doing business in South Korea, defendant received a fee for every sale made by both companies in South Korea.  (Id.)

Defendant's emails plainly demonstrate his consciousness that each and every payment he received from Guralp and Kinemetrics was illegal.  As far back as 2005, he wrote to an employee of Guralp that "[u]sually I deleted all e-mail or papers related to agent fee or advice fee because I am the director of earthquake research center and I am not allowed to be involved in it." (Kaminska Decl., Exh. B (Gov't Trial Exh. 89).)  Moreover, defendant wrote in 2010 that "due to my position, I am not allowed to participate in any activity of private companies."  (PSR ¶ 13.)  In connection with advising representatives of Guralp to send new equipment to KIGAM for testing, defendant explained in 2014, "I am a governmental officer and I should not have any contact with private company.  Moreover, it is illegal to assist any company related to the test."  (Id.)

Between 2009 and 2015, defendant received bribe payments totaling over $1 million into his personal bank account in Glendora, California.  In each year, these bribe payments far exceeded his legitimate income from KIGAM during that time period.  (Kaminska Decl., Exh. C (Gov't Trial Exh. 39).)  Defendant then used the U.S. financial system as a vehicle to launder his criminally derived

5

funds. For example, defendant made a series of transfers between his Bank of America account in California and his Merrill Lynch investment account in New York, which form the basis for the six counts in the FSI. Defendant sent $521,000 – approximately half of the funds received into his Bank of America account – to his Merrill Lynch investment account. Most of the remainder of the funds received into his Bank of America account defendant spent back in South Korea, where he lived. (Kaminska Decl., Exh. D (Gov't Trial Exh. 35).)

### III. THE BASE-OFFENSE LEVEL SHOULD BE CALCULATED USING U.S.S.G. § 2S1.1(a)(2)

The PSR used U.S.S.G. § 2S1.1(a)(1) to calculate the appropriate Guidelines range. (PSR ¶ 20.) However, the government contends that U.S.S.G. § 2S1.1(a)(2) should be applied to defendant's case because the specified unlawful activity underlying defendant's money-laundering conviction was a foreign offense (bribery pursuant to Article 129 of South Korea's Criminal Code).

U.S.S.G. § 2S1.1(a) provides that the base-offense level for engaging in monetary transactions in property derived from specified unlawful activity may be calculated in one of two ways:

> (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined; or

      (2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

The Ninth Circuit has held that foreign crimes may not be used to calculate a defendant's base-offense level under U.S.S.G. § 2S1.1(a)(1). Specifically, in United States v. Chao Fan Xu, the Ninth Circuit "decline[d] to create the complexities that the inclusion of foreign crimes in the base offense level calculation would generate." 706 F.3d 965, 992-93 (9th Cir. 2013) (holding that the base-offense level for defendants' money-laundering convictions with a foreign bank-fraud predicate should be calculated using § 2S1.1(a)(2)). As the Ninth Circuit cautioned, "[t]o permit foreign crimes to figure in fixing the base offense level would require courts to perform a careful comparative analysis of foreign and domestic law in such instances," which is "highly problematic for sentencing purposes." Chao Fan Xu, 706 F.3d at 992-93; see also United States v. Azeem, 946 F.2d 13, 17 (2d Cir. 1991) (holding that defendant's drug activities in Egypt should not be considered in calculating his base-offense level for money laundering).[2]

    Because the specified unlawful activity underlying defendant's money-laundering conviction was a foreign offense, his base-offense level should be calculated under § 2S1.1(a)(2), which sets it at 8

---

[2] The government notes that if U.S.S.G. § 2S1.1(a)(1) and § 2C1.1 were applied in this case and all $1 million in bribes received by defendant were used, defendant's adjusted offense level would be 34, yielding a Guidelines range of 151-188 months, which is substantially higher than the government's Guidelines calculation. While the government does not believe that this calculation is appropriate, the government does believe that this high range underscores the severity of defendant's conduct and can be taken into account when considering the factors under 18 U.S.C. § 3553(a), including the nature and seriousness of the offense.

7

plus the number of offense levels corresponding to the value of laundered funds in the Loss Table in § 2B1.1.

**IV. THE PSR DOES NOT ACCOUNT FOR THE VALUE OF ALL LAUNDERED FUNDS**

Under § 2S1.1(a)(2), defendant's base-offense level should be calculated with reference to the number of offense levels from the Loss Table in § 2B1.1 "corresponding to the value of the laundered funds." As the Application Notes explain, the term "laundered funds" means "the property, funds, or monetary instrument involved in the transaction, financial transaction, monetary transaction, transportation, transfer, or transmission in violation of 18 U.S.C. § 1956 or § 1957." U.S.S.G. § 2S1.1, App. N. 1. The PSR determined that only $56,000 constituted the proceeds of illegal activity and thus increased the base-offense level by only 6 levels pursuant to § 2B1.1. As set forth below, the government submits that the value of the laundered funds was in excess of $550,000 and less than $1.5 million, requiring a 14-level increase.

The evidence at trial showed that, from 2009 to 2015, Guralp and Kinemetrics paid defendant $1,044,690 in bribes into his California Bank of America account and that 99% of the funds in that account came from these two companies; the remaining 1% (or $10,962.71) was comprised of the beginning balance and other credits to the account. (Kaminska Decl., Exh. E (Gov't Trial Exh. 34).) As detailed above, each of these payments from Guralp and Kinemetrics represented bribes, and defendant's receipt of those funds violated Article 129 of South Korea's Criminal Code. It is defendant's movement of the funds from his California bank account that constituted the violation of 18 U.S.C. § 1957, and defendant's count of conviction involved a $56,000 check drawn on his California bank account and deposited into

8

his New York account.  However, all of defendant's relevant conduct should be considered here.

U.S.S.G. § 1B1.3(a)(2) defines relevant conduct as "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."  A common scheme or plan is established by offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, App. N. 5(B).  Here, over an extended period, defendant consistently directed bribe payments from Guralp and Kinemetrics into the same bank account in California and then repeatedly conducted monetary transactions with those funds. Accordingly, all of the funds with which defendant transacted from his Bank of America account constitute relevant conduct, including the counts on which the Court declared a mistrial, as well as uncharged conduct.  Cf. United States v. Watts, 519 U.S. 148, 157 (1997) ("a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"); see, e.g., United States v. Rose, 20 F.3d 367 (9th Cir. 1994) (holding that uncharged acts of fraud could be used in calculating the value of laundered funds).

At trial, the government admitted into evidence charts demonstrating defendant's use of funds from the California account into which he received the bribes.  (Kaminska Decl., Exhs. D & E.) These charts show that, subtracting the beginning balance and credits in defendant's account, defendant spent over $1 million in these bribe payments.  (Id.)  More specifically, defendant wrote $521,000

9

in checks drawn on his Bank of America account to his Merrill Lynch account. (Id.) In addition, defendant also laundered $46,000 in bribes by writing other checks from the same Bank of America account. (Id.; Kaminska Decl., Exh. F (Gov't Trial Exh. 33).) Defendant also spent the illicit funds using his Bank of America check card, both in the United States and in South Korea. Indeed, defendant's spending in Korea amounted to $378,750.28, and defendant spent another $106,251.63 in other ways. (Kaminska Decl., Exh. D.) Thus, the amount of laundered funds, including all relevant conduct, undoubtedly exceeds $550,000 and is less than $1.5 million. Accordingly, a 14-level enhancement is appropriate. See U.S.S.G. § 2B1.1.

The USPO included only $56,000 as laundered funds based on the determination that it could not distinguish between "bribes versus income legitimately earned by Chi." (PSR ¶ 15, n.1). However, no such distinction exists. As the evidence demonstrated at trial, all of the funds defendant received from Guralp and Kinemetrics into his California bank account were paid to him in violation of Article 129 of South Korea's Criminal Code, i.e., in exchange for performing an act within his official duties, whether such act included "monitoring," "troubleshooting," "technical support," or otherwise (id. at ¶ 14). At bottom, none of these payments was "legitimately earned." Defendant understood as much, given the numerous emails spanning the relevant time period in which he asked that the paper trail underlying his "advice fees" be deleted and that his payments be kept secret from KIGAM. Accordingly, the government submits that it has proven, by a preponderance of the evidence, that the laundered

funds totaled approximately $1 million and, thus, a 14-level enhancement pursuant to § 2B1.1 is appropriate.

**V.    AN ABUSE-OF-TRUST ENHANCEMENT APPLIES**

Finally, a two-level enhancement for abuse of trust pursuant to U.S.S.G. § 3B1.3 should be applied.  Such an enhancement is appropriate where "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3.  "Public or private trust" refers to "a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)."  U.S.S.G. § 3B1.3, App. N. 1.  "Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature," and "[f]or this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)."  Id.

In light of his credentials, expertise, and experience, defendant served at KIGAM for over two decades in senior-level positions.  (Kaminska Decl., Exh. G (Gov't Trial Exh. 1A).)  As the PSR recognized, "[a]s a public official, Chi had authority and/or considerable influence over decisions made by KIGAM," and "[h]e used this influence to create advantages for Kinemetrics and Guralp."

11

(PSR ¶ 25.)[3]  In defendant's positions as director and principal researcher at KIGAM, defendant oversaw public-works projects involving seismic activity across South Korea, including earthquakes and nuclear weapons tests in neighboring North Korea, and he thus held a position of enormous public trust.  In his positions at KIGAM, defendant had access to sensitive inside information, including about public and private bidding and equipment certifications, and he liaised with and advised important figures in the worlds of politics and science, including senior South Korean government officials and members of official committees on which he served in connection with his role at KIGAM.  Among defendant's responsibilities was also serving as a delegate of South Korea to the Working Group B of the Comprehensive Nuclear Test Ban Treaty Organization in Vienna.  His position, knowledge, and status enabled defendant to steer business in favor of Guralp and Kinemetrics to the detriment of their competitors.  And in so doing, defendant abused this position of public trust by utilizing the knowledge he gained from his position in order to perpetrate his bribery scheme over an extended period.  Accordingly, the abuse-of-trust enhancement should apply here.

**VI.  THE GOVERNMENT'S GUIDELINES CALCULATION**

Based on the government's arguments set forth above, the government respectfully submits that the following is the correct adjusted offense level for defendant's bribery scheme:

---

[3] The USPO appears not to have considered an enhancement pursuant to § 3B1.3 because such an enhancement is inapplicable when § 2C1.1 is used to calculate the base-offense level.  See U.S.S.G. § 2C1.1, App. N. 6.

12

| | | |
|---|---|---|
| Base-Offense Level | 8 | [U.S.S.G. § 2S1.1(a)(2)] |
| Value of Laundered Funds over $550,000 but less than $1.5 million | +14 | [U.S.S.G. § 2S1.1(a)(2); U.S.S.G. § 2B1.1(b)(1)(H)] |
| Conviction Under 18 U.S.C. § 1957 | +1 | [U.S.S.G. § 2S1.1(b)(2)(A)] |
| Abuse of Position of Trust | +2 | [U.S.S.G. § 3B1.3] |
| **Total Offense Level** | **25** | |

For Criminal History Category I, this results in a Guidelines range of 57-71 months.

**VII. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sustain the government's objections to the PSR.

13