# DECLARATION OF MARILYN E. BEDNARSKI

I, Marilyn E. Bednarski, hereby state and declare as follows:

1. I am an attorney licensed to practice law in the State of California and am a member in good standing in the California Bar and am counsel of record along with Joel Koury, Kevin LaHue and Richard Raynor for Dr. Chi in Untied States v. Chi, CR 16-824(A)-JFW.

2. The facts I have represented in the attached objections to the PSR and position papers are true and correct to the best of my knowledge.

3. I conducted the direct examination of defense witness Jin Soo Shin, a researcher at KIGAM. I have reviewed notes of his trial testimony from July 13, 2017. Mr. Shin testified that: a) There were company incentives for KIGAM employees to get private funding and such action was well reviewed and considered a "plus point"; b) Shin himself approved and executed such arrangements and had been paid by private companies; c) in both 1999 and 2003 there was no prohibition from KIGAM management about private consulting or technical advice contracts; d) he was the manager of the high speed rail project from 2005 to 2007. As project manager, Mr. Shin, made the final decision to use Guralp products on the project. They were purchased at a discount because of Dr. Chi's contract with Guralp; e) there is no regulation at KIGAM preventing giving an opinion regarding the quality of a particular piece of equipment if asked by an agency.

4. I conducted the direct examination of defense witness Jung Ho Park, the director of the earth quake research center at KIGAM. I have reviewed notes of his trial testimony from July 13-14, 2017. Mr. Park testified that a) he would oversee the mandated certification testing of equipment of KIGAM; b) Dr. Chi didn't do any of the certification testing at KIGAM; c) Dr. Chi did not try to change any test results; d) if a piece of equipment didn't perform well KIGAM would discuss the problem with the manufacturer, KIGAM would do this for any

1

manufacturer; e) in 2003 a researcher could earn money from a private consulting agreement.

5. I conducted the direct examination of defense witness Kyu Han Kim, the president of KIGAM from 2013-2016. I have reviewed notes of his trial testimony from July 14, 2017. Mr. Kim testified that KIGAM strongly recommended or encouraged employees take outside consulting agreements.

6. I conducted the direct examination of defense witness Byung Cheol Kim, who worked at Heesong GeoTek from 2002-2013. I have reviewed notes of his trial testimony from July 14, 2017. Mr. Kim testified that a) an agency (Korean Procurement Services Agency) controls the bidding process for projects that involve the use of seismological equipment, b) the judges on the committee are technically qualified scientists c) there is an electronic system that selects the bid with the appropriate price through random math; d) he is not aware of Dr. Chi influencing any official decision in the bidding process; e) he was aware of future projects because the purchasing company or organization would request to provide quotation for their own budget purposes, they would also announce it on their website with an ordering plan; f) GSL would sometimes lose competitive bids; and g) after Dr. Chi ended his relationship with GSL, they did not uniformly reduce their prices.

7. I observed the trial testimony on July 11-12, 2007 of government witness Christopher Potts from Guralp. Mr. Potts testified that: a) After Guralp terminated relationship with Dr. Chi they maintained a relationship with KIGAM. At the time of trial Guralp just delivered a third OBS to KIGAM. Guralp sent a team of engineers to install it; b) Nathan Pearce told him Dr. Chi was very helpful to the company in South Korea and provided technical consulting and technical advice. He was someone they would turn to for help; c) Guralp spreadsheets show Dr. Chi waived fees when Guralp technicians had to work on instruments; d) Dr. Chi contributed to Guralp's SCREAM (Seismometer Configuration Real-time

Acquisition and Monitoring) software and the way it is used in Korea; e) Dr. Chi was useful in Korea with assessing problems with Guralp products.

8. I observed the trial testimony on July 12, 2017 of government witness Natalie Pearce a former Guralp employee. Ms. Pearce testified that: a) Dr. Chi provided Guralp with information, technical specifications, testing help, technical support, installation support, and feedback on markets in South Korea; b) Dr. Chi had no influence over the awarding of bids in Korea after they were submitted; c) Dr. Chi provided substantial technical advice, technical details about products, and specifications about how products would be used; d) Pearce has characterized Dr. Chi as wearing "two hats" – 1) KIGAM responsibilities and 2) technical advice with Guralp; d) When Guralp equipment would arrive in Korea Dr. Chi would open it and make sure it was functioning; e) Sometimes Guralp would send parts to Dr. Chi to use in repairs of their products; f) It was more economical to have Dr. Chi fix Guralp products in Korea than send technicians from Guralp to fix them; g) Dr. Chi provided advice on how to improve Guralp products and make them better. He was very helpful in particular on the Korean early warning system; Pearce and Dr. Chi talked about how it was important to have low cost equipment so requirements of early warning system could be met. Pearce and Dr. Chi bonded over this.

9. Dr. Chi was advised by his institute that he was terminated from KIGAM on August 3, 2017.

10. I was advised by Dr. Park and other KIGAM witnesses during my pretrial preparation that KIGAM had a "flat line" hierarchical structure, much like a professor who is a dean and still a professor. The dean, like the director at the earthquake center, remains a professor but takes on administrative duties for that team. Dr. Chi served in an administrative capacity at various (not continuous)

periods of time including: Chief of Center in 2011, Laboratory Director/Chief in 2014, and Vice President/Lab Director in 2016.

11. I was advised by Dr. Park during my pretrial preparation that KIGAM only performed certification testing from 2010-2015 when it withdrew because of lack of resources. Another entity, KRISS, also performed testing and issued certifications in Korea.

12. I was present during government witness Lind Gee from the USGS. She testified that Dr. Chi consulted USGS regarding the strengths and weaknesses of certain instruments including borehole sensors and the USGS would provide an opinion regarding quality and use.

13. I have carefully reviewed the discovery and evidence in this case and do not recall ever seeing any evidence to support that Dr. Chi provided certificates for products even when they were "otherwise not working" as indicated by probation in the PSR at §11d.

14. Both Dr. Chi and his wife have informed me that the Taejeon Apartment listed at ¶69 of the PSR is his wife's sole and separate property and not jointly owned or community property.

15. Dr. Chi advised me that the committed referenced in the 2003 and 2013 emails is a reporting committee within KMA. Annually KMA gather information concerning seismic equipment from institutions and publish in a report. The institutions report what they are and will be using in the future.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Pasadena, California on September 11, 2017.

By_____/S/_____
Marilyn E. Bednarski