SANDRA R. BROWN
Acting United States Attorney
POONAM G. KUMAR (Cal. Bar No. 270802)
Assistant United States Attorney
Major Frauds Section
ANNA G. KAMINSKA
DAVID M. FUHR
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0719/(202)307-0321
     Facsimile: (213) 894-6269
     Email:    poonam.kumar@usdoj.gov
               anna.kaminska@usdoj.gov
               david.fuhr@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-824(A)-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING POSITION |
| v. | |
| HEON-CHEOL CHI, | Hearing: October 2, 2017 |
| Defendant. | Time:    9:00 a.m.<br>Place:   Courtroom of the Hon.<br>         John F. Walter, 7A |

Plaintiff, United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Poonam G. Kumar, and United States Department of Justice Trial Attorneys Anna G. Kaminska and David M. Fuhr, hereby files its Reply to Defendant's Response to the Government's Sentencing Position.

//

1

This Reply is based on the attached memorandum of points and authorities and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 25, 2017         Respectfully submitted,

                                      SANDRA R. BROWN
                                      Acting United States Attorney

                                      LAWRENCE S. MIDDLETON
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                              /s/
                                      POONAM G. KUMAR
                                      Assistant United States Attorney
                                      ANNA G. KAMINSKA
                                      DAVID M. FUHR
                                      Trial Attorneys
                                      United States Department of Justice

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On July 17, 2017, a jury found defendant Heon-Cheol Chi ("defendant") guilty of one count of money laundering, in violation of 18 U.S.C. § 1957. On September 11 and 18, 2017, the parties filed their respective objections to the Presentence Investigation Report and sentencing positions. (CR Dkt. Nos. 191, 192, 193.) On September 20, 2017, defendant filed a response ("Response") to the government's sentencing memorandum making new arguments regarding the calculation of the Guidelines.[1] (CR Dkt. No. 195.) It appears that the principal area of dispute regarding the calculation of the Guidelines range relates to the value of the laundered funds. The government submits that the evidence at trial demonstrated by clear and convincing evidence that all of the funds defendant received in his secret bank account in California from Guralp and Kinemetrics were bribes and, thus, any transactions conducted with those funds must be considered as relevant conduct and included in the total value of laundered funds for purposes of the Guidelines.

**II. DEFENDANT DID NOT PROVIDE ANY LEGITIMATE COMPENSABLE SERVICES**

The thrust of defendant's contention in his Response is a rehash of the one he advanced (and the jury rejected) at trial: defendant provided legitimate technical services to Guralp and Kinemetrics. (Defendant's Response to Government's Sentencing Memorandum ("Def. Resp."), at 6.) This argument plainly ignores the specified unlawful

---

[1] The government does not herein address defendant's objections to the application of the enhancement for abuse of position of trust or skill or his response regarding mitigation and rests on the arguments related to the proper sentence set forth in its prior sentencing submissions.

activity charged in this case, a violation of Article 129 of South Korea's Criminal Code.  As this Court instructed the jury, defendant was prohibited from "receiv[ing], demand[ing], or promis[ing] to accept a payment in exchange for exercising his official duties, or in other words, as a quid pro quo for exercising his official duties."  (CR Dkt. No. 164, at 19.)  Defendant's official duties included anything for which defendant was "responsible under the law, acts closely related to such duties, acts that the public official is practically or customarily responsible for, and acts that may influence decision-makers."  (CR Dkt. No. 164, at 20.)  As the government proved at trial, defendant accepted bribes in exchange for abusing his official position in order to help Guralp and Kinemetrics, including by providing them with unfair business advantages that their competitors did not have. (PSR ¶ 11(a)-(e).)[2] This conclusion was further supported at trial by evidence that defendant, among other things, concealed the arrangements with these companies from his employer, requested that his emails be deleted, and described his own actions as illegal.  Based on all of this evidence, the jury concluded beyond a reasonable doubt that defendant transacted in funds derived from bribery.  Defendant received the funds underlying Count 6 for the same purpose and in exchange for the same conduct as throughout these relationships.  Accordingly, by convicting defendant of Count 6, the jury necessarily rejected

---

[2] The government also notes that there is no credible evidence that defendant provided purely technical assistance to Guralp and Kinemetrics as to "complicated hardware and software issues."  (Def. Resp., at 6-7.)  Indeed, the evidence at trial was that others, including the distributors and agents, provided hardware and software support and installation services to Guralp and Kinemetrics.

2

defendant's arguments that some portions of his assistance were legitimate.

Defendant also contends that the government did not prove that the competitors of Guralp and Kinemetrics, such as GeoSIG, were actually harmed by defendant's actions or that defendant actually influenced the outcome of any project. (Def. Resp., at 4-5.) As an initial matter, Article 129 of South Korea's Criminal Code does not require any proof of either and, thus, defendant's contentions may be dismissed on this basis alone. (See CR Dkt. Nos. 95, at 2-3, 6-7, 12-13; 99, at 2-5.) Moreover, the weight of the evidence easily supports the conclusions that defendant abused his official position to the harm of Guralp's and Kinemetrics's competitors, including, but not limited to, the evidence that defendant sent emails containing confidential information regarding competitors to Guralp and Kinemetrics, instructed his purchasing department to buy certain products, and ensured that specifications would result in bids and contracts for only Guralp and Kinemetrics products. (See Kaminska Declaration, filed herewith, at Exh. P (Trial Exh. 90); Exh. Q (Trial Exh. 113); Exh. R (Trial Exh. 167); see also CR Dkt. No. 193, Fuhr Declaration, at Exh. C (Trial Exh. 111).)[3] Indeed, after Guralp finally stopped paying defendant his "advice fee" in 2015, defendant began recommending Kinemetrics products over those of Guralp. (Kaminska Declaration, at Exh. S (Trial Exh. 245).)

Defendant relies on witness testimony to argue that he "worked hard and performed compensatory service[s]" to both companies. (Def.

---

[3] Defendant repeatedly argues that the testimony of his KIGAM colleagues supports his contention that his advice fees were legitimate. However, these witnesses consistently testified that the actions undertaken by defendant outlined herein were impermissible.

Resp., at 4.) The government does not dispute either contention. Indeed, it is obvious that the companies paid defendant in order to protect their market share in Korea, the market share defendant was protecting by using his official position. This does not, however, render the service in exchange for payment legitimate and legal. Therefore, defendant's reliance on the provision in the Guidelines providing for credits against loss for "the fair market value of the . . . services rendered" is inapposite. This provision is relevant only if the services rendered are, in fact, legally provided and not, as is the case here, part of an overall bribery scheme. For this same reason, United States v. Sayakhom, 186 F.3d 929, 946 (9th Cir. 1999) and United States v. Crummy, 2017 WL 1411461 (D.D.C. April 20, 2017) fail to support defendant's contentions.

Defendant's citation to United States v. Schweitzer, 5 F.3d 44, 47 (3d Cir. 1993) is equally misplaced. In the first instance, Schweitzer involved an interpretation of the Guidelines under U.S.S.G. § 2C1.1, which defendant correctly argued in his sentencing submission had no application to defendant's case. (CR Dkt. No. 192, at 5-8.) Nevertheless, defendant improperly relies on it here to support his calculation of the Guidelines. (Def. Resp., at 5-6.) Even assuming that § 2C1.1 is applicable to defendant's Guidelines calculation, Schweitzer is inapposite because it dealt with the narrow issue of calculating "the benefit received or to be received" in determining whether to apply an increase under § 2C1.1(b)(2). However, § 2C1.1(b)(2) also provides for such an increase based on "the value of the payment" if greater than "the benefit received or

to be received."[4] Thus, regardless of the value of "the benefit received or to be received" by Guralp and Kinemetrics, § 2C1.1 calculates the loss amount under § 2B1.1 based on "the value of the payment[s.]"[5] Here, the evidence at trial established that the value of the payments to defendant exceeded $1 million, resulting in a 14-level increase under § 2B1.1.

At bottom, none of the payments defendant received was legitimate and, thus, any service provided in exchange for such bribes cannot be used to discount the value of the laundered funds. Because all funds defendant received were bribes under South Korean law, all of the transactions he conducted with those funds thereafter, constitute relevant conduct pursuant to U.S.S.G. § 1B1.3.

**III. CONCLUSION**

For the foregoing reasons and the reasons set forth in the government's objections and sentencing position, the government respectfully requests that the Court find that defendant laundered funds in excess of $550,000, and sentence to defendant to 57 months

---

[4] In Schweitzer, the value of the bribe payments was less than $5,000.

[5] To the extent Schweitzer's "benefit received or to be received" analysis were to be applied, Schweitzer actually operates in contravention of defendant's position. In Schweitzer, the U.S. Court of Appeals for the Third Circuit agreed that "a deduction of the value that would be derived in a legitimate transaction not induced by a bribe" was permissible. 5 F.3d at 47. However, the Third Circuit went on to hold that, in that defendant's case, there was no value that could have been received in a legitimate transaction because the defendant's "[s]ale of the information was prohibited by law." Id. The court distinguished the case from one where an official is legally permitted to engage in a transaction but does so at a lower price as a result of a bribe. Id. Defendant's case is akin to the case in Schweitzer in that defendant's actions were prohibited by law. Thus, no deduction to the value of the laundered funds is appropriate.

5

1  of imprisonment, a $20,000 fine, a 3-year term of supervised release,
2  and a $100 special assessment.